FILED

DEC 2 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PAMELA A. BROWNFIELD, )
    1210 Delafield Place, N.W. )
    Apt. # 2 )
    Washington, DC 20011, )

                      **Plaintiff,**

        v.

MARTIN J. GRUENBERG,
    ACTING CHAIRMAN,
    FEDERAL DEPOSIT )
    INSURANCE CORPORATION, )
    550 17th Street, N.W., )
    Washington, D.C. 20429-9990, )
                           )
               **Defendant.** )

CASE NUMBER  1:05CV02468

JUDGE: Emmet G. Sullivan

DECK TYPE: Employment Discrimination

DATE STAMP: 12/20/2005

## COMPLAINT
(Discrimination, Hostile Work Environment, Retaliation)

### Introduction

1.    Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. Section 2000e *et seq.*, and as further amended by section 102 of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a, to remedy acts of discrimination in employment practices against her by the Federal Deposit Insurance Corporation because of her race.

### Jurisdiction

2.    This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. Section 2000e-16(c), exhaustion of administrative remedies occurring as follows:

    Plaintiff went to the FDIC's EEO office on the matters raised in this complaint on March 3,

2005, and opted for alternative dispute resolution ("ADR") in lieu of EEO counseling. Mediation (ADR) was conducted on April 22, 2005. It was unsuccessful and ADR ended. With that, plaintiff received the notice of a right to file a formal EEO complaint on May 12, 2005. She retained counsel to advise and represent her during the investigative phase of the formal administrative EEO complaint, and filed the formal complaint on May 16, 2005 (file number FDICEO-050 036). A Report of Investigation was issued on September 16, 2005, and plaintiff timely opted for post-investigation ADR. On November 1, 2005, That mediation also ended in failure. This civil complaint is being filed within 90 days of that event.

### Venue

3.     Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3). Plaintiff's employment records are maintained by the Federal Deposit Insurance Corporation within the District of Columbia and virtually all of the personnel actions and decisions at issue in this case were made and/or approved in this judicial district.

### Parties

5.     Plaintiff is a 46 year old African American female citizen of the United States and a resident of the District of Columbia. She has been employed with the Federal Deposit Insurance Corporation for 15 years and has nine (9) additional years of federal services due to time in the armed forces. She is currently employed, and at all times relevant to this complaint was employed, by the FDIC.

6.     Defendant Martin J. Gruenberg is the Acting Chairman of the Federal Deposit Insurance Corporation ("FDIC"), which is a government agency within the Executive Branch of the Government of the United States that has had more than 500 employees in 20 or more calendar

weeks during the past year. In short, as its Acting Chairman Mr. Gruenberg is responsible for the personnel actions, omissions and practices within FDIC. He is sued only in his official capacity as head of FDIC.

### Statement of Facts

7.    Plaintiff is currently a Management Analyst, CG-343-12, in the Management Support Section, Management Services Branch, Division of Administration. She has been in this position since 1996, having been promoted to a CG-11 in 1999 and a CG-12 in 2000.

8.    Plaintiff believed that all was going well with her career in the Management Support Section and the Management Services Branch until she was passed over for promotion to the CG-13 level in her job in March 2004. She was the only African American CG-12 Management Analysts in the Management Support Section *and* she was the only one of four people in that position and grade level in the section not to be promoted to the CG-13 level at that time.

9.    The duties of the newly elevated CG-13 level Management Analysts in the Management Support Section did not change from when they were, like plaintiff still was, at the CG-12 level in their same jobs. Now, however, plaintiff -- the only African American professional in the section -- was the only Management Analysts there still serving at the CG-12 level, and she was doing the same job at the same level of responsibility as her non-African-American GS-13 fellow Management Analysts.

10.    Notwithstanding the unfairness of her not being promoted, plaintiff tried to put this aside and get on with her work, for which she had previously received good performance reviews.

11.    Everything appeared to be working fine -- though she remained the only Black Management Analyst in the section and the only one at the CG-12 level -- until December 16, 2004. On that date, plaintiff received notification that her position was being placed on the FDIC's "surplus

list" for elimination.  She was the only person in her section -- and she is the only Black person in her section -- to have her position placed on the surplus list.

12.    Moreover, in the whole of the Management Services Branch, plaintiff's was one of only four positions that were placed on the FDIC's surplus list.  Moreover, of the other three surplused positions in the branch, one was vacant, one was encumbered by an older worker who was known to be retiring soon, and one  was encumbered by a deaf oriental male who was no higher grade than a CG-9.

13.    At the time, the Management Support Section (the section of the Management Services Branch in which plaintiff was and is employed) had nine employees.  Of those employees, one of whom subsequently left by taking the voluntary buy-out, none but plaintiff was an African American.  The section was and is headed by Daniel Bendler, a white male.  Of the subordinate employees in the section, two are oriental males (one CG-14 and one CG-13) and the remainder are white.  At CG-12, plaintiff is the lowest graded employee in the section.

14.    The Management Services Branch had and has 25-30 employees and is headed by Paul Sherman, a white male.  There are only three CG-12 level employees in the Branch and, like plaintiff, the other two are African American women.  All higher graded personnel in the branch -- *i.e.*, those graded CG-13 and above -- are white or oriental.  With the exception of the deaf oriental male (whose job is also on the surplus list), all the lower graded employees in the Management Services Branch are Black.

15.    Because plaintiff was quite upset about having her name on the surplus list, she could not talk to anyone about it.  However, plaintiff never caused a commotion of any kind; she just quietly did her job -- all of her assignments -- without speaking to anyone outside of the context of

-4-

her assignments. Mr. Bendler chose to become upset with plaintiff because she was not the same

jocular subordinate he was used to having in the section before he and his superiors passed her over

for promotion and placed her job on the surplus list.

16.     As a consequence of his annoyance with plaintiff's more somber attitude in his

section, on January 25, 2005 Mr. Bendler wrote plaintiff up for not speaking to her coworkers after

he had ordered to do so again on January 18, 2005. Plaintiff had not returned to her old friendly self

because she was just so upset by having been placed on the surplus list (after having just been passed

over for the promotion all of her CG-12 colleagues had gotten) she was afraid the if she engaged her

colleagues in small talk she would become overly emotional.

17.     In any case, on February 17, 2005, plaintiff was advised via email that she would not

be getting a raise in salary in 2005 "based on [her] contributions in 2004." She was the only person

in the Management Support Section who did not to get a raise that year. Indeed, she is the only one

from the Management Services Branch staff in the CBC pool to fail to get a raise in 2005 for his/her

2004 contributions. In fact, the CBC pool (the pool for salary raises) for all FDIC personnel who

are non-bargaining personnel is 940 nationally, and only 47 of these employees received no salary

increase (Category 5 means no pay increase) -- just 5 percent of all such employees at FDIC.

18.     The reason given for not providing plaintiff with a raise in salary (that is no share at

all of the CBC pool) was that her work during 2004 failed to contribute to the FDIC's goals. In fact,

Mr. Bendler and Mr. Sherman simply ignored plaintiff's 2004 contributions to the organizations goal

and gave credit to others for the excellent work plaintiff performed during that period. They did this

as part of a scheme to discriminate against plaintiff and create a hostile work environment for her

at FDIC so she would leave the organization. While she did not recognize the incidents as part of

-5-

this scheme when they happened, the acts of passing her over for promotion while promoting all of her non-Black CG-12 Management Analysts colleagues in her section, thereafter declaring her position alone in her section surplus, expecting her to continue to be jovial after being mistreated, ordering her to be so, and then subjecting her to discipline when she failed to be so, are all part of this scheme to create a hostile work environment for plaintiff based on her race. This scheme culminated -- and became recognizable as a hostile work environment scheme based on race -- when FDIC management denied plaintiff a pay raise in 2005, while giving raises to her non-African American colleagues based in part on her own work. This denial of a pay raise is, in any case, separately actionable as a blatant act of race-based discrimination.

## Statement of Claims

### Count I -- Hostile Work Environment Based on Race

19.    From at least March 2004 to the present, defendant, through plaintiff's immediate superiors at the FDIC, and through higher management there as well, has subjected Ms. Brownfield to a hostile work environment based on her race in violation of Title VII of the Civil Rights Act of 1964, as amended.

20.    As a result of this hostile work environment created by defendant, plaintiff has suffered and continues to suffer career damage, personal and professional humiliation, and other emotional injuries, that have adversely affected her enjoyment of life. In addition, she has had to utilize leave and has thus suffered financially.

### Count II -- Denial of Pay Raise Based on Race

21.    As part of the scheme to create a hostile work environment for plaintiff based on her race, and as a separate act of race-based discrimination, defendant, through plaintiff's immediate

-6-

superiors at the FDIC, and through higher management there as well, denied Ms. Brownfield a pay raise -- a share in the CBC pool -- in 2005 in violation of Title VII of the Civil Rights Act of 1964, as amended.

22.    As a result of defendant's denying her a pay raise in 2005, Ms. Brownfield has suffered and continues to suffer career damage, personal and professional humiliation, and other emotional injuries, that have adversely affected her enjoyment of life.  In addition, she has had to utilize leave as a consequence of this discrimination, and the level of her pay has been restricted by the lack of a pay raise, and therefore has thus suffered financially -- including the limiting of pension benefits -- as a consequence of the race-based discrimination.

### Prayer for Relief

As a result of FDIC's unlawful conduct, plaintiff has suffered and continues to suffer damage in the form of lost pay raises and bonus opportunities, with attendant loss of pay and other losses of benefits associated with promotions, bonuses, and awards for exceptional performance; damage as a result of unjust discipline; damage to her personal reputation; damage to her professional reputation and to her career; and personal and professional humiliation, and emotional pain and anguish.  Plaintiff therefore requests the following relief:

(a)    enter judgment in her favor and against defendant on each of the claims contained in this civil action;

(b)    award plaintiff compensatory damages  (with interest thereon) against defendant to the fullest extent allowable under Title VII;

(c)    order defendant to promote plaintiff to a CG-13 level retroactive to March 2004, and to pay her all back pay due as a result of such promotion (with interest thereon);

-7-

(d)    order defendant to retroactively provide plaintiff with the highest level pay increase in 2005, and to pay her all back pay due as a result of such pay raise (with interest thereon);

(e)    order defendant to correct all FDIC records, including plaintiff's official personnel folder, to accord with the relief order by the Court and to purge all references in such documents to this civil action and the administrative EEO complaint that proceeded it;

(f)    enjoin defendant from discriminating or retaliating against plaintiff in the future;

(g)    award plaintiff her costs of this action and the administrative complaint that preceded it, including reasonable attorneys' fees (with interest thereon); and

(h)    award such other and further relief as the Court may deem just and appropriate.

## Jury Demand

Plaintiff hereby requests a trial by jury in the instant case on all issues of fact and on questioning pertaining to the level of damages to be awarded.

Respectfully submitted,

David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C.
1225 Eye Street, N.W.
Suite 1290
Washington, D.C. 20005
(202) 483-0300


Attorney for Plaintiff

-8-