**FILED**

DEC 2 0 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Maria V. Carmona
8306 Haven Hill Court
Laurel, Maryland 20723
301-490-4328

V.

John W. Snow
Secretary of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC 20220

CASE NUMBER  1:05CV02428

JUDGE: Paul L. Friedman

DECK TYPE: Employment Discrimination

DATE STAMP: 12/20/2005

JURY ACTION

# COMPLAINT
## CAUSE OF ACTION

1    As plaintiff Maria V. Carmona, I claim that defendant John W. Snow, Secretary of the

2    Treasury, his staff, and his predecessors and their staffs, have committed, and are being allowed

3    to commit, along with other officials of the United States government, a long-term pattern of

4    discrimination, retaliation, disparate treatment, and a hostile/harassing work environment against

5    me in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C.

6    § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (ADEA), as amended,

7    29 U.S.C. § 621 *et seq.*, based on my National Origin (Hispanic), having been born in Havana,

8    Cuba; sex (female); age (D.O.B. October 8, 1952); and in reprisal for engaging in prior

9    statutorily protected activity.

10    EEOC 29 C.F.R. 1614 provides, in part, that:

11    (a)    It is the policy of the Government of the United States to provide equal opportunity

12           in employment for all persons, to prohibit discrimination in employment because

13           of race, color, religion, sex, national origin, age or handicap and to promote the

14           full realization of equal employment opportunity through a continuing affirmative

15           program in each agency.

16    (b)    No person shall be subject to retaliation for opposing any practice made unlawful

17           by title VII of the Civil Rights Act (title VII) (42 USC 2000e *et seq*.), the Age

18           Discrimination in Employment Act (ADEA) (29 USC 621 *et seq*.), …or for

19           participating in any stage of administrative or judicial proceedings under those

20           statutes.

21    I also claim that officials of the United States government have exhibited a long-term pattern and

22    practice of conspiring to oppress, threaten, and intimidate me out of my civil right to equal

23    employment opportunity in violation of 18 U.S.C. § 241 (2002) Conspiracy Against Rights,

24    which states:

25           If two or more persons conspire to injure, oppress, threaten, or intimidate any

26           person in any State, Territory, or Commonwealth, Possession, or District in the

27           free exercise or enjoyment of any right or privilege secured to him by the Constitution

28           or laws of the United States, or because of his having so exercised the same….

29           They shall be fined under this title or imprisoned not more than ten years, or both….

### STATEMENT OF THE CASE

30    As plaintiff Maria V. Carmona, I first wish to state that I am not an attorney, that I am

31    proceeding *pro se*, and that I have never been represented by an attorney in any of my

32    administrative or legal processes. The basis of jurisdiction for the court is U.S. Government

33    Defendant, as noted on Form JS 44, Civil Cover Sheet. I am a United States citizen, a Hispanic

34    White Female, Age 53, GS-511-14, who has twenty-one years of consistently highly-rated

35    service with the Treasury Office of Inspector General (OIG). I am in my thirtieth year of Federal

36    service. I wish to note that this is the fourth civil action[1] that I have been forced to file in pursuit

37    of legal remedies due to a long-term pattern of discrimination, retaliation, disparate treatment,

38    and a hostile/harassing work environment committed against me by the Secretary(s) of the

39    Treasury and their management and staff, and by the Chair(s) of the EEOC and their

40    management and staff. Despite my consistently highly-rated performance appraisals, my

41    qualifications, and my proven extensive and varied technical and managerial experience within

42    the Treasury OIG,[2] I have not been permanently promoted beyond the Grade 14 within the

43    Treasury OIG, or elsewhere within the United States government. I first joined the Treasury

44    OIG as a Grade 7 auditor (GS-511-07) during March 1983, following attending classes at night

45    and on weekends for several years to obtain a second bachelors degree, this time in business with

46    a major in accounting, and shortly after becoming a Certified Public Accountant (CPA).

---

[1] Since December 1995 I have been forced to file nineteen formal administrative EEO complaints against Defendant and four civil actions, i.e., 01cv0115 (CKK); currently active cases 04cv0589 (JGP) and 05cv1194 (JGP); and the instant case.
[2] All evidence of which is part of my official work record since first joining the Treasury OIG in 1983.

47    When I first joined the Treasury OIG as a Grade 7 auditor in 1983, I had attained a Grade 10

48    in a professional series at another Federal agency.

49    The *prima facie* case for discrimination is that the Secretary(s) of the Treasury and their

50    management teams, to my knowledge, have never permanently promoted within the Treasury

51    OIG a qualified Hispanic female in the 511 series (my professional series and the core

52    professional auditor series within the Treasury OIG) beyond the Grade 14.[3]  It is an indisputable

53    material fact that I have not been permanently promoted beyond the Grade 14 within the

54    Treasury OIG, or elsewhere within the Federal government, despite my over twenty-nine years

55    of Federal service; despite my twenty-one years of extensive and varied experience within the

56    Treasury OIG; despite my outstanding qualifications, outstanding work record, and outstanding

57    performance appraisals, to include consistently high ratings in the management category; despite

58    my making several best qualified lists, to include, but not limited to, that for a Grade 15 within

59    the Treasury OIG in 1991, for Inspector General at another Federal agency in 1993, and for

60    a senior executive service (SES) position within the Treasury OIG in 2001.  Indisputable

61    evidence exists that clearly demonstrates that I was capable of functioning at the Grade 15

62    managerial level in the Treasury OIG as early as in 1987.  Indisputable evidence exists that

63    clearly shows that pretext was used by senior Treasury officials in their explanations as to why

64    I was not promoted to the Grade 15 within the Treasury OIG in 1991.  Indisputable evidence

65    exists that the selection panel for the Inspector General position for which I made the best

---

[3] Defendant has not provided highly relevant and material EEO statistical data and career data of Treasury OIG employees that is under his control and to which I am entitled.  Defendant's refusal to do so during my EEO administrative processes and during my civil action processes has had a severe and drastic adverse effect on my ability to properly and timely pursue my civil right to equal employment opportunity.

66    qualified list in 1993 comprised several senior officials, to include a member of the President's

67    Council on Integrity and Efficiency/Executive Council on Integrity and Efficiency (PCIE/ECIE).

68    Indisputable evidence exists that clearly shows that in 1989 the Non-Minority White Male senior

69    management team within the Treasury OIG acknowledged that there was a problem with the way

70    diversity was being handled, and that they had taken and were taking steps to correct the

71    situation. Indisputable evidence exists that clearly shows that in 1994, five years after the 1989

72    study, the Non-Minority White Male senior management team within the Treasury OIG again

73    acknowledged that there was a problem with the way diversity was being handled. Indisputable

74    evidence exists that clearly shows that in 1995 my fellow employees elected me to represent

75    them before Treasury OIG management, due to overwhelming concerns the staff had at the time

76    regarding questionable management practices and a severe lack of trust in Treasury OIG

77    management, to include serious concerns regarding what was perceived to be a lack of fair and

78    equitable advancement opportunities. It is clear from my election to represent them in 1995,

79    a position that I did not solicit, that my coworkers viewed me as someone they could trust and

80    as someone who had integrity and a genuine concern for all employees. Evidence of the staff's

81    concerns is documented in a study conducted by the U. S. Office of Personnel Management

82    (OPM) in 1995 on the Treasury OIG, at the request, to my understanding, of former, and

83    newly arrived at the time, Inspector General Valerie Lau. It is clear that the 1995 OPM

84    study surfaced staff concerns that had been building up for several years prior to Inspector

85    General Lau's arrival. It is my understanding that a recent independent external review,

86    for the FY 2001-2003 period, raised numerous management issues, some of which had been

87    raised by two other independent reviews performed by two other Federal agencies, one for the

88    FY 1995-1997 time frame, and the other for the FY 1998-2000 time frame. These long-standing

89    management issues have yet to be addressed. I wish to note here in regards to the OPM study

90    and the recent independent external review, that it is clear from the evidence that Treasury OIG

91    management has been perceived and is being perceived by officials at other Federal entities as

92    having exhibited a long-term pattern and practice of questionable management practices. I make

93    this point to provide evidence that, in Treasury officials exhibiting a clear and indisputable

94    long-term pattern and practice of denying me numerous merited promotions since at least 1991,

95    Treasury OIG management, and other officials of the United States government, cannot claim

96    that the predominately Non-Minority White management team that was in place and has been

97    in place since I began working at the Treasury OIG in 1983 has in any way been doing an

98    exemplary, or even an acceptable, job. Despite this independently determined poor managerial

99    performance, which I believe evidence shows goes back to several years prior to 1995, Treasury

100   OIG managers have continued to be promoted and, I believe, have continued to receive

101   performance bonuses and other awards. Indisputable evidence exists that shows that, since 1983

102   when I first joined the Treasury OIG, not only have I been denied several merited promotions

103   to the Grade 15 or SES level, but I also have been denied several opportunities to even compete

104   for promotion. Indisputable evidence exists that clearly shows that the OPM has issued several

105   statements over the past several years regarding concerns over a lack of representation of

106   individuals of Hispanic national origin in the Federal government, most notably in the SES

107   ranks.

108       The *prima facie* case for retaliation is that officials of the United States government have

109   exhibited a long-term pattern and practice of taking adverse actions against me that clearly

110   demonstrate causal links between the timing of the adverse actions taken and my engaging in

111   statutorily protected activity, some evidence of which is clearly contained in the instant civil

112   action as well as in my three previous civil actions; i.e., 01cv0115 (CKK); and 04cv0589 (JGP)

113   and 05cv1194 (JGP), currently active cases.

114       The *prima facie* case for conspiracy is those comments made, those decisions made, to

115   include those made by officials at the EEOC in consistently finding for Defendant, and those

116   actions taken, by officials of the United States government that are evidentiary of a long-term

117   pattern and practice by officials of the United States government of showing clear and unfair

118   favoritism towards the Secretary(s) of the Treasury and their staffs, to my grave and unfair

119   disadvantage. I claim that evidence clearly shows that officials and staff at Treasury and at the

120   EEOC have conspired in simply using the administrative EEO process to oppress, threaten, and

121   intimidate me and other employees out of their civil right to equal employment opportunity, and

122   that their reasoning in dismissing my merited claims is merely pretext. I claim that evidence

123   shows that officials of the United States government have conspired to deny me complete,

124   proper, and timely investigations; administrative hearings; discovery; my right to call and

125   cross-examine witnesses in order to question credibility and to prove pretext; the development

126   of complete factual records; and decisions made that are based on the merits of all of the

127   evidence that is relevant and pertinent to my claims of discrimination and retaliation. I claim

128   that evidence shows that officials of the United States government have conspired to deny me

129   my legal right to be fully heard on the issues. I claim that evidence clearly shows that officials

130   of the United States government have conspired to deny me my right to due process.

## DISCUSSION

131    Following is a brief discussion, although not all-inclusive,[4] of certain circumstances and

132    events that illustrate, demonstrate, and provide perspective in support of my claims of

133    discrimination, retaliation, and conspiracy.

134    I claim that I provided in *Carmona v. O'Neill*, 01cv0115 (CKK), a case in which discovery

135    was not granted and a trial was not conducted, direct evidence and sufficient circumstantial

136    evidence that established multiple causal links in support of my overarching claim of a long-term

137    pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work

138    environment being committed against me.

139    I claim that I provided in *Carmona v. Snow*, 04cv0589 (JGP),  a currently active case, direct

140    evidence and sufficient circumstantial evidence that establishes multiple causal links in support

141    of my overarching claim of a long-term pattern of discrimination, retaliation, disparate treatment,

142    and a hostile/harassing work environment being committed against me.

143    I claim that I provided in *Carmona v. Snow*, 05cv1194 (JGP), a currently active case, direct

144    evidence and sufficient circumstantial evidence that establishes multiple causal links in support

145    of my overarching claim of a long-term pattern of discrimination, retaliation, disparate treatment,

146    and a hostile/harassing work environment being committed against me.

147    I wish to note that 01cv0115 (CKK) represents the eighth, ninth, and tenth; 04cv0589 (JGP)

148    represents the third, fourth, fifth, and sixth; and 05cv1194 (JGP) represents the twelfth,

149    thirteenth, fourteenth, fifteenth, and sixteenth of the nineteen formal administrative EEO

150    complaints that I have been forced to file to date against the Secretary of the Treasury, and all

---

[4] It is my understanding that I need not present all of my evidence at this time.

151    since December 1995. It is also a material fact that Defendant has not assigned TD numbers

152    acknowledging certain formal administrative EEO complaints that I have filed. I claim that this

153    has been done, in part, so Defendant could avoid his reporting requirements under the No FEAR

154    Act.[5]

155         The instant civil action represents the seventeenth of the nineteen formal administrative EEO

156    complaints that I have been forced to file to date against the Secretary of the Treasury, and all

157    since December 1995.[6]

158         I claim that evidence that I provided on the record in 01cv0115 (CKK), 04cv0589 (JGP),

159    05cv1194 (JGP), and in the instant case provides causal link support for my overarching claim of

160    a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing

161    work environment, and also provides causal link support for my claim of conspiracy being

162    committed by officials of the United States government to deny me my civil right to equal

163    employment opportunity and all damages legally due me.

164         I claim that evidence I provided on the record in 01cv0115 (CKK), 04cv0589 (JGP),

165    05cv1194 (JGP), and in the instant case clearly shows that officials of the United States

166    government have conspired and are conspiring for discriminatory and retaliatory reasons to deny

167    me my civil right to equal employment opportunity; to deny me my right to fully prosecute my

168    cases; and to deny me all damages legally due me.

---

[5] The Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 requires, in part, that each Federal agency file an annual report providing data on its EEO cases with Congress, the EEOC, and the Attorney General.

[6] It concerns me the manner in which Defendant and officials at the EEOC have chosen to administer my cases in certain combinations and in a non-chronological order. I claim that these actions are purposeful and that they further evidence discrimination, retaliation, a hostile environment, and conspiracy by officials of the United States government.

169    I submit that it is reasonable for a jury to believe that I, after years of engaging the

170    administrative EEO process with no equitable administrative remedies being proffered by the

171    Secretary of the Treasury, and while the Secretary and his staff had committed and continue

172    to commit *prima facie* acts of discrimination and retaliation against me, have exhausted the

173    administrative process and have exhausted administrative remedies prior to filing each of my

174    four civil actions in district court in pursuit of legal remedies.

175    I submit that it is reasonable for a jury to believe that the Secretary of the Treasury has not

176    made any good faith effort to informally resolve, to include the proffering of any good faith

177    administrative remedies, any of my merited claims prior to or after my filing any of the nineteen

178    formal EEO complaints I have been forced to file or my civil actions.

179    I submit that it is reasonable for a jury to believe that the Secretary of the Treasury and

180    his staff have committed, and are being allowed to commit by officials of the United States

181    government, a long-term pattern of discrimination, retaliation, disparate treatment, and

182    a hostile/harassing work environment against me.[7]

183    I submit that it is reasonable for a jury to believe that officials of the United States

184    government have been, and are, purposefully suppressing evidence favorable to my cases, and

185    may have knowingly and with directed purpose destroyed material evidence that would have

186    favored my administrative EEO cases, by not conducting proper and timely investigations and/or

187    by not conducting proper and timely administrative hearings into all of the claims, issues, and

---

[7] I wish to note again that I had made the best qualified list for a Grade 15 within the Treasury OIG in 1991; made the best qualified list for Inspector General at another Federal agency in 1993; and have made a number of other best qualified lists within the Treasury OIG to include at the Senior Executive Service level, but have not been permanently promoted beyond the Grade 14.

188   matters that I have raised, especially in light of the overwhelming preponderance of highly-

189   specific, relevant, and pertinent information and documentation that I have placed on the records

190   in all nineteen of my administrative EEO cases and in my four civil actions.

191        I claim that officials at Treasury and officials at the EEOC have conspired to oppress,

192   threaten, and intimidate me out of my civil right to equal employment opportunity, and have

193   conspired to fabricate an environment under which they claim they can justify dismissals of my

194   merited claims.

195        In support of my claims of discrimination, retaliation, and of conspiracy, EEOC Office of

196   Federal Operations (OFO) Director Carlton Hadden, issued a decision, P.Ex.[8] A, denying my

197   request for reconsideration and informing me that I have no further right to administrative appeal

198   regarding the formal administrative EEO complaint case that is the subject of my instant civil

199   action. It is my understanding from Hadden's decision that I have exhausted the administrative

200   process, have exhausted any and all administrative remedies, and am free to pursue legal

201   remedies. I wish to note that Hadden, in his decision, and in his earlier denials of my appeals of

202   Treasury's Final Agency Decision(s) (FAD) in my other formal administrative complaints,

203   did not address all of the claims, issues, and matters that I raised in my formal EEO complaint.

204   An objective review of the administrative EEO complaint and of Hadden's decision (P.Ex. A)

205   would prove this to be true.

206        My administrative EEO complaint addresses those separate and distinct claims, issues, and

207   matters that I raised that give rise to the instant civil action. The triggering event for the filing of

208   this formal EEO complaint was the denial of a merited promotion to the Grade 15 through

---

[8] P.Ex. designates Plaintiff Exhibits.

209    manipulation of the Merit System Principles and the misrepresentation of my September 13,

210    2002, proper and timely filed application under Vacancy Announcement OA-2002-0010 for

211    the position of Director of Audit Operations, Supervisory Auditor, GS-511-15,[9] which represents

212    a continuation of the long-term pattern and practice by Department of the Treasury management

213    and staff of discrimination, retaliation, disparate treatment, and a hostile/harassing work

214    environment that has been committed and continues to be committed against me. These actions

215    also constitute a continuation of a pattern and practice of manipulation of and violation of

216    the Merit System Principles by Treasury OIG management in order to continue to deny me

217    merited promotions within the Department of the Treasury. The process that was followed for

218    this particular position was a departure from the manner in which vacancy announcements had

219    historically been announced and applications filed within the OIG. Below is a list of major

220    differences in the process, with a reference to the page(s) of my administrative EEO complaint,

221    which contains more-detailed information in support of my claims.

222    • The vacancy announcement was not posted in the usual manner. (Pgs. 5-6)

223    • Applicants were required to apply online. (Pg. 6)

224    • Applicants were required to submit a résumé. Standard Federal application forms,

225      such as the SF-171 and the OF-612 were unacceptable. (Pg. 6)

226    • There was a limit placed on the length of the résumé and of each of the narrative

227      responses describing experience. (Pg. 6)

---

[9] I wish to note that this announcement was never officially cancelled by Treasury OIG management as evidence clearly shows in my formal EEO complaint (Pg. 8).

228          •    Applicants were not allowed to print a complete copy of their application

229               prior to submittal. (Pg. 6)

230          •    The Knowledge, Skills, and Abilities in the vacancy announcement and

231               in the online application did not directly correspond. (Pgs. 6-8)

232          •    The applications were rated mechanically, rather than by a rating panel of

233               experts. (Pg. 8)

234          I claim that all of the above-referenced differences were a purposeful departure structured

235    specifically and purposefully by Treasury OIG management to limit competition, not only in the

236    instant case, but also in future announcements, and to achieve a desired discriminatory and

237    retaliatory result against me in order for Treasury OIG management to pre-select their desired

238    applicant.[10] In addition, I claim that all of these actions, i.e., denial of a merited promotion and

239    manipulation of the application process, were attempts to manipulate the merit system, in clear

240    violation of the Merit System Principles.

241          The formal administrative EEO complaint provides sufficient detail with supporting evidence

242    as to the claims, issues, and matters involved and, as such, requires no further explanation at

243    this point in my civil complaint process. It is noted that this EEO complaint, designated

244    TD-03-2185, comprises 81 pages, including a 15-page letter, three forms, a list of Exhibits,

---

[10] There is also direct evidence in 05cv1194 (JGP) of this same type of manipulation of the Merit System Principles
in order to deny me merited promotions and in order to, following my providing my application in response to
a vacancy announcement, pre-select another applicant. It also concerns me that other applicants could have
advance knowledge of the contents of my applications prior to a re-announcement of a position, under which
I may or may not make the best qualified list, even though I had previously done so. Certainly Treasury OIG
management would have advance knowledge and could then use my information for the purposes of "restructuring"
the re-announcement.

245    and Exhibits A – J.  Defendant has a copy of the entire complaint, as it was filed with Defendant

246    on December 27, 2002.

247          As in other of my administrative EEO cases, Defendant and his staff did not conduct a proper

248    and timely investigation into the claims I raised as is required by regulation at 29 C.F.R. 1614

249    and EEO MD-110.

250          I also wish to note that there are instances in the administrative processing of my

251    administrative EEO complaints where officials at the EEOC appear to simply take their direction

252    from the Secretary of the Treasury and his staff.  In these regards, I claim that officials at the

253    EEOC have offered me no independent objective review when it comes to considering my

254    administrative EEO cases, and by their actions have evidenced that it has been and simply is

255    futile for me to engage the administrative EEO process with any expectation of fairness or

256    objectivity.

257          For example, at a May 2000 EEOC Town Hall meeting attended by me and many others,

258    EEOC OFO Director Hadden made comments to the effect that the Department of the Treasury

259    is one of the two worst EEO offenders in the Federal Government, but that the EEOC does not

260    want to address the Department of the Treasury because it does not want to bite off more than

261    it can chew.  In addition, Hadden admitted in the same Town Hall meeting that there were

262    serious concerns regarding the perception that the EEOC administrative judges were deciding

263    in favor of, and were in fact too close to, the agencies in rendering their decisions, a situation

264    in which I have certainly found myself.  Hadden then went on to say that this was a common

265    complaint from other Town Hall meetings he had held across the country, and more than implied

266    that there was more than adequate foundation for these claims.

267  I also wish to note that the overt[11] adverse actions committed against me, which gave rise

268  to the filing of my first ever formal EEO complaint in my Federal career in December 1995, and

269  which was filed in the twentieth year of my Federal career, a case I wish to note which is not

270  a subject in the instant civil action, commenced during the Clinton Administration, and really

271  took off under former Treasury Secretary Robert E. Rubin.  The actions taken by officials at

272  Treasury and by officials at the EEOC to oppress, threaten, and intimidate me out of my civil

273  right to equal employment opportunity proceeded with increasingly higher frequency and

274  intensity during Rubin's tenure and under former Treasury Secretary Summers, and continued

275  unabated into the Bush Administration under former Treasury Secretary O'Neill and current

276  Treasury Secretary Snow.

277  I claim in these regards that officials at the EEOC have been conspiring and simply are

278  conspiring to protect senior officials of the United States government from having to answer for

279  their crimes and the crimes of their staffs.

280  The separate and distinct claims, issues, and matters raised in each of the nineteen formal

281  EEO complaints that I have been forced to file to date address and clearly establish a long-term

282  pattern of discrimination and adverse actions taken in retaliation against me for engaging in

283  statutorily protected activity.  All actions were taken, I believe, in clear and indisputable

284  discrimination, and in retaliation for my engagement in statutorily protected activity; were taken

285  with the intent to have an adverse impact on my promotion potential; were taken to ensure that

---

[11] I use the word *overt* here because upon my consideration of the especially overt adverse actions commencing against me in 1995 and following my undertaking of my own review of my EEO rights at that time due to concerns I had regarding these overt adverse actions, it occurred to me that I had been discriminated and retaliated against prior to 1995 within Treasury OIG.  It became clear to me that actions taken against me prior to 1995, i.e., denials of merited promotions, denials of requested special duty assignments, as well as other adverse actions, although more subtle, were discriminatory and retaliatory actions under the law and the regulations.

286    others knew what would happen to them if they raised concerns (i.e., their careers would be

287    ruined); and were taken so as to ensure that others, i.e., cronies of OIG management who were

288    not members of my protected group(s),[12] could be and were promoted ahead of me.

289         I claim that these actions have affected and are affecting my promotion potential in the

290    Treasury OIG and in other Federal agencies in a negative manner, and thus give rise to and

291    credibility to my discrimination, retaliation, and conspiracy claims.

292         I claim that Treasury OIG management officials, to include current Deputy Inspector General

293    Dennis Schindel, were and are conspiring to discriminate and retaliate against me by fabricating

294    an environment under which Treasury OIG management can deny me merited career

295    advancement and my civil right to equal employment opportunity; to retaliate against me for

296    engaging in statutorily protected activities; and to attempt to drive me and other Hispanic staff

297    out of the Treasury OIG.[13]  A recruitment task force study that I led in 1989 at the specific

298    request of Jay Weinstein,[14] my SES manager at the time, and a memorandum in 1994 to all

299    employees from Treasury OIG's Non-Minority White Male senior management team stating that

300    there was a problem with the way diversity was being handled (P.Ex. B) provide clear and

301    indisputable evidence of a long-term pattern of discrimination against minority employees by

---

[12] I do not have access to OIG personnel records. Discovery would uncover the EEO statistics, including the ages, of others who were treated in a more favorable and disparate manner to me with regards to job assignments, promotions, and those other attributes regarding items such as office assignment and staffing.  I wish to note that discovery was not granted in 01cv0115 (CKK).  Discovery was granted in 04cv0589 (JGP), but Defendant has to date been non-responsive to all of my requests, such that Defendant is withholding highly relevant material information and documentation that is under his control and to which as Plaintiff I am entitled.

[13] Discovery would uncover the EEO statistics, to include age, of Hispanic staff, specifically Hispanic Females, their dates of hire, their career advancement, and their current Treasury OIG employment status (if any).

[14] Weinstein congratulated me on a job well done and stated that issues raised by the recruitment task force study had been and were being addressed.

302  Defendant and his staff, and make clear that the Secretary(s) of the Treasury and their

303  management teams had, and have, no real or genuine interest in equal employment opportunity.

304      In further support of my discrimination, retaliation, and conspiracy claims, in light of the

305  comments made by EEOC OFO Director Hadden (at 257-266 above), I wish to call Hadden

306  before a jury so that he may explain his statements, especially in light of the highly-questionable

307  decisions he and his staff have consistently made against me and in favor of the Secretary of the

308  Treasury, as in the instant case. I submit that Hadden's comments, and decisions made and

309  actions taken by him and his staff, and by the EEOC Washington Field Office (WFO)[15]

310  Director(s) and their staffs, constitute willful obstruction of justice on the part of the EEOC, and

311  that these acts further constitute conspiracy on the part of officials of the United States

312  government to oppress, threaten, and intimidate me out of my civil right to equal employment

313  opportunity. Based on his actions, decisions, and comments, I call into question the motives and

314  intent of certain decisions issued by Hadden, or by any other officials at the EEOC. As a further

315  example of discrimination, retaliation, and conspiracy against me by officials at the EEOC,

316  EEOC administrative judge Stephen Shih, assigned to my initial formal EEO complaint, which

317  it should be noted is not a part of the instant proceedings and is mentioned for perspective, is

318  on record as having stated that Hispanic is not a national origin. It was Shih who then simply

319  accepted the clearly pretextual statements proffered by senior Treasury officials as to why

320  I was not promoted to the Grade 15 within Treasury OIG in 1991. In addition to Shih simply

321  somehow finding that Hispanic is not a national origin, he engaged in *ex parte* communication

---

[15] The WFO is where the EEOC administrative judges reside.

322   with an attorney who works at the Treasury OIG, Cynthia Langwiser,[16] but did not notify me

323   or my representative of his determination; and in this context, and in consideration of my

324   having identified myself as a Hispanic White Female Over Age 40, made a finding that

325   no discrimination exists if I am treated in a disparate manner to a White Female; and made this

326   finding even though I have never claimed race as a basis of discrimination; and made his finding

327   of no discrimination to the exclusion of my Hispanic National Origin, retaliation, and age claims.

328   Indisputable evidence exists that clearly shows that EEOC administrative judge Shih granted an

329   improper summary judgment to the Secretary of the Treasury in that case, my initial EEO case,

330   a finding that was made by officials at the EEOC OFO several years ago following their

331   consideration of my request for reconsideration in that case. It should be noted that Shih was

332   promoted to EEOC supervisory administrative judge, and that he remained active in my

333   administrative EEO processes for years afterward. I claim that Shih's initial and continued

334   involvement in my cases,[17] his promotion, and the EEOC's refusal to timely address Shih's

335   improper granting of a summary judgment to the Secretary of the Treasury in my initial case,

336   is evidentiary of discrimination, retaliation, and conspiracy by EEOC Chair Cari Dominguez,

337   who was made aware of my concerns. I claim that that initial summary judgment issued by Shih

338   in my initial administrative EEO case, a summary judgment which was issued so improperly in

339   favor of the Secretary of the Treasury by EEOC WFO Director Tulio Diaz, with I must assume

---

[16] I wish to note that to my knowledge Langwiser, an attorney for Defendant, an individual who has remained
active in my administrative EEO cases and inexplicably has been active in my civil actions, 01cv0115 (CKK),
04cv0589 (JGP), and 05cv1194 (JGP) took no action to have a clearly biased and prejudiced EEOC administrative
judge removed from my initial administrative EEO case, or from certain others of my administrative EEO cases in
which Shih was involved, to include in the instant civil action. I claim that Defendant, i.e., the Secretary(s) of the
Treasury, and the Chair(s) of the EEOC, and certainly Langwiser, as an attorney, had a duty to have Shih removed
immediately following his finding that Hispanic is not a National Origin.
[17] To include those matters raised in 05cv1194 (JGP).

340    the concurrence of EEOC Supervisory Administrative Judge Samuel Teitelman, the senior

341    EEOC official who assigned Shih to my initial case, simply set the stage for officials at Treasury

342    to feel free to continue their long-term pattern of discrimination, retaliation, disparate treatment,

343    and a hostile/harassing work environment against me with no fear of enforcement by the EEOC.

344    That certainly has been the case. I wish to call Dominguez, Diaz, Teitelman, and Shih, among

345    others, before a jury so that they can explain the issuance of a clearly improper summary

346    judgment to the Secretary of the Treasury while finding that Hispanic is not a national origin.

347    These individuals are central to allowing Defendant and his staff to continue, and to continue

348    to this day,[18] their long-term pattern of discrimination, retaliation, disparate treatment, and a

349    hostile/harassing work environment against me with no fear of enforcement by the EEOC.

350    These individuals are responsible for my being forced to file nineteen formal EEO complaints

351    and four civil actions against Defendant. It should also be noted that it was EEOC supervisory

352    administrative judge Teitelman, Shih's superior, who attempted, in my initial EEO case,

353    to manipulate, intimidate, and humiliate my designated representative, who is not an attorney,

354    into addressing a motion that he said he had in front of him from Treasury, a motion that,

355    upon verbal and written request for clarification by my designated representative, apparently

356    never existed, while stating that he was going to issue a decision on seven of my formal EEO

357    complaints, i.e., all of the formal EEO complaints that I had filed at the time, and that his

358    decision would not be based on the merits.

---

[18] I wish to note again that I recently was forced to file my nineteenth formal administrative EEO complaint against Defendant due to my being denied another merited promotion to the Grade 15 within the Treasury OIG. I did so despite my feeling, based on evidence, that it is simply futile for me, a highly qualified Hispanic Female to attempt to be accorded my civil right to equal employment opportunity by officials of the United States government.

359 It is clear to me from the statements he made to my representative that Teitelman must have

360 also engaged in *ex parte* communication(s) with official(s) at Treasury prior to contacting my

361 representative. It should be noted that Teitelman's initial unworthy actions involved, in part,

362 the four formal EEO complaints that are the subjects in 04cv0589 (JGP). It should be noted that

363 EEOC supervisory administrative judge Teitelman also remained active in my administrative

364 EEO cases following his initial unworthy attempt to oppress, threaten, and intimidate me out of

365 pursuing my civil right to equal employment opportunity. I wish to call EEOC supervisory

366 administrative judge Teitelman before a jury so that he may explain his actions, and so that

367 he may explain under what justification and on what basis, with no records of investigation or

368 administrative hearing before him, he was going to issue a decision on seven of my formal EEO

369 complaints, and that, as he stated, his decision would not be based on the merits. It is

370 my understanding that I am entitled to decisions that are made based on the merits of all of the

371 evidence that is relevant and pertinent to my claims. I claim that evidence clearly shows that

372 officials of the United States government have discriminated, retaliated, and conspired and are

373 conspiring to systematically and with directed purpose deny me decisions that are made based

374 on the merits of all of the evidence that is relevant and pertinent to my claims. I claim that

375 officials of the United States government have discriminated, retaliated, and conspired and are

376 conspiring so as to cover up for their egregious unworthy acts; so as to continue to deny me my

377 civil right to equal employment opportunity; and so as to deny me all damages legally due me.

378 In further regards to discrimination, retaliation, and conspiracy on behalf of officials of the

379 United States government, on September 21, 1999, and shortly after his confirmation, former

380 Treasury Inspector General Jeffrey Rush Jr., in an open forum for OIG employees attended

381    by me and many others, with reference to employees having concerns about serving suspensions

382    of two weeks without pay, made comments to the effect that *I'm the final word on most of the*

383    *discipline around here,* so, if something *is clear cut, why even come see me?* He went on

384    to say that he knows about the MSPB because he has *been there*, that the head of the OSC is

385    "*a friend of mine*," and that he has been before the District Court. Inspector General Rush then

386    went on to say that when employees file formal actions, such as EEO complaints, it is not just

387    him they are taking on, it is the *entire United States Government* they are taking on. It is

388    noted that the Secretary of the Treasury stipulated to Inspector General Rush's comments.

389    (See 01cv0115 (CKK), #7, Par. 39-42.) At the time I found, and still find, Rush's comments

390    to be extremely oppressive, threatening, and intimidating. However, due to continuing adverse

391    actions being taken against me, I contacted the United States Office of Special Counsel (OSC),

392    providing that office with an overwhelming amount of information and documentation based on

393    concerns that I had. After several months of not hearing anything, I contacted the OSC and was

394    told that they had no record of my submittal. I have a record of my submittal. I provided this

395    information to the OSC in fear of retaliation from Inspector General Rush and his staff, based on

396    Rush's previous mentioned comments, due to my filing my twelfth formal EEO complaint. The

397    information I provided to the OSC was, in part, critical of Inspector General Rush and was, in

398    part, critical of officials at the EEOC. I am concerned that the head of the OSC, or members of

399    his/her staff at the time, simply destroyed or somehow "misplaced" my submittal and the

400    evidence critical of Rush and others that should have been addressed, to include Rush's above-

401    referenced comments. I considered it futile at the time to pursue my concerns with the OSC,

402    because the OSC simply did not investigate previous matters I brought to its attention regarding,

403    in part, violations of my first amendment rights under the Constitution, and also assuming that

404    probably Rush was right, that the head of the OSC was a friend of his. That is the perception

405    I was left with. I also wish to note at this time that during former Inspector General Rush's

406    tenure with the Treasury OIG, I was denied six merited promotions, to include those raised in

407    05cv01194 (JGP). The pattern was that when I made a best qualified list the announcement was

408    either cancelled or I was not selected and a member of my protected groups was not selected.

409    This pattern has continued to this day.

410         In addition to Inspector General Rush's stated attitude towards equal employment

411    opportunity and his style of management, current Deputy Inspector General Dennis Schindel,

412    prior to Rush's arrival, made comments in an open forum, attended by me and many others, to

413    the effect that he did not know why people kept filing EEO complaints, and that they, the OIG

414    management, were going to do whatever they wanted anyway. It should be noted that it was

415    Schindel who left me no choice but to file my first ever formal EEO complaint in my career

416    in 1995 when, as a Deputy Assistant Inspector General (DAIG), he essentially gave me two

417    options: one, to perform the Grade 7 level tasks that I was being assigned[19] and, two, if I didn't

418    like it, to go through the formal personnel process. I performed these lower-level and lower-

419    graded tasks, a humiliating ordeal for me based on my long-term highly-rated career with the

420    Treasury OIG; my proven broad and varied technical and managerial experience with Treasury

---

[19] Certain of these issues were raised in the four administrative EEO complaints that are the subjects in 04cv0589 (JGP) and which are evidentiary of my overarching claim of a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment.

421    OIG; Schindel's personal knowledge of my work ethic and skills,[20] and following my having

422    made the best qualified list for a Grade 15 within Treasury OIG in 1991 and making the best

423    qualified list for Inspector General at another Federal agency in 1993. I performed these

424    assigned lower-level and lower-graded tasks to the best of my ability, while taking direction

425    from lower-graded employees, for nearly two years, and also, certainly at Schindel's urging,

426    ended up filing my first formal EEO complaint in my Federal career in the, at the time, twentieth

427    year of my Federal career. I claim, regarding these lower level work assignments, that Treasury

428    OIG had other employees less senior than me who could have been assigned these Grade 7 level

429    tasks. I considered then, and still consider, Schindel's actions to be discriminatory and

430    retaliatory based on actions I had taken and concerns I had raised just prior to this time.

431    Despite my long record of EEO concerns with Schindel, and despite the indisputably and

432    independently documented poor record of management at the Treasury OIG during Schindel's

433    managerial tenure, as first acknowledged in the 1995 OPM study discussed above, and as

434    recently reinforced by another external review, Schindel has risen from a Grade 15 to the

435    position of Treasury Deputy Inspector General, while I have not been permanently promoted

436    beyond the Grade 14. I also wish to note that I started working in the Treasury OIG prior to

437    Schindel's arrival.

438    I respectfully submit that officials of the United States government:

439        1. Were fully aware of my Hispanic National Origin, my sex, and my age, as these material

440           facts have been a part of my official personnel records since 1976;

---

[20] Schindel's personal knowledge of my work ethic and skills is evidenced, in part, by a highly-complimentary write-up that Schindel provided for work that I did for him in 1991 on the first Peer Review ever conducted by the Treasury OIG.

441    2. Were fully aware of my qualifications for promotion, as is clearly evidenced in my

442       consistently highly-rated performance appraisals, to include consistently high ratings in

443       the management category, over my twenty-one year career with the Treasury OIG;

444    3. Were fully aware that I had engaged the administrative EEO process and had claimed

445       a long-term pattern of discrimination, retaliation, disparate treatment, and a

446       hostile/harassing work environment committed against me in each of the nineteen formal

447       EEO complaints that I have been forced to file to date against the Secretary of the

448       Treasury;

449    4. Were fully aware of highly-specific, relevant, and pertinent material factual evidence in

450       support of the claims, issues, and matters that I have raised based on the overwhelming

451       preponderance of clear and indisputable information and documentation that I have

452       placed on the administrative records in each of my nineteen formal EEO complaints; and

453    5. Were fully aware of such evidence as provided by me that the Secretary of the Treasury

454       has always had sufficient information under which each of my formal EEO complaints

455       could have been and should have been thoroughly and timely investigated by the

456       Secretary of the Treasury, but were not; and officials of the United States government

457       have consistently decided against me.

458    I claim that I have acted in good faith throughout my nineteen administrative and four civil

459    actions, and also acted in good faith in my filings before the OSC and in my two filings of

460    Petitions for Writ of Certiorari before the Supreme Court of the United States, ref. 98-1123 and

461    02-998. I claim that I have provided, in compliance with holdings of the Supreme Court of the

462    United States, sufficient evidence of a long-term pattern of discrimination, retaliation, disparate

463  treatment, and a hostile/harassing work environment committed against me by officials of the

464  United States government, and that I have provided sufficient evidence of conspiracy against me

465  by officials of the United States government to deny me my civil right to equal employment

466  opportunity to get my claims before a jury.

467      In further regards to conspiracy, I claim that, because the U.S. Attorney's office is defending

468  the Secretary of the Treasury and as such has access to and has reviewed all of my submittals in

469  my four civil actions, the U.S. Attorney's office has been aware of and is aware of sufficient

470  evidence of conspiracy by officials of the United States government being committed against me.

471  Evidence in my administrative EEO cases and in my civil actions clearly demonstrates a pattern

472  and practice by officials of the United States government of misstating, restating, and/or

473  providing an incomplete statement of the claims, issues, and matters that I raise in my

474  administrative and in my legal actions and of misstating, restating, and/or providing an

475  incomplete statement of the evidence that I have submitted in support of my claims.  I do not

476  believe that the Secretary of the Treasury, his senior management, and his staff should continue

477  to be rewarded by officials of the United States government for clearly discriminating and

478  retaliating against me, nor should officials of the United States government be rewarded by the

479  courts for these actions nor for their conspiring to deny me my civil right to equal employment

480  opportunity and all damages legally due me.  I am a highly-qualified, highly-experienced, long-

481  term employee of the Department of the Treasury who just happens to be a female of Hispanic

482  national origin over the age of 40 who, legally and with just cause, has engaged in statutorily

483  protected activity and has engaged the legal process in pursuit of her clear civil right to equal

484  employment opportunity.

## RELIEF REQUESTED

485    I am demanding a jury trial.  I am requesting an award of damages in the amount of $60,000,000.


Respectfully Submitted,


Maria V. Carmona, *pro se*
8306 Haven Hill Court
Laurel, Maryland  20723
(301) 490-4328



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C.  20036

Maria V.  Carmona,
Complainant,

v.

John W. Snow,
Secretary,
Department of the Treasury,
Agency.

Request No. 05A51133

Appeal No. 01A51798
Agency No. TD-03-2185

## DENIAL

Maria V.  Carmona (complainant) timely requested reconsideration of the decision in *Maria V. Carmona v. Department of the Treasury*, EEOC Appeal No. 01A51798 (June 15, 2005).  EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency.  *See* 29 C.F.R.  § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R.  § 1614.405(b), and it is the decision of the Commission to deny the request.  The decision in EEOC Appeal No. 01A51798 remains the Commission's final decision.  There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision.  You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency"

Plaintiff
Exhibit
A
Upon Initial Filing

2                                                    05A51133

or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

SEP 1 5 2005

Date

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:**

SEP 1 5 2005

Date

Equal Opportunity Assistant

DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

August 5, 1994

**TO ALL EMPLOYEES OF THE OFFICE OF INSPECTOR GENERAL**

We are committed to developing an environment of equal opportunity that capitalizes on the talents and capabilities of all OIG employees. However, over the past several months it has become evident that we, as an organization, are not dealing effectively with our cultural diversity. This is affecting the welfare of all employees and the well being of our organization.

Our next step is to obtain the services of a professional consultant to help this organization identify the issues and develop solutions. We have initiated action to obtain these services as soon as possible. We will keep you informed as we collectively work through these problems.

Robert Cesca

John Balakos

James Cottos

Jay Weinstein

Gary Whittington

Plaintiff
Exhibit
B
Upon Initial Filing