## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARIA V. CARMONA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2428(JGP) |
| | ) | |
| JOHN W. SNOW, | ) | |
| Secretary of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules
of Civil Procedure ("Federal Rules"), defendant, John W. Snow,
Secretary of the Treasury, moves for dismissal of plaintiff's
conspiracy claim brought pursuant to 18 U.S.C. § 241 and
plaintiff's EEO administrative processing claim for lack of
subject matter jurisdiction or for failure to state a claim upon
which relief can be granted.  Pursuant to Rules 12(b)(6) or 56 of
the Federal Rules, defendant also moves to dismiss or for summary
judgment[1] on this latter claim as well as plaintiff's remaining

---

[1]Plaintiff should take notice that any factual assertions
contained in the affidavits in support of this motion will be
accepted by the Court as true unless plaintiff submits her own
declaration or other documentary evidence contradicting the
assertions in the attached affidavits.  See Neal v. Kelly, 963
F.2d 453 (D.C. Cir. 1992) and Rule 56(e) of the Federal Rules of
Civil Procedure which provide as follows:

> Supporting and opposing affidavits shall be made on
> personal knowledge, shall set forth such facts as would
> be admissible in evidence, and shall show affirmatively
> that the affiant is competent to testify to the matters
> stated therein.  Sworn or certified copies of all

(continued...)

claims - i.e., those brought pursuant to  Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and

the Age Discrimination in Employment Act of 1967, as amended, 29

U.S.C. § 621.

In support of this motion, the Court is respectfully

referred to the accompanying memorandum of points and authorities

and statement of material facts not in dispute.  See LcvR 7(a).

A proposed order consistent with the relief requested in this

motion is also attached hereto.  Id. at 7(c).

Date: March 17, 2006             Respectfully Submitted,


                                 /s/ Kenneth L. Wainstein /mj
                                 _____
                                 KENNETH L. WAINSTEIN, D.C. BAR # 451058
                                 United States Attorney

---

[1](...continued)
papers or parts thereof referred to in an affidavit
shall be attached thereto or served therewith.  The
court may permit affidavits to be supplemented or
opposed by depositions, answers to interrogatories, or
further affidavits.  When a motion for summary judgment
is made and supported as provided in this rule, an
adverse party may not rest upon the mere allegations or
denials of the adverse party's pleading, but the
adverse party's response, by affidavits or as otherwise
provided in this rule, must set forth specific facts
showing that there is a genuine issue for trial.  If
the adverse party does not so respond, summary
judgment, if appropriate, shall be entered against the
adverse party.

Fed.R.Civ.P. 56(e).

/s/ R. Craig Lawrence
_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


/s/ Beverly M. Russell
_____
Of Counsel:                    BEVERLY M. RUSSELL, D.C. Bar #454257
Cynthia Langwiser, Esq.        Assistant United States Attorney
U.S. Dept. of the Treasury     U.S. Attorney's Office for the
                                 District of Columbia
                               555 4th Street, N.W., Rm. E-4915
                               Washington, D.C.  20530
                               Ph:  (202) 307-0492

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
MARIA V. CARMONA,                    )
                                     )
        Plaintiff                    )
                                     )
          v.                         )    Civil Action No. 05-2428(JGP)
                                     )
JOHN W. SNOW,                        )
  Secretary of the Treasury,         )
                                     )
        Defendant.                   )
_____)
```

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Federal Rules"), defendant, John W. Snow, Secretary of the Treasury, moves to dismiss plaintiff's conspiracy claims brought pursuant to 18 U.S.C. § 241 and her claims against the Equal Employment Opportunity Commission ("EEOC") for lack of subject matter jurisdiction. See, e.g. Pl.'s Compl. 21:29, 114:130, 164:168, 191:194, 250:256, 271:279, 292:295, 308:344, and 347:365. Defendant also moves to dismiss these claims and the remaining allegations in this case for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules. Alternatively, pursuant to Rule 56, defendant moves for summary judgment because there are no genuine issues in dispute and defendant is entitled to judgment as a matter of law.

In addition to citing to 18 U.S.C. § 241, plaintiff brings this suit pursuant to Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act ("ADEA") of 1967, as amended, 29 U.S.C. § 621, et seq., asserting allegations based on the processing of her administrative complaint of discrimination, her unhappiness with the electronic system for filing applications for positions, and her non-selection for a position that was ultimately cancelled. Pl.'s Compl. 207:240.  Under well-settled law of Title VII and the ADEA, the first claim is not cognizable under these statutes, the second claim is not an adverse action for purposes of maintaining suit under the statutes, and the third claim evidences facts that fail to establish a prima facie case of discrimination.  Accordingly, this civil suit should be dismissed in entirety.  Defendant's bases for seeking the relief requested herein are more fully set forth below.

I.    **BACKGROUND**

   A.    **The Vacancy Announcement**

      1.    **Advertising through Quick Hire**

The position of Director of Audit Operations was advertised on October 13, 2002 with a closing date of September 13, 2002. Ex. 1, Vacancy Announcement No. OA-2002-0010. The position was one of the first announced through the Department of Treasury's new system called Quick Hire.  Ex. 2, Unsworn Declaration[2] of

---

[2]See LcvR 5.1(h) which states

(continued...)

Kimberly T. Mingo, at 2, April 9, 2003.  In Quick Hire, the human resource specialist fills in information "live" and once finished, forwards the announcement to OPM.  <u>Id.</u>

Prior to Treasury's use of Quick Hire, the agency posted vacancy announcements through OPM and on an internal agency listing.  <u>Id.</u>  The Agency also placed copies of announcements in a central location "on a carousel" for employees.  <u>Id.</u>  With Quick Hire, however, the Agency was no longer able to forward copies of announcements to public folders or print copies to the carousel.  <u>Id.</u>  However, the "most common place for employees to find vacancy announcements [was, in fact,] through the OPM USAJOBS website. . ."  <u>Id.</u> at 3. That did not change with the Quick Hire system. <u>Id.</u>

Kimberly T. Mango, the Human Resource Specialist for the position at issue here, states that, although the Quick Hire system is time-consuming for an applicant at least initially because the applicant must create a resume and answer core questions, once this is done, the applicant does not have to

---

[2](...continued)
> Whenever any matter is required or permitted by law or by rule to be supported by the sworn written statement of a person. . ., the matter may, with the same force and effect, be supported by the unsworn declaration, certificate, verification, or statement in writing of such person which is subscribed as true under penalty of perjury, and dated...

recreate the resume again.  Id. at 2-3; see also Ex. 3, Resume of
Maria V. Carmona.

Prior to implementing Quick Hire, the Agency used a ranking
panel to determine the Best Qualified List.  Ex. 2, Mingo Decl.
at 2. With Quick Hire, applicants are scored based on their
responses to questions, not on narrative responses to "Knowledge,
Skills and Abilities" or KSA's as previously done. Id. at 2 and
4. Specifically, with Quick Hire, instead of obtaining applicant
experience information through narrative responses to KSA's, the
information is obtained through a group of questions answered by
"yes," "no," multiple choice, or limited summarization.  Id. at
4. Given that applications are rated mechanically, Quick Hire
eliminates rating panels and is faster from a Human Resources
perspective.  Id. at 2 and 5. The Agency still, however, does
interviews.  Id.

Plaintiff apparently had problems printing her application
through Quick Hire.  Id. at 4.  The personnel office
subsequently printed a copy for plaintiff and then plaintiff
complained about unusual characters that had printed on her
resume.  Id.  The personnel office was aware that the Quick Hire
process printed unusual characters and, at that time, was working
on the problem. Id.  Plaintiff and other applicants who had a
similar experience with the printing of their applications and
who had called the personnel office with their concerns were

assured that this electronic glitch would have no impact on their
application.  Id. at 4 and 5.  Indeed, although plaintiff had
characters on the printed copy of her application which she had
not typed, this glitch clearly had no effect on her overall
rating.  Id. at 5.  In fact, plaintiff was one of only two
applicants to receive a perfect score for this announcement.  Id.

### 2.  Cancellation of the Position

Marla A. Freedman, Assistant Inspector General for Audits,
was the selecting official for the Supervisory Auditor position.
Ex. 4, Unsworn Declaration of Marla A. Freedman, at 2, April 17,
2003.  She and Bob Taylor, a deputy in her office, conducted
interviews together using a standard list of questions.  Id.
Plaintiff was not a top choice based on her interview.  Id.
Ms. Freedman also stated that audit operation work was somewhat
different from auditing, and other candidates had more focused
operational experience.  Id.  Ms. Freedman recommended another
individual for the position.  Id.

However, during this period, Inspector General senior
officials, including Jeffrey Rush, the Inspector General,
Ms. Freedman, and Dennis Schindel, Ms. Freedman's immediate
supervisor, had a sense that their office would likely be
impacted by a newly created Office of Inspector General at the
Department of Homeland Security ("DHS").  Id. at 2. At that time,
while passage of the DHS bill was uncertain, support for such
department was broad.  Id.  Accordingly, Mr. Rush, Ms. Freedman

and Mr. Schindel discussed whether a GS-15 to carry out
operations would be needed if the new department were
established.  Id.  They eventually decided to cancel the vacancy.
Id.  They decided that, once they had a better sense of what
would happen, they could re-announce the position if appropriate.
Id.  Ms. Freedman notes that now that officials know the
ramifications of the creation of the new cabinet-level department
and the divestiture of certain office functions due to the
creation of DHS, the decision to cancel the vacancy was, in
retrospect, appropriate and reasonable.  Id. at 3. Her office has
gone from 165 positions to 52 positions.  Id.

    As of April 13, 2003, the date on which Ms. Freedman
provided her declaration for the administrative investigation
into plaintiff's complaint, the position of Director of Audit
Operations was being staffed by rotating grade 14's into the
position on a monthly basis. Id. at 3.  Ms. Freedman asked
plaintiff to rotate into the position but plaintiff refused. Id.

**B.    Plaintiff's Administrative Complaint**

    Plaintiff filed an administrative complaint of
discrimination on December 12, 2002 alleging that she had been
subjected to discrimination based on nonselection for the
position of Director of Audit Operations, Supervisory Auditor,
GS-511-15 and her unhappiness with the manner in which the
position was advertised and processed.  Ex. 5, Pl.'s Compl. of
Employment Discrimination with the Dept. of Treasury (filing

-6-

date: December 27, 2002).  On February 3, 2002, the Department of

the Treasury accepted the following claim for processing:

> Was [plaintiff] discriminated [against] based on sex
> (Female), national origin (Hispanic), age (DOB:
> 10/08/52) and retaliation for her EEO activity, when on
> September 13, 2002, her application for Vacancy
> Announcement OA-2002-0010 for the position of Director
> of Audit Operations, Supervisor Auditor, GS-511-15 was
> mishandled; and subsequently, the vacancy announcement
> was cancelled.

Ex. 6, Letter from Jerry Armstrong to J. Steven Elbell, Feb. 3,

2003.

Ms. Jean Bauer, the EEO Investigator assigned to plaintiff's

complaint, first contacted J. Steven Elbell, plaintiff's

representative, on March 27, 2003 via telephone.  Ex. 7,

Declaration of Jean R. Bauer, first page, Feb. 3, 2006.  She

contacted Mr. Elbell twice on that date and left messages on his

recorder both times.  Id.

On March 27, 2003, Mr. Elbell called Ms. Bauer and left a

telephone message in which he indicated that "(1) an

investigation should not go forward until the issues were agreed

to, (2) he didn't know which complaint [Ms. Bauer was

referencing], (3) the Director of the Complaint Center, Jerry

Armstrong, had actually made up an issue that [plaintiff] didn't

claim, (4) [Ms. Bauer] didn't need to call back, (5) they -

presumably plaintiff and Mr. Elbell - were not going to continue

with this, (6) [Ms. Bauer] could put whatever [she] wanted in

[her] report, (7) [Ms. Bauer] could tell Mr. Armstrong what they

- again presumably plaintiff and Mr. Elbell - said; (8) [Ms.

-7-

Bauer] could tell Miss Coates of the Department of the Treasury that they didn't believe [Mr. Armstrong and Ms. Coates] had the integrity to be in the positions [they were] in, and (9) if [Ms. Bauer] called again, they would consider it a continuation of the hostile work environment that [plaintiff] was under." Id.

On April 1, 2003, Ms. Bauer forwarded a letter to Mr. Elbell expressing regret that plaintiff refused to meet with her to provide a statement in reference to the claims accepted for investigation and noting that plaintiff's representative affirmatively requested that Ms. Bauer not contact plaintiff as that would be considered "a continuation of a hostile work environment." Ex. 8, Letter from Jean R. Bauer, EEO Investigator, to Steven Elbell, April 1, 2003. Ms. Bauer had no further contact with plaintiff or Mr. Elbell. Ex. 7, Bauer Decl., second page.

## II. STANDARD OF REVIEW

### A. Dismissal for Lack of Subject Matter Jurisdiction (Fed.R.Civ.P. 12(b)(1))

"A motion under 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'" Gardner v. U.S., No. CIV. A. 96-1467EGS, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153 (2001), quoting, Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987); see also 4 Wright & Miller:  Federal Prac. & Proc. § 1350 (R12)(2002 Supplement)("...subject matter jurisdiction deals with

the power of the court to hear the plaintiff's claims in the
first place, and therefore imposes upon courts an affirmative
obligation to ensure that they are acting within the scope of
their jurisdictional power.")  A court may resolve a motion to
dismiss brought pursuant to Rule 12(b)(1) in two ways.  First,
the court may determine the motion based solely on the complaint.
Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C.
Cir. 1992).  Alternatively, to determine the existence of
jurisdiction, a court may look beyond the allegations of the
complaint, consider affidavits and  other extrinsic information,
and ultimately weigh the conflicting evidence.  See id.; see also
Cureton v. United States Marshal Service, 322 F.Supp.2d 23, 2004
WL 1435124, *2 (D.D.C. June 28, 2004).

### B.   Motion for Failure to State a Claim (Fed.R.Civ.P. 12(b)(6))

A motion to dismiss brought pursuant to Rule 12(b)(6) of the
Federal Rules should be granted if the plaintiff can prove no set
of facts in support of her claim that would entitle her to
relief.  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276
(D.C. Cir. 1994).  Although the plaintiff is given the benefit of
all inferences that reasonably can be derived from the facts
alleged in the complaint, the court need not accept inferences
that are not supported by such facts, nor must the court accept
plaintiff's legal conclusions cast in the form of factual
allegations. Id.  Additionally, if a party relies on matters

-9-

outside the pleading to support a motion to dismiss pursuant to
Rule 12(b)(6), such motion is treated and disposed as one for
summary judgment pursuant to Rule 56 of the Federal Rules.
Fed.R.Civ.P. 12(b)(6).

   C.   **Summary Judgment (Fed.R.Civ.P. 56)**

   Summary judgment may be granted when the pleadings and
evidence demonstrate that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).
A genuine issue is one that could change the outcome of the
litigation.  See Anderson v. Liberty Lobby, Inc, 477 U.S. 242,
243 (1986).  While all evidence and the inferences drawn
therefrom must be considered in the light most favorable to the
nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 587 (1986), the nonmoving party - when faced
with a summary judgment motion - has the burden of establishing
more than the "mere existence of a scintilla of evidence"
demonstrating a genuine issue in dispute for purposes of
defeating the moving party's motion.  See Lester v. Natsios, 290
F.Supp.2d 11, 19-20 (D.D.C. 2003), citing Anderson v. Liberty
Lobby, Inc., 477 U.S. at 255.  "If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted." Id. at 249-250.  As the Supreme Court has
stated, "[o]ne of the principle purposes of the summary judgment

rule is to isolate and dispose of factually unsupported claims or defenses." <u>Celotex</u>, 477 U.S at 323-324.

## III. DISPOSITION UNDER TITLE VII AND THE ADEA

### A.    Discrimination Claims

The ultimate issue in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment action was motivated at least in part by intentional discrimination.  In the absence of direct evidence - e.g., explicit discriminatory statements - plaintiffs have sought to create a triable issue of discrimination by relying on the three-part test first enunciated by the Supreme Court in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  It should be remembered, however, that at all times the burden of proof remains with the plaintiff even when the plaintiff's case is built on inferential evidence under the <u>McDonell-Douglas</u> analysis.  In the summary judgment context, the central inquiry remains the evidence, or lack thereof, of discrimination in a particular case.  The Court should weigh first whether the plaintiff has proof that would permit a reasonable jury to conclude that discrimination was a motivating factor, second, defendant's proof that it did not discriminate including defendant's explanations for the non-selections, and third, the evidence as a whole to determine if there is a need for trial.

The Supreme Court has explained that the elements of a prima facie case of discrimination may differ from case to case.  <u>See</u>

<u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253
n.6 (1981).  The fundamental requirement, however, is that the
prima facie case, without additional proof to the contrary, gives
rise to an inference that the defendant's conduct was
discriminatory.  <u>See</u> <u>Simens v. Reno</u>, 960 F.Supp 6, 8-9 (D.D.C.
1997).  As a general matter, therefore, to establish a prima
facie case of discrimination based on national origin and sex
under Title VII, a plaintiff must demonstrate by a preponderance
of the evidence that (1) she was a member of a protected group,
(2) an adverse employment action took place, and (3) the
unfavorable action gives rise to an inference of discrimination.
<u>Stella v. Mineta</u>, 284 F.3d 135, 145 (D.C. Cir. 2002).

Likewise, to make out a prima facie case of discrimination
under the ADEA, a plaintiff must show that she:  (1) belongs to
the statutorily-protected age group (over 40), (2) suffered an
adverse action, and (3) was disadvantaged in favor of a younger
person.  <u>May v. Shuttle, Inc.</u>, 129 F.3d 165, 172 (D.C. Cir.
1997), <u>cert. denied</u>, 524 U.S. 927 (1998); <u>Forman v. Small</u>, 271
F.3d 285, 292 (D.C. Cir. 2001).  The "younger person" referred to
in the third requirement must be a person "considerably" younger
than the plaintiff.  <u>See</u> <u>Crockett v. Richardson</u>, 127 F.Supp. 2d
40, 46 (D.D.C. 2001); <u>see also</u> <u>Beeck v. Federal Express Corp.</u>, 81
F. Supp.2d 48, 53 (D.D.C. 2001) ("To raise an inference of
discrimination by showing that a younger person was favored, a
plaintiff must point to a worker with a 'significant' or

'substantial' difference in age") (citing O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996)).

If the employee succeeds in establishing a prima facie case of discrimination, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action.  See McDonnell Douglas, 411 U.S. at 802.  The burden on the employer is one of production, not persuasion - "it can involve no credibility determination."  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 144 (2000), quoting, Hicks, 509 U.S. at 509.

Once it is established that both parties have met their respective burdens, the burden shifting scheme becomes irrelevant.  Hicks, 509 U.S. at 510.  Then, the plaintiff must establish, by a preponderance of the evidence, that age, "race, color, religion, sex, or national origin was a motivating factor for any employment practice."  Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003), citing, 42 U.S.C. § 2000e-2(m); see also Phuong v. National Academy of Sciences, 927 F.Supp. 487, 489 (D.D.C. 1996)(To prevail under the ADEA, "plaintiff must establish by a preponderance of the evidence that age was a determining or motivating factor in an adverse employment action taken by her employer.")

A plaintiff must present substantial and credible evidence of discrimination in order to survive a motion for summary judgment.  See Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir.

-13-

1999) ("Accepting [some] conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."); Carpenter v. Federal Nat'l Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999) (if plaintiff merely shows that the legitimate nondiscriminatory reason offered by the employer is a pretext for a decision intending to cover up an unsavory reason -- but one that is not illegal under the antidiscrimination law, the plaintiff is not entitled to try issues of fact, and summary judgment for the employer is appropriate.); Hastie v. Henderson, 121 F.Supp.2d, 72, 77 (D.D.C. 2000) aff'd, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001)("To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'"); Woodruff v. DiMario, 164 F.Supp. 2d 1, 5 (D.D.C. 2001).  Additionally, there will be "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." Weigert v. Georgetown University, 120 F.Supp.2d 1, 22 (D.D.C. 2000), quoting, Reeves v. Sanderson Plumbing Co., 530 U.S. 133 (2000).

-14-

### B.   Retaliation Claim

Title VII provides, in pertinent part, that it is unlawful for an employer to retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).

A prima facie case of retaliation or reprisal under Title VII is established when the plaintiff demonstrates that (1) she engaged in protected behavior; (2) she was subjected to an adverse employment action by her employer; and (3) there is a causal link between the adverse action and the protected activity.  Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985).  The determination as to whether the plaintiff's "opposition" or "participation" conduct is "protected activity is a question of law because it relies on an interpretation of Title VII."  Broderick v. Donaldson, 338 F.Supp.2d 30, 40 (D.D.C. 2004)(citation omitted).  Additionally, to meet the "adverse employment action" requirement, a plaintiff must demonstrate that he or she has suffered "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm."  Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir.

-15-

1999) (<u>citing</u> <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57
(1986) and <u>quoting</u> <u>Burlington Industries, Inc. v. Ellerth</u>, 524
U.S. 742, 761 (1998)) (other citations omitted).  Finally, a
causal connection may be established by showing that the employer
knew of the protected EEO activity and that the alleged adverse
personnel action took place shortly following the protected
activity. <u>See</u> <u>Clark County School District v. Breeden</u>, 532 U.S.
268 (2001); <u>Chen v. General Accounting Office</u>, 821 F. 2d 732, 739
(D.C. Cir. 1987).

If the plaintiff is able to establish a prima facie case of
retaliation, the analysis then follows as that for a
discrimination claim under Title VII, i.e., plaintiff has the
burden of proving that defendant's actions were not taken for the
reasons offered, but instead, for a retaliatory purpose.  <u>See,
e.g.</u> <u>Freedman v. MCI Telecommunications Corp.</u>, 255 F.3d 840, 844-
845 (D.C. Cir. 2001).

IV.  **ARGUMENT**

A.  **Plaintiff's Conspiracy Claim Should Be Dismissed for
Lack of Subject Matter Jurisdiction, or Alternatively,
Failure to State a Claim.**

As an initial matter, the statute at 18 U.S.C. § 241 which
addresses civil rights criminal conspiracy violations does not
give rise to a private right of action.  <u>See</u> <u>Cok v. Cosentino</u>,
876 F.2d 1, 2 (1st Cir.1989) (no private right of action under 18
U.S.C. §§ 241-242); <u>Risley v. Hawk</u>, 918 F.Supp. 18, 21 (D.D.C.
1996).  Further, the United States cannot be sued without its

-16-

consent (<u>see, e.g.</u> <u>Ickes v. Fox</u>, 300 U.S. 82, 96 (1937) and <u>Hercules v. United States</u>, 516 U.S. 417, 422-423 (1996)) and the United States has not consented to be sued under the civil rights statutes.[3]  <u>See,e.g.</u> <u>Hohri v. United States</u>, 782 F.2d 227, 245 n.43 (D.C. Cir. 1986), <u>reh'g denied</u>, 793 F.2d 304 (D.C. Cir. 1987), <u>rev'd on other grounds sub nom.</u>, <u>United States v. Hohri</u>, 482 U.S. 64 (1987); <u>Unimex, Inc. v. United States Dep't of Housing and Urban Dev.</u>, 594 F.2d 1060, 1061 (5th Cir.1979); <u>Graves v. U.S., et al.</u>, 961 F.Supp. 314, 318 (D.D.C. 1997); <u>Biase v. Kaplan</u>, 852 F.Supp. 268, 289-90, n.18 (D.N.J.1994) ("[N]either § 1985 nor any other provision of the Civil Rights Act may provide the basis for an action against the United States nor a federal agency.").

Additionally, plaintiff's conspiracy claim must be dismissed because the exclusive remedy for her claims lies with Title VII or the ADEA.  <u>See</u> <u>Brown v. General Services Administration</u>, 425 U.S. 820, 835 (1976) (dismissing [42 U.S.C.] § 1981 claim and holding that "Section 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment"); <u>see also</u> <u>Kizas v. Webster</u>, 717 F.2d 524, 542 (D.C. Cir. 1983); <u>Graves</u>, 961 F.Supp. at 322.

---

[3]18 U.S.C. § 241 is the criminal counterpart to 42 U.S.C. § 1985.  <u>See, e.g.</u> <u>Snyder v. I.R.S.</u>, 596 F.Supp. 240, 245 (N.D.Ind. 1984).

-17-

Courts have extended the Brown reasoning "to reject litigants' efforts to initiate discrimination claims against the federal government under the Constitution or statutes other than Title VII." See, Brug v. National Coalition for the Homeless, 45 F. Supp. 2d 33, 42 (D.D.C. 1999) (dismissing § 1983, Fifth Amendment and Fourteenth Amendment claims); see also Kizas v. Webster, 707 F.2d 524, 542 (D.C. Cir 1983), cert. denied, 464 U.S. 1042 (1984) (Title VII "precludes actions [alleging employment discrimination] against federal officials for alleged constitutional violations as well as actions under other federal legislation."); Ward v. Kennard, 133 F.Supp.2d 54, 57 (D.D.C. 2000), recons. den. 200 F.R.D. 137 (D.D.C. 2001); Thorne v. Cavazos, 744 F. Supp 348, 351-52 (D.D.C. 1990); Graves v. U.S., 967 F.Supp. 572, 574 (D.D.C. 1997); Richards v. Merit Systems Protection Board, 739 F.Supp. 657, 659 (D.D.C. 1990)(Court rejected Plaintiff's constitutional claim since it raised the same discriminatory conduct as that under Plaintiff's Title VII claim, the latter statutory scheme serving as Plaintiff's exclusive remedy.)   Attempts by litigants to bring age discrimination claims through statutes other than the ADEA have been similarly rejected by the Courts.  See, e.g. Rattner v. Bennett, 701 F.Supp. 7, 9 (D.D.C. 1988).

Plaintiff's attempt to establish the Court's jurisdiction over her discrimination claim through a statutory provision other than Title VII and the ADEA is impermissible and, as such, the

-18-

claim should be dismissed for lack of subject matter jurisdiction or failure to state a claim.

**B.    Plaintiff's Claims Related to the Processing and Adjudication of Her Administrative Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction or Failure to State A Claim.**

**1.    Plaintiff's Dissatisfaction with the Processing of Her Administrative Complaint Fails to State.**

Title VII and EEOC regulations provide explicit remedies for federal employees who claim to be victims of employment discrimination.  <u>See</u> 42 U.S.C. § 2000e-16 and 29 C.F.R. part 1614.  Individual complaints of employment discrimination may be filed with the employing agency.  29 C.F.R. § 1614.106.  If the employee is dissatisfied with the agency's resolution of the complaint, the employee may file a civil action in a federal district court or appeal the agency's final decision to the EEOC. 42 U.S.C. § 2000e-16; 29 C.F.R. §§ 1614.401 and 1614.407 (2001). The charging party may also file a suit in federal district court if she is dissatisfied with EEOC's resolution of her appeal. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.

However, neither Title VII nor the ADEA provides district courts with jurisdiction over claims by employees dissatisfied with the manner in which their complaints were processed.  <u>See</u> <u>Nelson v. Greenspan</u>, 163 F.Supp.2d 12, 18 (D.D.C. 2001); <u>Svenson</u> <u>v. Thomas</u>, 607 F. Supp. 1004, 1006 (D.D.C. 1985); <u>Scheerer v.</u> <u>Rose State College</u>, 950 F.2d 661, 663 (10th Cir. 1991).  In fact, EEOC regulations require that an agency dismiss a claim that

"alleges dissatisfaction with the processing of a previously filed complaint." 29 C.F.R. § 1614.107(a)(8). Accordingly, plaintiff's claim related to the processing of her complaint, <u>see</u> pl.'s Compl. 247:249, fails to state a claim and should be dismissed on this basis.

> **2.  Plaintiff's Claim Related to Her Dissatisfaction with the EEOC Is Subject to Dismissal for Lack of Subject Matter Jurisdiction and Failure to State a Claim.**

In her complaint, plaintiff makes specific allegations against the EEOC and its officials although the EEOC is not a named party to this suit and plaintiff has not attempted to amend her complaint to add the EEOC or its officials as a party. Pl.'s Compl. 250:256, 271:279, 308:344, 347:365.

Regardless, such amendment would ultimately be futile. Title VII provides federal courts with three specific grants of jurisdiction, none of which would confer jurisdiction over plaintiff's claims against the EEOC. First, section 706(f)(3), 42 U.S.C. § 2000e-5(f)(3) (1994), grants jurisdiction over actions brought against employers, employment agencies, and labor organizations accused of discriminatory employment practices.

Second, section 707(b), 42 U.S.C. § 2000e-6(b) (1994), grants the court jurisdiction over actions brought by the EEOC or the Attorney General against persons engaged in a pattern or practice of resistance to the goals of Title VII.

Finally, section 717, 42 U.S.C. § 2000e-16 (1994), grants jurisdiction over suits by federal employees or applicants for

-20-

employment against the head of the federal agency accused of
discriminatory employment practices.  *The only proper defendant
in a suit under section 717(c), 42 U.S.C. § 2000e-16(c) (1994),
however, is the "head of the department, agency or unit" in which
the alleged discriminatory acts occurred.*  See Jarrell v. U.S.
Postal Serv., 753 F.2d 1088, 1091 (D.C. Cir. 1985); Hall v. Small
Bus. Admin., 695 F.2d 175, 180 (5th Cir. 1983); Canino v. EEOC,
707 F.2d 468, 472 (11th Cir. 1983); Newbold v. United States
Postal Serv., 614 F.2d 46, 46 (5th Cir. 1980).  These and other
cases establish that section 717(c) permits suit against the
employing agency head but not the EEOC (see, e.g. Pl.'s Compl.
269-271).  Therefore, none of the jurisdictional provisions of
Title VII authorizes individuals alleging discrimination to file
suit against the EEOC.  See Waldron v. Pierre, 995 F. Supp. 935,
936-37 (N.D. Ill 1998); Storey v. Rubin, 976 F. Supp. 1478, 1483
(N.D. Ga. 1997), aff'd, 144 F.3d 56 (11th Cir. 1998); Golyar v.
McCausland, 738 F. Supp. 1090, 1094-95 (W.D. Mich. 1990).

Moreover, the District of Columbia Circuit has expressly
held that Title VII does not create an express cause of action by
persons such as plaintiff against the EEOC.  See Smith v.
Casellas, 119 F.3d 33, 34 (D.C. Cir. 1997) (per curiam)
("Congress has not authorized, either expressly or impliedly, a
cause of action against the EEOC for the EEOC's alleged
negligence or other malfeasance in processing an employment
discrimination charge."); Ward v. EEOC, 719 F.2d 311, 313 (9th

Cir. 1983); <u>Gibson v. Missouri Pac. R.R. Co.</u>, 579 F.2d 890, 891
(5th Cir. 1978) (per curiam); <u>see also</u> <u>Gantt v. Yeutter</u>,
No.Civ.A. 89-3212, 1991 WL 11031481, *2 (D.D.C. Feb. 15,
1991)("Title VII does not grant a right of action against the
EEOC, either expressly or by clear implication, to challenge the
EEOC's investigation, processing, or disposition of a Title VII
complaint."); <u>Packer v. Garrett</u>, 735 F.Supp. 8, 9 (D.D.C. 1990).
Accordingly, plaintiff's claims against the EEOC should be
dismissed for lack of subject matter jurisdiction or failure to
state a claim on which relief may be granted.

**C.  Plaintiff's Civil Action Should Be Dismissed in
Entirety for Failure to Cooperate During the
Administrative Processing of Her EEO Complaint.**

First, and most important, despite the diligent and
courteous efforts of the EEO Investigator, plaintiff blatantly
and disdainfully refused to cooperate in the administrative
process by providing a statement to assist with and effectuate
that process. <u>See</u> Ex. 7, Bauer Decl, first page; Ex. 8, Bauer
Ltr. Indeed, one can fairly say that plaintiff "thumbed her nose"
at the administrative process. <u>Id.</u>  Of course, now she wants
reward for her recalcitrance, i.e., to bypass the administrative
procedures which apply to all EEO complainants and have this
Court review her claims.  There is no legal or equitable reason
for countenancing plaintiff's behavior, and this suit should be
dismissed with prejudice for failure to exhaust administrative
remedies.

It is well-established that a plaintiff seeking to litigate an employment discrimination claim in federal district court must have actively cooperated in good faith in the EEO administrative process. See Hill v. Potter, 352 F.3d 1142, 1145-1146 (7th Cir. 2002); Crawford v. Babbitt, 186 F.3d 1322, 1327 (11th Cir. 1999); Briley v. Carlin, 172 F.3d 567 (8th Cir. 1999); Artis v. Greenspan, 158 F. 3d 1301, 1306 (D.C. Cir. 1998); Wilson v. Pena, 79 F.3d 154, 164 (D.C. Cir. 1996 ); Francis v. Brown, 58 F.3d 191, 192 (5th Cir. 1995); Greenlaw v. Garrett, 59 F.3d 994, 997 (9th Cir. 1995); Khader v. Aspin, 1 F.3d 968, 971 (10th Cir. 1993); Wrenn v. Depaitinent of Veteran's Affairs, 918 F.2d 1073, 1078 (2d Cir. 1990), cert. denied, 499 U.S. 977 (1991); Tanious v. Internal Revenue Service, 915 F.2d 410, 411 (9th Cir. 1990); Munoz v. Aldridge, 894 F.2d 1489, 1492-1493 (5th Cir. 1990); Miles v. Department of the Army, 881 F. 2d 11 316, 318 (9th Cir. 1989); Wade v. Secretary of the Army, 796 F. 2d 1369, 1377 (11th Cir. 1989); Edwards v. Department of the Army, 708 F.2d 1344, 1345 (8th Cir. 1983); Johnson v. Bergland, 614 F.2d 415, 417-418 (5th Cir. 1980); Jordan v. United States, 522 F.2d 1128, 1132-1133 (9th Cir. 1975).

Good faith cooperation includes participating in the EEO investigation, and providing an affidavit at the appropriate time to the EEO investigator. See Rann v. Chao, 346 F.3d 192, 196-197 (D.C. Cir. 2003), cert. denied, 125 S.Ct. 35(2004); Carmona v. O'Neill, No. 02-5088, 2002 WL 1635379 (D.C. Cir. Oct. 1, 2002), cert. denied, 537 U.S. 1193 (2003);  Bloodsaw v. Secretary of the

Department of the Treasury, 937 F.2d 611, 1991 WL 127690 (9th
Cir. July 15, 1991) (refusal to provide an affidavit to EEO
investigator is not good faith cooperation and precludes civil
action on same claim due to failure to exhaust)(unpub.).  This
rule is predicated on the concept that exhaustion presupposes
cooperation with the procedural requirements imposed by an
administrative entity, here the EEOC.  See 29 C.F.R. §
1614.108(a).

     Thus, based on all the foregoing, a plaintiff is not
permitted to effectively sabotage a federal agency's ability to
process, investigate, or decide a claim of discrimination and
then proceed into federal court to file a civil action on the
same matter. As the Eleventh Circuit has explained:

          The purpose of exhaustion is to give the agency the
          information it needs to investigate and resolve the
          dispute. ...Good faith effort by the employee to
          cooperate with the agency and EEOC and to provide all
          relevant information is all that exhaustion requires.

Wade, at 796 F.2d at 1377.

     Similarly, the D.C. Circuit has stressed that the exhaustion
doctrine in this context is invoked where a plaintiff in the EEO
administrative process relies on "vague allegations of
discrimination" and utterly refuses to provide any factual
details to an EEO investigator, "thus completely frustrating" the
agency's ability to investigate the complaint.  Wilson v. Pena,
79 F.3d 154, 164-165 (D.C. Cir. 1996).  Thus, one purpose of the
doctrine prevents a plaintiff from effectively halting the proper

workings of the EEO administrative process and then
"unnecessarily burdening the courts." Id.

Likewise, where a Title VII plaintiff refused to attend an
administrative hearing to provide evidence in support of his
claim of a discriminatory discharge, the Ninth Circuit upheld
the district court's subsequent dismissal of the claim,
concluding that the plaintiff had not exhausted his
administrative remedies. Tanious, 915 F.2d at 411. The court
stressed that "impatience" or annoyance with the agency "does
not justify" the failure to cooperate, and that the plaintiff
was precluded from resorting to the federal courts after he
"rendered it impossible" for the administrative decisionmaker to
"decide his claims." Id.

As this Court stated in another suit brought by plaintiff
and dismissed for failure to cooperate with the EEO
investigation, "[t]he Court will not sanction Plaintiff's suit
in this forum after her lack of cooperation at the agency level.
. .[f]or the Court to ignore the efforts of the agency and, in
essence, reward Plaintiff's non-cooperation, would engender
particularly undesirable outcomes." Carmona v. O'Neill, Civil
Action No. 01-0115(CKK)(D.D.C. Jan. 21, 2002)(attached hereto as
Ex. 9), aff'd, No. 02-5088, 2002 WL 1635379 (D.C. Cir. Oct. 1,
2002), cert. denied, 537 U.S. 1193 (2003).  Plaintiff in this
case has continued her past practice of blithely ignoring the
administrative requirements of cooperating with the agency's

investigation and then, after such flagrant disregard, filing in this Court.  See Ex. 7, Bauer Decl, first page; Ex. 8, Bauer Ltr.; see also Carmona v. Snow, Civil Action No. 05-1194(JGP)(D.D.C.)(R. 14, Def.'s Mot. Dismiss or Summ. J., Ex. 3, Investigative Report, at 7-8).  Such conduct towards established legal standards should not be indulged.  Accordingly, plaintiff's suit should be dismissed in its entirety for failure to cooperate with the administrative investigation.

> **D.   Allegation Related to Plaintiff's Dissatisfaction With the Electronic Process for Filing Applications is Not an Adverse Action.**

To make a prima facie case of discrimination under Title VII, a plaintiff is required to demonstrate, among other matters, that an adverse personnel action took place.  Douglas v. Pierce, 707 F. Supp. 567 (D.D.C. 1988), aff'd, 906 F.2d 783 (1990); Mitchell v. Baldrige, 759 F.2d 80, 84 (D.C. Cir. 1985).  The D.C. Circuit affirmed in Brown v. Brody, 199 F.3d 446 (D.C. Cir. 1999), that a "common element for discrimination and retaliation claims against federal employers, and private employers, is . . . some form of legally cognizable adverse action by the employer."  Brown, 199 F.3d at 453.

Further, the D.C. Circuit in Brown affirmed that, to state a discrimination or retaliation claim under Title VII, a plaintiff must demonstrate that he or she has suffered "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future

employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." Brown, 199 F.3d at 457. Specifically, to meet the "adverse personnel action" requirement, the plaintiff must make a "clear showing" of a "material adverse employment action," such as "'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. at 456 (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986) and quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998)) (other citations omitted); see also Page v. Bolger, 645 F.2d 227, 233 (4th Cir.) (en banc), cert. denied, 454 U.S. 892 (1981) ("personnel action" is one that contemplates "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating. . . . [not] interlocutory or mediate decisions having no immediate effect upon employment conditions"); Crady v. Liberty National Bank and Trust Co., 993 F. 2d 132, 136 (7th Cir. 1993) ("a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration in job responsibilities"); Raley v. Board of St. Mary's County Comm'rs, 752 F. Supp. 1272, 1278, 1281 (D. Md. 1990).

Indeed, the courts have firmly resisted intervening in grievances that would result in "judicial micromanagement of business practices" and are at most based on mediate employment

decisions to which an employee disagrees.  See  Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001), quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996) and Mungin v. Katten, Muchin & Zavis, 116 F.3d 1549, 1556 (D.C. Cir. 1997); see also Brodetski v. Duffey, 141 F. Supp. 2d 35, 44 (D.D.C. 2001) (citations omitted) ("courts cannnot be wheeled into action for every workplace slight, even one that was possibly based on protected conduct").

Based on these standards, plaintiff cannot demonstrate that the Treasury's implementation of the Quick Hire system for processing applications was done for discriminatory or retaliatory purposes specifically against her.  The record demonstrates that all applications were required to be submitted through Quick Hire, all applications were processed through Quick Hire, and many applicants experienced similar difficulties with regard to the printing of their applications. See Ex. 2, Mingo Decl.  Further, although plaintiff's application printed with certain characters which she had not typed, this computer error clearly did not adversely affect her, signicantly or otherwise.  In fact, plaintiff was one of only two applicants to receive a perfect score for this announcement.  Id. at 5.  In this regard, plaintiff simply does not reasonably allege an adverse action based on unhappiness with the electronic processing of applications.  Accordingly, this claim should be dismissed with prejudice.

**E.    Plaintiff's Nonselection Allegation Fails to State a Claim.**

To establish a prima facie case of discriminatory failure to hire, plaintiff must show by a preponderance of the evidence (1) that she belongs to a protected group, (2) that she was qualified and applied for a position, (3) that he was rejected despite his qualifications, and (4) "that after [her] rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications." Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1149-50 (D.C. Cir. May 7, 2004).[4]  However, a plaintiff must demonstrate that her rejection for the position did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant - specifically, an absolute or relative lack of qualifications or the absence of a vacancy in the job

_____

[4]In Teneyck, the District of Columbia Circuit noted that, given the Supreme Court's emphasis in McDonnell Douglas that the prima facie case is not intended to be "rigid, mechanized, or ritualistic," the District of Columbia Circuit in Stella v. Mineta, 284 F.3d at 145, articulated the Title VII prima facie case slightly differently, i.e, a plaintiff to establish such must demonstrate that (1) she was a member of a protected group, (2) an adverse employment action took place, and (3) the unfavorable action gives rise to an inference of discrimination. Teneyck, 365 F.3d at 1150.  The District of Columbia Circuit explained that this "alternative formulation is designed to accommodate the wide variety of employment discrimination claims that extend beyond the typical 'failure-to-hire' situations of the sort confronted in McDonnell Douglas." Id.  However, relevant for this case, in Teneyck, the District of Columbia Circuit stressed that "McDonnell Douglas's formulation of the required elements of a prima facie case remains the standard in typical failure-to-hire cases." Id., citing, Morgan v. Fed. Home Loan Mortgage Corp., 328 F.3d 647, 650 (D.C. Cir. 2003), cert. denied, 540 U.S. 881 (2003).

sought.  Id. at 1150; Carter v. Pena, 14 F.Supp.2d 1, 6 (D.D.C. 1997), aff'd, 1998 WL 315616 (D.C. Cir. April 8, 1998).

Here, the vacancy announcement was canceled for sound organizational reasons.  Specifically, senior level officials in the Office of Inspector General were concerned about the impact of the creation of the DHS on the office's organizational functions, and decided to cancel the vacancy until they had more concrete information on the implications of the diverstiture. Ex. 4, Freedman Decl. at 3-4. Given the cancellation of the supervisory auditor position, and and the absence of any indication in the record evidencing that the cancellations were based on an unlawful animus, plaintiff simply cannot establish a prima facie case of discrimination based on non-selection for this position.  Morgan v. Federal Home Loan Mortg. Corp., 172 F.Supp.2d 98, 111 (D.D.C. 2001)(no prima facie of discrimination where plaintiff cannot demonstrate that agency filled position for which plaintiff applied).  Additionally, the Department had legitimate reasons for canceling the vacancy, and on this basis as well, plaintiff's claim should be dismissed.

**V.  CONCLUSION**

For the reasons stated herein, defendant respectfully requests that the Court grant his *Motion to Dismiss and for Summary Judgment* and that, based on such, plaintiff's complaint be dismissed in entirety and with prejudice.

-30-

Date: March 17, 2006                    Respectfully Submitted,


                                        /s/ Kenneth L. Wainstein /mj
                                        _____
                                        KENNETH L. WAINSTEIN, D.C. BAR # 451058
                                        United States Attorney

                                        /s/ R. Craig Lawrence
                                        _____
                                        R. CRAIG LAWRENCE, D.C. BAR # 171538
                                        Assistant United States Attorney

                                        /s/ Beverly M. Russell
                                        _____
                                        BEVERLY M. RUSSELL, D.C. Bar #454257
                                        Assistant United States Attorney
                                        U.S. Attorney's Office for the
                                         District of Columbia, Civil Division
                                        555 4th Street, N.W., Rm. E-4915
                                        Washington, D.C.  20530
                                        Ph:  (202) 307-0492

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing <u>Defendant's Motion</u> <u>to Dismiss or for Summary Judgment</u> was sent by the Court's Electronic Case Filing System and first class, pre-paid mail, this <u>17th</u> day of March, 2006, to:

Maria V. Carmona
8306 Haven Hill Court
Laurel, Maryland 20723

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney