Form No. TDF 62-03.5
(03/97 Edition)

# INDIVIDUAL COMPLAINT OF EMPLOYMENT DISCRIMINATION WITH THE DEPARTMENT OF THE TREASURY

**FOR OFFICE USE ONLY**

DEPARTMENT CASE NUMBER: 03-2185

FILING DATE: 12-27-02

## Part I Complainant Identification

**1. Name (Last, First, Middle Initial):** Carmona, Maria V

**2. Telephone/Fax (Include Area Code):**
Home: [redacted]   Fax: N/A
Work: (202) 927-6345   Fax: N/A

**3. Present Home Address** (You must notify the Department of any changes of address while complaint is pending, or your complaint may be dismissed):
Street Address: PO Box 454
City: Fulton   State: MD   Zip Code: 20759

**4. If you are a current or former employee of the Federal government, list your most recent title, series, and grade:**
Title: Supervisory Auditor / Audit Manager   Series: GS 511   Grade: 14

**5. Name and Address of Organization Where You Work (if a Treasury Employee):**
Bureau: Office of Inspector General
Office and Organizational Component: Audit Directorate, Banking and Fiscal Service
Street Address: 740 15th Street NW
City: Washington   State: DC   Zip Code: 20220

**6. Employment Status in Relation to this Complaint:**
☐ Applicant   ☐ Probationary   ☒ Career/Career Conditional
☐ Former Employee   N/A
☐ [illegible]   N/A
☐ Retiree   N/A
☐ Other   N/A

**7.** I certify that all of the statements made in this complaint are true, complete, and correct to the best of my knowledge and belief.

Signature: *Maria V Carmona*   Date: December 27, 2002

## Part II Designation of Representative

**8.** You may represent yourself in this complaint or you may choose someone to represent you. Your representative does not have to be an attorney. You may change your designation of a representative at a later date, but you must notify the Department immediately in writing of any change, and you must include the same information requested in this Part.

"I hereby designate J. Steven Elbell (Please Print Name) to serve as my representative during the course of this complaint. I understand that my representative is authorized to act on my behalf."

**9. Representative's Mailing Address:**
J. Steven Elbell
Firm/Organization:
PO Box 454
Street Address
Fulton   MD   20759
City   State   Zip Code

**10. Representative's Employer (if Federal Agency):** N/A

**11. Representative's Telephone/Fax (Include Area Code):**
Telephone: (301) 490-4328   Fax: N/A

**12. Complainant's Signature:** *Maria V Carmona*   Date: December 27, 2002

GOVERNMENT EXHIBIT 5

10

## Part III Alleged Discriminatory Actions

**13.** Name and Address of Treasury Bureau that took the action at issue (if different than item 5.)

Bureau: N/A     Office and Organizational Component:

Street Address:

City:     State:     Zip Code:

**14.** If your complaint involves nonselection for a position, please complete the following:

N/A

Position Title:     Series:     Grade:

Vacancy Announcement Number:     Date Learned of Nonselection:

**15.** (A) Describe the action taken against you that you believe was discriminatory; (B) Give the date when the action occurred, and the name of each person responsible for the action; (C) Describe how you were treated differently than other employees or applicants because of your race, color, religion, sex, national origin, age, disability, or in retaliation for your participation in the EEO process or opposition to alleged discriminatory practices; (D) Indicate what harm, if any, came to you in your work situation as a result of this action. (You may but are not required to attach extra sheets.)

See Attached.

**16.** Mark below ONLY the bases you believe were relied on to take the actions described in #15.

☐ Race (State Race)
☐ Color (State Color)
☐ Religion (State Religion)
☒ Sex (Specify) Female
☒ National Origin (Specify) Hispanic

☒ Age (Date of Birth) Oct 8, 1952
☐ Physical Disability (Specify)
☐ Mental Disability (Specify)
☒ Retaliation Reprisal (Dates of Prior EEO Activity) Sept 1995 - Continuous

**17.** What remedial or corrective action are you seeking to resolve this matter?

To be determined following a complete investigation of all claims, issues and matters and development of a complete factual record

## Part IV Counselor Contact

**18.** When did the most recent discriminatory event occur?
September 17, 2002

**19.** When did you first become aware of the alleged discrimination? September 17, 2002

**20.** When did you contact an EEO counselor?
October 18, 2002 Initial Request

**21.** Did you discuss all actions raised in item 15 with an EEO counselor? ☐ YES ☒ NO

**22.** Name and telephone number of EEO counselor.
See Attached

**23.** When did you receive your "Notice of Right to File"?
N/A

**24.** On this same matter, have you filed a grievance or appeal under:
Negotiated grievance procedure ☐ YES ☒ NO
Agency grievance procedure ☐ YES ☒ NO
MSPB appeal procedure ☐ YES ☒ NO

If you filed a grievance or appeal, provide date filed, case number, and present status.

11

P.O. Box 454
Fulton, Maryland 20759
December 27, 2002

EXECUTIVE SECRETARIAT

2002 DEC 27 A 11: 42

DEPARTMENT OF
THE TREASURY

Paul H. O'Neill
Secretary of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC 20220

    Complaints of Maria V. Carmona and Paul H. O'Neill, Secretary of the Treasury
    TD Case Numbers:   96-1069, 96-Unassigned, 96-1259, 96-1313, 97-1139, 97-1238
    97-1269, 98-1044, 98-1068, 98-1091, 99-1119, 01-1155,
    02-Unassigned(a), 02-Unassigned(b), 02-Unassigned(c),
    02-Unassigned(d), 03-Unassigned(e)[1]

    Hand-delivered on December 27, 2002

Dear Secretary O'Neill:

The purpose and intent of this correspondence is to respectfully file my seventeenth formal Equal Employment Opportunity (EEO) complaint against the Department of the Treasury regarding the clear long-term pattern and practice of discrimination, retaliation, disparate treatment, and hostile/harassing work environment that has been directed and is being directed against me during my career with the Department of the Treasury.

I am filing this formal EEO complaint directly with you, Secretary O'Neill, because I have no confidence or trust in the integrity of the Department of the Treasury EEO program, management, or staff, and so as to ensure that you are personally aware of my past and present EEO concerns.

Claims, issues, and matters for the instant complaint evidence, in part, a continuation of the long-term pattern and practice by Department of the Treasury management and staff of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment that has been committed and continues to be committed against me. These latest actions also constitute a continuation of a pattern and practice of manipulation of and violation of the Merit System Principles in order to continue to deny me merited promotions within the Department of the Treasury.

The triggering event for the filing of my seventeenth formal EEO complaint, as noted in my October 18, 2002, request for assignment of an EEO counselor, was the misrepresentation of my September 13, 2002, proper and timely filed application under Vacancy Announcement OA-2002-0010 for the position of Director of Audit Operations, Supervisory Auditor, GS-511-15. I have been waiting for a determination on the status of this position, but feel that I cannot wait any longer, and for this reason I am filing today.

---

[1] 96-Unassigned, 02-Unassigned(a), 02-Unassigned(b), 02-Unassigned(c), 02-Unassigned(d), and 03-Unassigned(e) reflect six formal EEO complaints that I have filed that have not been assigned TD numbers by the Department of the Treasury. 03-Unassigned(e) represents the instant complaint.

Page 1 of 15

Please refer to my hand-delivered letter to you of October 18, 2002, Exhibit A, in which I requested, in accordance with the regulations, the assignment of an EEO counselor for the reasons stated therein. As stated in my request for counseling, I notified Inspector General Jeffrey Rush, Deputy Inspector General Dennis Schindel, Assistant Inspector General (AIG) for Audit Marla Freedman, AIG for Management Adam Silverman, and others about my concerns. (Exhibit A, Pgs. 2-3) To date, I have received no response to that notification.

I wish to point out that my October 18, 2002, request for assignment of an EEO counselor did not in any way or manner constitute all of the claims, issues, and/or matters that I wish to raise for the filing of my seventeenth formal EEO complaint against the Department of the Treasury.

Please refer to the contents of the instant package, dated December 27, 2002, for the filing of my seventeenth formal EEO complaint against the Department of the Treasury.

Attached are completed Forms TDF 62-03.5, *Individual Complaint of Employment Discrimination with the Department of the Treasury*; TDF 62-03.1, *EEO Counseling Report - Individual Complaint*; and TDF 67-13.2, *Designation of Representative and Limited Power of Attorney*. Please be advised that my instant formal EEO complaint comprises 81 pages, including this 15-page letter, the three forms mentioned, a list of Exhibits, and Exhibits A - J.

I am a Hispanic White Female Over Age 40 who has engaged in the EEO process.

Despite my over twenty-six year Federal career; my over eighteen-year career with the Department of the Treasury Office of Inspector General (OIG); my certifications, credentials, excellent work record; my broad, varied, and extensive experience with the Department of the Treasury and its Bureaus; evidence on the records of my employment discrimination complaints that demonstrates that I was capable of functioning at the Grade 15 within the OIG as early as 1987; my making several Best Qualified Lists for promotion to the Grade 15 and above since 1991 within the OIG; having received an outstanding rating during a period in 1993 when I was acting Director of an OIG Office; making the Best Qualified List with another Federal agency for an Inspector General level position in 1993; and making the Best Qualified List for a Senior Executive Service (SES) level position in the OIG in 2001; I cannot be permanently promoted beyond the Grade 14 within the Department of the Treasury.

I am also concerned that even though I am a Grade 14 Supervisory Auditor, with the title of Audit Manager, I have recently been assigned lower-level work on a material loss review that the OIG is completing. The task of referencing a report is usually performed by a Grade 13 or a Grade 12 staff member, i.e., an auditor who is not a supervisor. Such an assignment of non-supervisory responsibilities is of particular concern to me in the context of issues that I have previously raised during the EEO process.

To date, I have been forced to file seventeen separate and distinct employment discrimination complaints against the Secretary of the Treasury; all having been filed since December 1995; all records of which have been and are in the possession of Department of the Treasury management, as they are part of my official work records; all records of which contain highly-specific, relevant, and pertinent information and documentation that I have provided in support of my overarching claim of a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment having been committed and continuing to be committed against me based on my Hispanic national origin, sex, age,

and in retaliation for my involvement in the EEO process, such that I am entitled to relief under Title VII and the Age Discrimination in Employment Act (ADEA).

It is also my good faith understanding that I am not the only individual of Hispanic national origin who has claimed that they have been subjected to illegal discriminatory and retaliatory acts by the Department of the Treasury over an extended period of time.

In a hand-delivered letter to you of June 5, 2002, Exhibit B, I expressed my concerns over the continuation of the Department of the Treasury's noncompliance with the regulations and noncompliance with an Order from the EEOC. A copy of this letter was also hand-delivered to Cari M. Dominguez, Chair, EEOC, on the same date.

It should also be noted that the Department of the Treasury's Director of its Washington Regional Complaint Center (WRCC), Michael Morgan-Gaide, in a May 3, 1996, letter informed me that, in light of my concerns and in accordance with the regulations, I should initiate the process of contacting an EEO counselor regarding any matters that were not a part of a previous complaint, and that occurred after the filing of a previous complaint. See Exhibit C.

Thank you for your October 29 response (postmarked October 30) to my October 18, 2002, request for assignment of an EEO counselor, signed by Marcia H. Coates of your staff, and addressed to my designated representative, J. Steven Elbell. See Exhibit D. I received your response on November 6.

In that response, Ms. Coates identifies herself as Director, Office of Equal Opportunity Program, and, as such, my representative and I identify Ms. Coates as a member of Department of the Treasury management who works for you in the Treasury Departmental Offices, i.e., as opposed to OIG management/staff, and, as such, it is also our understanding by her actions that Ms. Coates is authorized to represent you, Secretary O'Neill, as the named Defendant in my complaints of employment discrimination.

In your October 29 response, Ms. Coates notified my representative, in part, that the OIG now has an EEO Officer who would contact my representative by telephone to give the name and telephone number of the person who would provide counseling services.

Before I received your response, however, Adline Tatum, who identified herself as an EEO specialist with the U.S. Customs Service, left a voice-mail message for me, on Thursday, October 31. Ms. Tatum then called my supervisor on Friday, November 1; as explained in a letter that I hand-delivered to you on Monday, November 4, 2002. See Exhibit E.

As I stated in my November 4 letter, I consider Ms. Tatum's contacts to be a continuation of the long-term pattern of harassment and hostile work environment that I have been forced to endure by Department of the Treasury management and staff since first engaging the administrative EEO process in 1995. I also consider Ms. Tatum's contact of my supervisor, Don Kassel, to be a breach of my confidentiality and, as such, to be a violation of the regulations. In addition, I feel that Ms. Tatum's actions are a continuation of the pattern and practice of my not being treated with dignity and respect by members of your staff.

My representative called Ms. Tatum on the morning of Friday, November 1. During that conversation, Ms. Tatum acknowledged that she had a copy of my October 18 request for assignment of an EEO counselor, and, as such, acknowledged that she was fully aware that she was to contact my representative. My representative advised Ms. Tatum that he would be downtown on Tuesday, November 5, and would be available to meet with her then. Ms. Tatum told my representative that she would need to speak to her supervisor about this matter before proceeding, and that she would call my representative back. However, Ms. Tatum did not call my representative back.

In direct response to your October 29 letter, and in accordance with the regulations and my rights, I wish to inform you that I will not be granting an extension to the designated 30-day EEO counseling time period.

It is my good faith understanding in accordance with the regulations that the unavailability of an EEO counselor to meet within the designated 30-day EEO counseling time period does not toll this time period, and that it is, therefore, my right to file this formal EEO complaint.

It is my representative's and my good faith belief that the inability to meet with an EEO counselor within the designated 30-day EEO counseling period was through no fault of my own.

It should be noted, as referred to in my October 18, 2002, request for assignment of an EEO counselor, that I am claiming a continuation of the long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment and violation of the regulations that I have been forced to endure from the Department of the Treasury.

The records in my seventeen formal EEO complaints clearly demonstrate that the Department of the Treasury has exhibited and continues to exhibit a long-term pattern and practice of sometimes assigning me an EEO counselor, sometimes unreasonably delaying assigning me an EEO counselor, sometimes not assigning me an EEO counselor, sometimes simply notifying me in writing that an EEO counselor will not be assigned, and in the instant case assigning me an EEO counselor who violates the regulations, all actions that should appear highly questionable and improper to any reasonable and logical person.

My representative and I find these adverse actions purposeful, direct violations of my rights, unworthy, and pretextual, and as such they clearly are evidentiary of the long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment that the Department of the Treasury has committed against me, and as such are actionable under Title VII and the ADEA.

As mentioned above, the misrepresentation by the OIG of my September 13, 2002, proper and timely filed application under Vacancy Announcement OA-2002-0010 for the position of Director of Audit Operations, Supervisory Auditor, GS-511-15, represents a continuation of the long-term pattern and practice by Department of the Treasury management and staff of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment that has been committed and continues to be committed against me. These latest actions also constitute a continuation of a pattern and practice of manipulation of and violation of the Merit System Principles in order to continue to deny me merited promotions within the Department of the Treasury.

As stated in the September 16 e-mail message that was attached to my September 17 expression of concern (Exhibit A), the process that was followed for this position was a departure from the manner in which vacancy announcements have historically been announced and applications filed within the OIG.

Below is a list of major differences in the process, followed by a more-detailed discussion.

- The vacancy announcement was not posted in the usual manner.

- Applicants were required to apply online.

- Applicants were required to submit a résumé. Standard Federal application forms, such as the SF-171 and the OF-612 were unacceptable.

- There was a limit placed on the length of the résumé and of each of the narrative responses describing experience.

- Applicants were not allowed to print a complete copy of their application prior to submittal.

- The Knowledge, Skills, and Abilities (KSA) in the vacancy announcement and in the online application did not directly correspond.

- The applications were rated mechanically, rather than by a rating panel of experts.

I believe that all of these differences were structured by OIG management to limit competition and to achieve a desired discriminatory and retaliatory result. In addition, it was recently announced, after going through the interview process, that the position may not be filled from among the candidates who made the Best Qualified List. All of these actions are an attempt to manipulate the merit system, in clear violation of the Merit System Principles.

The vacancy announcement for the position of Director of Audit Operations was posted exclusively to the Office of Personnel Management (OPM) USAJOBS web site, under Control No. TS3169 FM. See Exhibit F. To my knowledge, Treasury OIG employees were not notified that the vacancy announcement existed or that the position had been posted to this web site.

This contrasts sharply with the process used historically at the OIG, in which vacancy announcements were posted to:

- the *Vacancy Announcements* Folder on the OIG's Microsoft Outlook, under the Public Folders, HR Information section;

- the *Vacancy Announcements* Listing included as an attachment to an e-mail message sent to all OIG staff on a weekly basis by Human Resources staff when there were new announcements (see Exhibit G for a sample message dated July 8, 2002); and

- the Human Resources information carousel (multiple printed copies) on the fifth floor of the OIG offices at the 740 15th Street, N.W., building.

It had been my understanding that all vacancy announcements were to be widely posted, as discussed above, so that all OIG employees would be aware of vacancies and could have easy access to the

announcements. Employees were given the option of calling the Human Resources staff to obtain a copy of any announcement. It was also customary to mention in staff meetings that vacancies had been announced, and management often advised eligible employees verbally or through e-mail (see Exhibit H for sample e-mail messages).

Yet, I was not advised by the OIG in any manner of the posting of the vacancy announcement for the instant position  The position was not announced to all OIG staff through any means of which I am aware.

It should be noted that, to my knowledge, there was no advance notification of any kind that the OIG was revising the manner in which it announced positions, accepted applications, and evaluated applications to determine the Best Qualified List. It is my understanding that no new policies or procedures were issued about applying for OIG vacancies prior to the USAJOBS posting of the instant vacancy announcement.

In addition, applicants were required to apply online, by clicking on a link provided in the online announcement, preparing an online résumé, responding to a series of *Core Questions*, and completing an *Applicant Assessment*. Applicants were also required to fax specified documents to a designated telephone number.

This differed from the historical OIG practice of accepting printed copies of applications delivered to Human Resources. In the past, employees were not required, or, to my knowledge, even permitted, to file online. Résumés were not mandatory, with applicants given the option of using a résumé, an SF-71, an OF-612, or *other format of choice*. Suddenly, without official notification or advance warning, the SF-171 with the corresponding KSA statements, which I had used to apply for other OIG vacancies over the years, were no longer acceptable.

The OIG established limitations as to the number of characters that could be included in the résumé and in each of the narrative responses describing experience that applicants were required to provide, another stricture that did not exist for prior vacancy announcements within the OIG.

To my knowledge, the online application system was set up so that a copy of the entire application could not be printed by the applicant prior to submittal. Thus, it was not possible to print a copy of the online document to check it prior to submittal. Nor was it possible to maintain a record of the exact contents of the application as it was submitted. I was therefore not able to complete a step that I routinely take, and that I wanted to complete for this application, i.e., checking a printed copy prior to submitting the document. In the alternative, I checked my application very carefully on the screen, ensuring that it was at a level commensurate with those that I had filed in the past. I also sent an e-mail message requesting to be provided with a complete copy of the application for my records. It was the receipt of this misrepresented copy that triggered the instant complaint.

The manner in which the KSAs required for the position were addressed differed from the manner in which KSAs have historically been addressed by the OIG. For example, there was not a one-to-one correspondence between the KSAs and the qualification statements that were required during the online application process. Some aspects of the KSAs were not addressed at all in the online questionnaire, and detailed statements were required about factors that were not listed in the published KSAs. An analysis follows.

USAJOBS Vacancy Announcement OA-2002-0010 states that the five KSAs listed below are *necessary for this job*. See Exhibit F.

### KSAs

KSA 1. Applied knowledge of professional auditing standards applicable to Federal financial and program audits.

KSA 2. Skill in establishing and maintaining effective working relationships with high-level officials, other Federal agencies, Congressional staff, and professional organizations.

KSA 3. Ability to direct and supervise a diverse staff of professionals on multiple tasks.

KSA 4. Ability to prepare and deliver oral briefings to the Inspector General (IG) and top Department officials.

KSA 5. Ability to prepare written communications to develop clear, concise reports; oral and visual presentations; and completed staff work.

See Exhibit I for a copy of the documents that were provided to me in response to my request for a copy of my application. These documents, provided by the OIG on September 17, 2002, include the *Applicant Assessment* section of the online application, which is the section that addresses specific qualifications. Below is a list of the qualification statements as presented in the *Applicant Assessment*, i.e., the four statements for which the documents provided to me indicate a narrative response describing experience was required. It should be noted that, as mentioned above, I expressed my concerns on the day that I received these documents, stating, in part, that there was a serious problem in that the documents provided did not accurately reflect what I submitted online.

### Qualification Statements in the Online *Applicant Assessment* (AA)

AA 4. Develop and implement policies for audit quality assurance and conduct internal reviews and external peer reviews of audit organization compliance with professional standards.

AA 5. Incorporate input from a variety of sources (Departmental Management, Congressional staffers, current events) into the development of strategic and annual plans for the allocation and expenditure of Audit resources.

AA 10. Conduct or oversee audits in accordance with the Government Auditing Standards published by the U.S. General Accounting Office.

AA 13. Act as liaison between audit organization and Congress.

It is clear from a comparison of these two lists that the online qualification statements do not directly correspond to the published KSAs. Specifically, the first two statements, AA 4 and AA 5, establish requirements that are not even mentioned in the KSAs. While the other two online qualification

statements are somewhat related to the KSAs, clearly there is not a one-to-one relationship. For example, AA 13 is related to KSA 2, but is much more limited in its focus.

Given the circumstances, I believe the requirements for the position were presented in this manner to limit competition and may have been structured for a specific individual, without regard to the Merit System Principles. They represent unconscionable manipulation on the part of the OIG, in that individual applicants were to be judged on elements other than those specifically identified in the vacancy announcement as being necessary for the job.

It is also my understanding that an automated process was used to evaluate the applications and determine the Best Qualified List. This differed from the historical OIG practice of convening a panel of experts in the field of the vacancy, at the grade level of the vacancy or higher, to evaluate each individual application package against the crediting plan for the position. As a result of the panel's work, a Best Qualified List would then be forwarded to the selecting official, who played a key role in the initial development of the crediting plan.

I was interviewed for the position on October 15, 2002, by AIG Freedman and Deputy AIG Bob Taylor. Then, on October 30, during AIG Freedman's staff meeting with the Directors, which I attended as Acting Director, Ms. Freedman stated that she thought that Inspector General Rush was going to cancel the announcement. Ms. Freedman mentioned this in the context of Homeland Security and the current budget situation. She stated that she believes Mr. Rush is concerned about GS-15 positions in case the office has to absorb employees who do not want to leave the Treasury OIG if there is a divestiture to Homeland Security.

If this were the case, then why did the OIG not handle another GS-15 vacancy in the Office of Audit, for the Director of Evaluations, in the same manner? It is my understanding that an external candidate, from the Department of Justice, was selected and just reported to the Treasury OIG at the GS-15 level.

Thus, the process that was followed for this position was a clear departure from the manner in which vacancy announcements have historically been announced, and in which applications have been filed and evaluated, within the OIG. As stated, I believe that the actions taken were purposeful and directed, and were intended to limit competition in violation of the Merit System Principles. And if the statements about not filling the position turn out to be correct, then I will have again been denied the opportunity for promotion to the Grade 15 by Inspector General Rush, as has happened in the past (see discussion below).

---

It is clear that I was legally entitled, and am legally entitled, to file my formal EEO complaints, and it is clear that I was legally entitled, and am legally entitled, to the development of complete factual records in my EEO cases, so that decisions may be made based on the merits of all of the evidence that is relevant and material to my concerns and in order to determine the fullest extent to which the Department of the Treasury has committed and is committing, with clear intent and directed purpose, its long-term pattern and practice of illegal adverse actions against me.

My representative and I respectfully question the integrity, and the motives and intent, of the EEOC and the Department of the Treasury regarding the fair, equitable, and proper and timely processing of

Page 8 of 15

19

my formal EEO complaints based, in part, on the statements made by EEOC Director of Federal Operations Hadden, Inspector General Rush, and Deputy Inspector General Schindel, as referred to below.

It was, and still is, of concern to my representative and me the comments made by EEOC Director of Federal Operations Hadden at a May 2000 EEOC Town Hall meeting, to the effect that the Department of the Treasury is one of the two worst EEO offenders in the Federal Government, but that the EEOC does not want to address the Department of the Treasury because it does not want to bite off more than it can chew.

It should be noted that following these comments, Mr. Hadden was permanently promoted into the position of EEOC Director of Federal Operations and, to my representative's and my understanding, Mr. Hadden remains in this high-ranking position today.

My representative and I wish to express our ongoing and most serious concerns about retaliation in light of comments made by Inspector General Rush to OIG employees on September 21, 1999, shortly after his confirmation. With reference to employees having concerns about serving suspensions of two weeks without pay, Inspector General Rush said to the staff, *I'm the final word on most of the discipline around here,* so, if something *is clear cut, why even come see me?* He went on to say that he knows about the MSPB because he has *been there*, that the head of the OSC is *"a friend of mine,"* and that he has been before the District Court. Inspector General Rush then went on to say that when employees file formal actions, such as EEO complaints, it is not just him they are taking on, it is the *entire United States Government* they are taking on.

I perceived these remarks by Inspector General Rush as very threatening and as clear attempts at intimidation directed at all members of the OIG, with a strong implication that if an individual filed an EEO complaint or other Personnel action, his or her career would be ruined.

I felt at the time, and still feel, threatened by Inspector General Rush's comments in the context of having eleven formal EEO complaints pending at that time and of having pursued concerns with some of the entities that Inspector General Rush mentioned, including the OSC and the MSPB, as well as with other Federal organizations, including the U.S. Court of Appeals for the Federal Circuit and the U.S. Supreme Court.

My representative and I consider Inspector General Rush's threatening and intimidating comments to be direct violations of my clear administrative and legal rights to pursue my EEO and related concerns with the proper authorities, without any fear of reprisal or retaliation.

It should be noted here that you, Treasury Secretary O'Neill, as the named Defendant in a civil action that I was forced to file in U.S. District Court after having exhausted the EEO administrative process regarding three of the seventeen formal EEO complaints that I have been forced to file to date against the Department of the Treasury, and all since December 1995, have stipulated to Inspector General Rush's comments but deny my claims as to intent. (*See* cv01-0115, # 7, Par. 39-42)

It is my representative's and my clear understanding, however, that the EEOC has held that such statements and/or comments made by management do in fact constitute retaliation. *Battaglia v. Federal Deposit Insurance Corporation*, EEOC Appeal No. 01985358 (July 30, 2001), citing EEOC's

Compliance Manual on Retaliation. *Pallante v. Department of Justice (Immigration and Naturalization Service)*, EEOC Appeal No. 01A04996 (July 6, 2001). *See also McPherran v. Department of the Treasury*, EEOC Appeal No. 01A11357 (August 2, 2001) (adverse actions need not qualify as "ultimate employment actions" or materially affect the terms and conditions of employment to constitute retaliation).

Further, in this regard, Mr. Schindel, current Deputy Inspector General, whose selection to that position I believe in good faith was made by Inspector General Rush, made comments in an open forum to OIG employees several years ago, and prior to Mr. Rush's arrival into the Department of the Treasury OIG, to the effect that he did not know why people kept filing EEO complaints, because they, i.e., OIG management, were going to do whatever they wanted anyway. This statement, to my good faith understanding, was made in reference to who would be selected for promotion.

It is, therefore, my representative's and my understanding under the regulations and in accordance with decisions made by the EEOC as referred to above, that the statements and comments made by Inspector General Rush and Deputy Inspector General Schindel regarding one's rights and results in filing formal EEO complaints, and in light of the clear long-term pattern and practice of adverse actions taken against me throughout my career by Department of the Treasury management and staff, constitute direct evidence of illegal retaliatory activity committed against me by Department of the Treasury management.

I believe in good faith that these acts are evidentiary of the long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment that I have been forced to endure as a Hispanic White Female Over Age 40 who has engaged in the EEO process.

I also believe that the comments made by Inspector General Rush, and Deputy Inspector General Schindel of the Department of the Treasury, and by EEOC Director of Federal Operations Hadden, and the actions taken and/or not taken by them in support of their views, and the actions taken and/or not taken by any other agencies or entities of the United States Government in contradiction to these views, constitute conspiracy, clear denials of due process, and clear obstruction of justice being committed against me by the United States Government.

It is clear from Mr. Hadden's comments, as referred to earlier, that the Department of the Treasury enjoys the freedom to commit a long-term pattern and practice of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment, to include committing *prima facie* acts of discrimination against me, with no fear of intervention or enforcement by the EEOC or, as it appears, based on my experience and the comments by Inspector General Rush and Deputy Inspector General Schindel, by any other agencies or entities of the United States Government.

It has been and continues to be painfully clear to me that I am fighting the entire United States Government in pursuit of my legal right to equal employment opportunity.

Listed above are the seventeen formal EEO complaints that I have been forced to file against the Department of the Treasury since December 1995. It should be noted that I had not filed a formal EEO complaint in what has been a more than twenty-six year Federal career, until first forced to do so in December 1995 based on the decisions made, and the direct actions taken, by current Deputy Inspector General Schindel. It should be noted that Mr. Schindel is a principal alleged discriminating official in all seventeen of the formal EEO complaints that I have been forced to file to date.

21

It should be noted that I have received high ratings and numerous awards throughout my over eighteen-year career with the Department of the Treasury OIG, yet I have consistently been denied, I believe in good faith illegally so, multiple merited promotion opportunities to the management ranks, i.e., Grade 15 and above, throughout my career with the Department of the Treasury OIG.

It should be noted that, in addition to the instant case, I have been illegally denied several merited promotion opportunities by Department of Treasury OIG management, to include Mr. Schindel, prior to Mr. Rush's arrival into the Department of the Treasury OIG, and have in fact been denied four merited promotion opportunities to the Grade 15 and above since the appointment of Mr. Rush as Inspector General in 1999.

My previously denied merited promotion opportunities, i.e., prior to Mr. Rush's arrival, are issues and matters raised in my previously filed formal EEO complaints. Those denied promotions prior to Mr. Rush's arrival were, to a certain extent, more subtle in nature than those I have been denied since Mr. Rush's arrival. I am presenting the following four denied merited promotions that have occurred since Mr. Rush's arrival in 1999 because they are so clearly blatant and overt, especially in light of Mr. Rush's comments to OIG staff upon his arrival in 1999, that they provide direct indisputable evidence of a pattern of *prima facie* acts of discrimination and retaliation, and because they have occurred within such a short timeframe.

My first denied promotion opportunity since Inspector General Rush's arrival in 1999 involved promotion to a Grade 15 position for which, to my understanding, Alexander Best, an African-American male, and I, a female of Hispanic national origin, both made the Best Qualified List, among others. It is my understanding that Inspector General Rush cancelled this announcement shortly after his arrival, with no selection being made.

My second denied promotion opportunity since Inspector General Rush's arrival in 1999 involved promotion to the SES position of Deputy Assistant Inspector General (DAIG) for Program Audit under Announcement Number OIG-01-009. I made the Best Qualified List, and was interviewed, but was not selected.

My third denied promotion opportunity since Inspector General Rush's arrival in 1999 involves the promotion of Mr. Best to the Grade 15 position. I made the best qualified list, and was interviewed, but was not selected. This denial of promotion to the Grade 15 is inexplicable, because it followed my having made the Best Qualified List, based on merit, for the higher level SES DAIG position a few months earlier, the position to which this Grade 15 directly reports.

My fourth denied promotion opportunity since Inspector General Rush's arrival in 1999 involved promotion to the SES level position of DAIG for Program Audit under Announcement Number OIG-01-043. Although I made the Best Qualified List, based on merit, for this position under Announcement Number OIG-01-009 a few months earlier, I inexplicably failed to make the Best Qualified List under the reannouncement of this position under Announcement Number OIG-01-043.

And the instant case would be the fifth denied promotion opportunity since Inspector General Rush's arrival in 1999.

Page 11 of 15

Please note that since his appointment in 1999, Inspector General Rush has, to my good faith understanding and to the best of my knowledge, predominantly and overwhelmingly promoted and/or transferred in Non-Minority White staff to management positions at the Grade 15 and above within the Department of the Treasury OIG. It is noted that prior to Mr. Rush's arrival in 1999, Mr. Schindel exhibited the same promotion policies, i.e., mostly Non-Minority White staff and mainly Male.

These promotions/transfers since Mr. Rush's arrival in 1999 include, but are not limited to, Dennis Schindel (Deputy Inspector General - SES), Richard Delmar (Counsel - SES), Emilie Baebel (AIG - SES - it should be noted that Ms. Baebel is no longer with Treasury OIG), Marla Freedman (AIG - SES), Barry Savill (DAIG - SES - it should be noted that Mr. Savill declined this promotion and transferred out of Treasury OIG), Robert Taylor (DAIG - SES), Randolph Stone (DAIG - SES - it should be noted that Mr. Stone is no longer with Treasury OIG), Lisa Redman (DAIG - SES), Mike Fitzgerald (Grade 15), Adam Silverman (Grade 15 transfer, AIG - SES, see below), George Tabb (Grade 15), Edward Coleman (Grade 15), and Judy Mullen (Grade 15).

It should be noted that Adam Silverman, mentioned above, who transferred into the OIG as a Grade 15 approximately two years ago, and who I believe in good faith was not and is not an auditor or an investigator, which are the core disciplines within the OIG, and who I believe in good faith has significantly less years of Federal service than I do, was recently promoted to AIG in charge of the Office of Management, a senior SES level position.

I am a Certified Public Accountant (CPA) who first entered the Department of the Treasury OIG as a Grade 7 in 1983. I have an outstanding work record and have consistently received high performance ratings and awards throughout my over eighteen-year career with the Department of the Treasury OIG. I have outstanding management, organizational, and technical skills, and I have broad Treasury Department experience, to include supervising audits, oversight reviews, and investigations. I am in my twenty-seventh year of Federal service.

It is an indisputable material fact that I made the Best Qualified List, based on merit, for an Inspector General level position at another Federal agency in 1993.

Despite my work record and qualifications, I cannot be permanently promoted beyond the Grade 14 within the Department of the Treasury OIG.

It should be noted that I arrived into the Department of the Treasury OIG in 1983 as a Grade 7 and prior to Mr. Schindel's arrival/transfer into the OIG as a management level Grade 15. It is my belief that Mr. Schindel was brought into the Department of the Treasury OIG largely as an act of cronyism.

Despite Mr. Schindel's stated attitude towards one's right to file EEO complaints as referred to earlier, his questionable work record with regards to recruitment and promotions, and his, when compared to my experience and qualifications, questionable experience and qualifications, he can rise to Department of the Treasury Deputy Inspector General, while I cannot be permanently promoted beyond the Grade 14.

Mr. Schindel is a Non-Minority White Male. I am a Hispanic White Female Over Age 40 who has engaged in the EEO process, who is a Certified Public Accountant and who had and has more years of experience and more varied experience with the Department of the Treasury OIG than Mr. Schindel has had, either prior to or since his arrival.

In further regards to the proper and timely processing of my EEO concerns, I do not believe that the Department of the Treasury had or has the right to not properly and timely acknowledge and administer my attempts to engage the EEO process in accordance with the regulations by not assigning, or unreasonably delaying assigning, EEO counselors; a pattern and practice that the Department of the Treasury has exhibited.

I do not believe that the Department of the Treasury had or has the right to not properly and timely acknowledge the filing of my formal EEO complaints by not properly assigning or unreasonably delaying the proper assignment of TD numbers, a pattern and practice that the Department of the Treasury has exhibited, especially in light and consideration of the clearly separate and distinct issues and matters that I have raised in each of my seventeen formal EEO complaints.

I do not believe that the Department of the Treasury had or has the right to not properly and timely investigate each of the separate and distinct claims, issues, and matters that I have raised in my formal EEO complaints within the regulatory 180-day timeframe, as measured from the date of filing of the formal EEO complaint, a pattern and practice that the Department of the Treasury has exhibited.

I do not believe that the Department of the Treasury had or has the right to selectively interpret the regulations contained at 29 C.F.R. 1614 and/or EEO MD-110 for its own convenience and purely in its own interests, as it has done repeatedly.

In these regards, I believe that the Department of the Treasury has been in violation, and continues to be in violation, of my rights and of the regulations contained at 29 C.F.R. 1614 and EEO MD-110.

My representative and I further believe in good faith that the reasoning proffered by the Department of the Treasury for its clear pattern and practice of not assigning or unreasonably delaying the assignment of EEO counselors; not assigning or unreasonably delaying the assignment of TD numbers; and not properly and timely investigating all of the claims, issues, and matters that I have raised in my formal EEO complaints in accordance with the regulations is merely pretext in order for the Department of the Treasury to not have to properly and timely acknowledge, and to not have to properly and timely report and process, the clear, separate, and distinct *prima facie* acts of discrimination and adverse actions that the Department of the Treasury has committed and continues to commit against me, without any fear of intervention by the EEOC, the courts, or any other entities of the United States Government.

I believe in these regards that the Department of the Treasury has adversely affected the terms and conditions of my employment and as such has committed actionable acts covered under the Constitution, the law, and regulations.

Since 1995 when I first became aware of the long-term pattern of discrimination, retaliation, disparate treatment, and hostile/harassing work environment that had been committed and continues to be committed against me by the Department of the Treasury, I have made every good faith effort to adhere to 29 C.F.R. 1614, EEO MD-110, Commission decisions, and relevant legal rulings in exercising my clear administrative and legal rights to protect and pursue my EEO and related rights in a proper and timely manner and, as is my legal right, in a non-hostile, non-harassing, and non-retaliatory environment.

24

It should again be noted, as has been stated and demonstrated throughout the filing of all seventeen of my formal EEO complaints, that neither my representative, J. Steven Elbell, nor I, are attorneys, and that at no time have I been represented by an attorney during any of my EEO processes.

I believe in good faith that the Department of the Treasury has exhibited a clear long-term pattern and practice of illegally denying me merited equal employment opportunity in violation of Title VII of the Civil Rights Act of 1964, as amended; in violation of the ADEA; and in retaliation for my involvement in the EEO process.

I believe in good faith that the Department of the Treasury has made no good faith effort to adhere to Title VII, the ADEA, 29 C.F.R. 1614, EEO MD-110, or other applicable legal rulings in affording me equal employment opportunity and the proper, fair, and timely administration of my clear administrative and legal rights to pursue my EEO and related concerns in a non-hostile, non-harassing, and non-retaliatory manner.

Please note that none of my formal EEO complaints has been properly or timely processed or investigated by the Department of the Treasury; most have not been investigated at all.

Each of my seventeen formal EEO complaints clearly evidences, demonstrates, and provides *prima facie* evidence of the continuation of a long-term pattern and practice of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment committed against me throughout my more than eighteen-year career with the Department of the Treasury OIG.

Yet the Department of the Treasury continues to illegally deny me my right to equal employment opportunity and continues to illegally deny me my right to pursue my EEO-related concerns in a non-hostile, non-harassing, and non-retaliatory manner.

It is clear from the turnover rate in the Department of the Treasury OIG, an indication of how well an organization is functioning, that past, to include Mr. Schindel's tenure, and current OIG management is lacking.

It should be noted that the United States Office of Personnel Management (OPM) conducted a study of the Department of the Treasury OIG in 1995 and concluded that it was the worst organization it had ever reviewed.

It is my good faith opinion that nothing has changed since the OPM review in 1995 and if anything the situation has become increasingly worse. It should also be noted that this OPM study included consideration of the period prior to 1995, to include Mr. Schindel's tenure, in arriving at its conclusions.

It is of serious concern to me that the Department of the Treasury continues to support such a management style that resulted in the type of findings by OPM as far back as and prior to 1995, by choosing to promote and place Mr. Schindel, who has been a part of the OIG management team since his arrival into the OIG as a management level Grade 15, to a position where he can now continue the long-term pattern and practice of discrimination, retaliation, disparate treatment, and hostile/harassing work environment against me and other individuals of Hispanic national origin not only in the Office of Audit but now throughout the entire Department of the Treasury OIG, to include the Office of Investigations and the Office of Management.

Page 14 of 15

25

I believe in good faith that I have been discriminated against and retaliated against by Mr. Schindel and other Treasury management and staff for raising these managerial concerns.

I wish to note at this time that all references herein to any and all other formal EEO complaints that I have been forced to file against the Department of the Treasury are for context presentation only, and are presented in an effort to demonstrate and provide relevant and material evidence of the continuous long-term pattern and practice of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment that has been committed and continues to be committed against me by the Department of the Treasury, and as such, as defined herein, are not to be considered a part of the instant separate and distinct issues and matters that are raised and discussed in this separate and distinct formal EEO complaint.

I would also like to address the insert, Exhibit J, that was included with my November 1, 2001, pay stub, in which you, Secretary O'Neill, asked, in part, if I am treated with dignity and respect at work by everyone I encounter. In consideration of the seventeen formal EEO complaints that I have been forced to file to date against the Department of the Treasury, all since December 1995; being illegally denied my right to equal employment opportunity by the Department of the Treasury throughout my over eighteen-year career with the Department of the Treasury OIG; the clear retaliation that has been committed and continues to be committed against me, most recently by Inspector General Rush, Deputy Inspector General Schindel, and others of your staff and the OIG; the recent assignment of lower-level non-supervisory work; and the long-term pattern and practice of delaying and/or denying me my most basic rights to pursue my EEO-related concerns in a non-hostile, non-harassing, and non-retaliatory environment by Department of the Treasury management and staff, my answer to your query would be no.

In conclusion, I believe in good faith that the relevant and material evidence as presented and as referred to by me in this formal EEO complaint provides sufficient information under which the claims, issues, and matters that I have raised can be properly framed for proffering appropriate administrative remedies and can be properly framed for conducting a proper and timely investigation.

It should be noted that at no time has the Department of the Treasury proffered any good faith administrative remedies to any of the claims, issues, and matters that I have raised during the administrative processing of my seventeen formal EEO complaints.

I also believe in good faith that a full, complete, fair, timely, and objective investigation, to which I am legally entitled, will uncover further evidence in support of the claims, issues, and matters that I have raised. As such, I reserve the right to include this currently unknown and uncovered relevant and material evidence upon its identification.

All further questions, requests for clarification, and any and all other contact should be directed to my representative, J. Steven Elbell, at the above address.

Sincerely,

Maria V. Carmona, Complainant

J. Steven Elbell, Representative

*I Hereby File This Formal EEO Complaint. Maria V Carmona December 27, 2002*

# EEO COUNSELING REPORT — INDIVIDUAL COMPLAINT
## PART I (Through Initial Interview)
*(Follow separate instructions and use a continuation sheet if necessary)*

| 1. Regional Complaints Center Name, Address and Telephone Number | 2. EEO Officer Name, Address and Telephone Number | 3. EEO Counselor Name, Address & Telephone Number | 4. Date Counseling First Sought |
|---|---|---|---|
| Washington 800 K St NW #640 Wash, DC 20001 (202) 377-6730 | N/A For This Process | N/A | October 18, 2002 |
| | | | 5. Date of First Interview |
| | | | N/A |

**6. Employee or Applicant: Name, Business or Home Address. Employee: Official title, Series & Grade.**

Maria V. Carmona
PO Box 454
Fulton MD 20759
Supervisory Auditor
GS 511 14

**7. Basis or Type of Discrimination**

☒ Age  Date of Birth: 8/10/52  D/M/Y
☐ Religion    ☐ Color    ☐ Race

☒ National Origin — Hispanic
☒ Sex — Female
☒ Other
☒ Retaliation/Reprisal for Involvement in Complaints Process

Handicap:
☐ Mental
☐ Physical

**8. Matter Causing Complaint or Issue**

☐ Appointment     ☒ Pay            ☒ Training
☒ Assignment of Duties   ☒ Promotion      ☒ Within Grade Increase
                  ☒ Reassignment
☒ Awards          ☐ Reinstatement   ☒ Working Conditions
☐ Change to Lower Grade   ☐ Removal/Separation   ☒ Other (Explain) Hostile Work Environment
☐ Classification   ☐ Reprimand
☐ Conv to F/T CC   ☐ Resignation
☐ Duty Hours       ☐ Retirement
☒ Eval-Appraisal Merit Pay    ☐ Sexual Harassment
☐ Eval-Appraisal Non Merit Pay    ☐ Suspension
☐ Exam/Test        ☐ Termination During Probation
☒ Harassment       ☐ Time/Attendance
☐ Overtime

An EEO Counselor cannot reveal the identity of a person who has come for counseling, except when authorized to do so by the person counseled. Is Complainant willing to have his/her name revealed during the counseling stage? Yes ☐ No ☐. If answer is "Yes," Complainant must give permission by signing name in the space following: N/A
Signature of Complainant

**10. Organization Where Alleged Discrimination Occurred and Date of Occurrence.** Dept of the Treasury OIG September 17, 2002

**11. Give date Complainant became aware of alleged discrimination if substantially different from that shown in 10. Explain.** N/A

**12. If complaint appears to be untimely, what explanation is offered to explain why Counselor was not contacted within 30 days?** N/A

**13. Provide a brief description of complaint, summarizing actions which caused counseling to be sought and which complainant believes are discriminatory.**

See attached

**14. Remedial Action Desired by Complainant** To be determined following a complete investigation of all claims, issues, and matters and development of a complete factual record.

**15. On the same matter has Complainant filed a grievance under a negotiated grievance procedure?** Yes ☐ No ☒
Under the Agency grievance system? Yes ☐ No ☒
Has Complainant appealed to the Merit Systems Protection Board? Yes ☐ No ☒
grievance or appeal has been filed, what is its status?

**16. Does Complainant elect to have a representative?** Yes ☒ No ☐
J Steven Elbell
PO Box 454
Fulton MD 20759

**17. Signature of Counselor and Date Signed**
N/A

O F 62-03 1 (03/87) PREVIOUS EDITION TO F 67 13 1 (06/85) OBSOLETE.

27

## DESIGNATION OF REPRESENTATIVE AND LIMITED POWER OF ATTORNEY

I hereby appoint the following named individual or organization as my Representative:

__J. Steven Elbell_____   __(301) 490-4328__
Name (Individual or Organization)                Telephone No.

__P O Box 454_____
Address (Number and Street)

__Fulton_____   __MD__   __20759__
City                            State     Zip Code

The Representative is authorized as attorney in fact to represent me in all respects in connection with any and all my currently pending complaints of discrimination. Among other things, the Representative is authorized to:

1. Appear, assist and counsel me in the preparation of my complaint of discrimination.

2. Appear for me or with me at hearings or other proceeding when his/her presence is authorized by Civil Service or Treasury regulations; and

3. Receive any information concerning my complaint of discrimination, including correspondence, copies of documents, reports of investigations, or reports of hearings to which I am entitled under Civil Service or Treasury regulation pertaining to complaints of discrimination.

4. Negotiate and finally resolve, adjust and/or settle any and all of my complaints of discrimination.


__Maria V Carmona_____   __December 27, 2002__
Signature                                Date

__Maria V Carmona_____
Print Name

### CANCELLATIONS OF DESIGNATION

1. This designation and limited power of attorney may be cancelled by the complainant or by the individual or organization named above upon written notice to the appropriate Bureau or Center EEO Officer.

2. A subsequent designation and limited power of attorney, if properly executed on this, or similar form, and sent to the appropriate Bureau or Center EEO Officer automatically cancels a previous designation.

3. The complainant is responsible for notifying his representative and the agency when the designation and limited power of attorney is cancelled.

TDF 67-13.2 (06/85)

28