UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARIA V. CARMONA

    Plaintiff

    v.

PAUL H. O'NEILL,
Secretary, Department of the Treasury

    Defendant

Civil Action No. 01-0115 (CKK)

FILED ✓

JAN 2 2 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MEMORANDUM OPINION**
(January 21, 2002)

Plaintiff Maria V. Carmona ("Plaintiff") is employed by the Department of the Treasury as a Supervisory Auditor. She has worked for the Office of Inspector General, Department of the Treasury for more than sixteen years and has been a Federal employee for twenty-five years. Compl. ¶ 11. This case arises out of Plaintiff's *pro se* claim under Title VII of the Civil Rights Act of 1964 against Paul H. O'Neill as Secretary of the Department of the Treasury ("Defendant"). Plaintiff alleges that she has been discriminated against by Defendant based on her national origin (Hispanic), her gender (female), and her age (over age forty). *Id.* at ¶ 9. Presently before the Court is Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [#9]. After considering Defendant's Motion, Plaintiff's Opposition thereto, Defendant's Reply, the applicable law, and the entire record of the case, the Court shall grant Defendant's motion for summary judgment and dismiss the case with prejudice from the docket of the Court.

1



## I. BACKGROUND

Plaintiff is a supervisory auditor employed by the Office of Inspector General, Department of the Treasury. Statement of Material Facts as to Which There is No Genuine Issue ("Stmt.") ¶ 1; Compl. ¶ 10. Plaintiff is a forty-eight year old, Hispanic white female who functions as an audit manager in Banking and Fiscal Service within the Office of Audit. Compl. ¶ 10. During 1997, Plaintiff filed six formal Equal Employment Opportunity ("EEO") complaints. Pl.'s Resp. in Opp'n to Def.'s Stmt. (Pl.'s Resp. to Stmt.) ¶ 2. Three of those formal EEO complaints, TD-98-1044, TD-98-1068, TD-98-1091, alleging discrimination on the basis of national origin (Hispanic), sex (female), and age (over forty), as well as retaliation based on her prior participation in the EEO complaint process, are the subject of the action before this Court. Stmt. ¶ 2; Pl.'s Resp. to Stmt. ¶ 2.

On January 22, 1998, EEO Investigator Stephen Tolbert wrote to Plaintiff informing her that an initial meeting had been scheduled for Thursday, February 12, 1998 at 10:00 a.m. in regard to the three complaints at issue in this case. Def.'s Mot., Ex. 4, Pl.'s Ex. 11 (January 22, 1998, Memorandum from Stephen Tolbert to Plaintiff). The "purpose of [the] initial meeting [was] to allow [Plaintiff] to address the allegations made within [her] formal complaints." *Id.* The letter was sent via certified mail and Plaintiff readily admits that she received the letter. Pl.'s Opp'n, Ex. 11, at 2 (photocopies of envelopes that contained Mr. Tolbert's letter); *see also* Def.'s Mot., Ex. 5, (return receipt card showing Plaintiff received Mr. Tolbert's letter on February 9, 1998). Despite receipt of Defendant's letter on February 9, 1998, Plaintiff failed to appear at the February 12, 1998, meeting scheduled by Mr. Tolbert and failed to contact him to explain her absence or arrange for another mutually convenient date to meet. At the time of this initial meeting, Plaintiff was represented by Mr. J. Steven Elbell, Esq.

2

Subsequently, on March 3, 1998, Michael Morgan-Gaide, Director of the Regional Complaint Center for the Department of the Treasury, wrote Mr. Elbell a letter (also sent to Plaintiff) which was received on March 6, 1998, by Plaintiff and her attorney. Def.'s Mot., Ex. 7. (return receipt cards showing when Plaintiff and her attorney received Mr. Tolbert's letter). In the letter dated March 3, 1998, Mr. Morgan-Gaide requested that Plaintiff provide a written statement responding to the questions attached to the letter. Def.'s Mot., Ex. 6, Pl.'s Opp'n, Ex. 12. (March 3, 1998, Letter from Michael Morgan-Gaide to J. Steven Elbell) at 1-2. The letter from Mr. Morgan-Gaide outlined the numerous attempts the Treasury Department's Regional Complaint Center had made to contact Mr. Elbell and Plaintiff:

> Commencing on January 27, 1998, the EEO Investigator, Stephen Tolbert, called and left a series of messages regarding meeting with you and the Complainant to which no response was ever received. Additional attempts to contact your were made on the following dates: January 28, February 3, February 6, and February 11, 1998. On February 4, 1998, the EEO Investigator forwarded questions concerning the issues accepted in these cases and requested that you prepare a written response to submit to him at the scheduled meeting of February 12, 1998. On that date, neither you or the Complainant showed up for the meeting. To date, we have not received a sworn affidavit as requested.

*Id.* at 1. The letter added that under the Equal Protection Opportunity Commission (EEOC) regulation 29 C.F.R. 1614.107(g)[1], "an agency shall dismiss a complaint where the agency has provided the complainant with a written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15

---

[1] In 1999, this section was re-classified as 29 C.F.R.1614.107*(a)(7)*. The text of the rule was not changed. For ease of discussion, the Court will refer to the regulation as it is currently numbered. *See* Rules and Regulations, Equal Employment Opportunity Commission, 64 Fed. Reg. 37,644 (July 12, 1999) ("[s]ection 1614.107 is amended by redesignating paragraphs (a) through (h) as paragraphs (a)(1) through (a)(8)").

3

days of its receipt or does not address the agency's request." *Id.* at 1.

The March 3, 1998, letter further advised Plaintiff that failure to return a written response to the questions enclosed therein could result in the dismissal of the complaint for failure to cooperate. *Id.* at 2. Plaintiff states that her record of the case does not include any "investigator's questions." Pl.'s Resp. to Stmt. ¶ 6. However, it remains undisputed that Plaintiff received the March 3, 1998, letter, notifying her that Defendant had yet to receive any written or oral information regarding the three EEO complaints that are at issue in the case. Despite receipt of this letter, neither Plaintiff nor her attorney responded. Stmt. ¶ 7. Having failed to appear for her initial interview and having neglected to submit any written information to the agency, on April 15, 1998, Defendant dismissed the three complaints pursuant to 29 C.F.R. § 1614.107. Def.'s Mot., Ex. 8, Pl.'s Opp'n, Ex. 13, (April 15, 1998, Letter from Michael Morgan-Gaide to J. Steven Elbell). The April 15, 1998, dismissal letter stated that the case was dismissed for failure to cooperate because Plaintiff had not responded to Defendant's request for information from Plaintiff. *Id.* Plaintiff was further advised that the Department of the Treasury's decision to dismiss the complaints was final, and was also informed of her appeal rights. *Id.* at 2.

Thereafter, Plaintiff appealed Defendant's decision. Stmt. ¶ 9. On March 1, 2000, the EEOC affirmed Defendant's dismissal of the complaints. Def.'s Mot., Ex. 9, (EEOC Appeal Decision). The EEOC concluded that Plaintiff failed to comply with any of Defendant's multiple requests to support her case, and thus found dismissal to be proper under 29 C.F.R. § 1614.107(a)(7). *Id.* Plaintiff, in a letter dated April 3, 2000, submitted a Request for Reconsideration of the March 1, 2000, EEOC decision. Def.'s Mot., Ex. 10, Pl.'s Opp'n, Ex. 14 (Request for Reconsideration). On October 19, 2000, the EEOC denied Plaintiff's Request for

4

Reconsideration, Def.'s Mot., Ex. 11, Pl.'s Opp'n, Ex. 15, (Denial of Request for Reconsideration), and on January 22, 2001, Plaintiff filed suit over the allegations of these three EEOC cases in this Court.[2]

On April 16, 2001, Defendant filed a Motion to Dismiss, or, in the Alternative for Summary Judgment. On May 3, 2001, this Court issued to Plaintiff an admonition that failure to respond to Defendant's motion could prove fatal to her case in accordance with the United States Court of Appeals for the District of Columbia's ruling in *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988) and *Neal v. Kelly*, 963 F.2d 452 (D.C. Cir. 1992). *Carmona v. O'Neill*, No. 01cv115 (D.D.C. May 4, 2001) (*Fox-Neal* order). On May 14, 2001, the Court again reminded Plaintiff of her responsibility to file a response to Defendant's motion by June 4, 2001. *Carmona v. O'Neill*, No. 01cv115 (D.D.C. May 14, 2001). In accord with these orders, Plaintiff filed a timely opposition on June 4, 2001.

## II. LEGAL STANDARD FOR EVALUATING DEFENDANT'S MOTION

Defendant's motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(1) and (6), or in the alternative, for summary judgment pursuant Fed. R. Civ. P. 56. At the outset, the Court notes that Defendant's motion shall be considered under Rule 12(b)(6) and not Rule 12(b)(1). Under Title VII, an individual complaining of discrimination must exhaust her administrative

---

[2] Plaintiff has brought her action under Title VII. However, Title VII is not the proper basis to bring a claim of discrimination on the basis of age. Rather the appropriate vehicle is the Age Discrimination in Employment Act (ADEA). Under the ADEA, exhaustion of administrative remedies is not a prerequisite to filing suit in Court. Age Discrimination in Employment Act, 29 U.S.C.A. § 633a (2001). However, as Plaintiff has failed to bring an ADEA claim, the Court shall not consider Plaintiff's complaint of discrimination on the basis of age. Therefore, the Court shall dismiss Plaintiff's age discrimination claim under Rule 12(b)(6) for failure to state a claim.

5

remedies by filing an administrative charge with the EEOC. *See* 42 U.S.C. § 2000(e)-5(e)(1). Defendant, therefore, asserts that the case should be dismissed for failure to exhaust administrative remedies. Def.'s Mot. at 5-6. Dismissal for failure to exhaust administrative remedies, however, would be improper under Rule 12(b)(1) because exhaustion is not a prerequisite to a federal court's jurisdiction. *Hager v. NationsBank N.A.*, 167 F.3d 245, 248 n.3 (5th Cir. 1999); *Postels v. Peters*, 2000 WL 280018 (E.D.La. 2000).

Certainly if Congress were to explicitly withdraw federal court jurisdiction, in the text of a statute, then the exhaustion requirement would be jurisdictional. Such an explicit statutory pronouncement would be "tantamount to a legislative investiture of exclusive original jurisdiction in the agency." *Taylor v. United States Treasury Department*, 127 F.3d 470, 475 (5th Cir. 1997) (exhaustion is not a jurisdictional prerequisite in cases arising under the Privacy Act). However, where Congress has not explicitly prohibited a federal court's jurisdiction prior to exhaustion, then the jurisprudential doctrine of exhaustion controls. The jurisprudential exhaustion doctrine is not jurisdictional in nature, but rather relates to the "'long settled rule of judicial administration [which mandates] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Id.* at 476 (quoting *Myers v Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)); *Anjelino v. The New York Times Co.*, 200 F.3d 73, 87 (3d Cir.1999) (citation omitted) ("Instead of a jurisdictional prerequisite, the purpose of the exhaustion requirement is practical and is meant to provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record.").

The exhaustion requirement in Title VII is not sufficiently clear or unequivocal to render exhaustion to be a jurisdictional prerequisite. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir.

6

1997) ("questions of whether a plaintiff has timely exhausted the administrative remedies in Title VII actions are in the nature of statutes of limitation[, t]hey do not affect the district court's subject matter jurisdiction"); *see also Washington v. Washington Metropolitan Area Transit Authority*, 160 F.3d 750, 752 (D.C. Cir. 1998) (discussing the fact that the requirement that an employee file an administrative discrimination complaint prior to filing an ADEA or Title VII suit is not a jurisdictional prerequisite to suit in federal court, and as such, is subject to equitable tolling); *Angelino*, 200 F.3d at 87 ("The characterization either of lack of exhaustion or of untimeliness as a jurisdictional bar is particularly inapt in Title VII cases, where the courts are permitted to equitably toll filing requirements in certain circumstances."). Therefore, the exhaustion requirement at issue in this case is jurisprudential in nature and not jurisdictional. Accordingly, Defendant's motion for dismissal on the grounds of failure to exhaust administrative remedies will be considered under Fed R. Civ. P. 12(b)(6) and not 12(b)(1).

As the Court considers matters outside the pleadings to resolve the instant motion, Defendant's 12(b)(6) motion is converted into a motion for summary judgment pursuant to the dictates of Rule 12(c). "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(c). As such, the Court will review Defendant's motion under the summary judgment standard.

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not

7

sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The adverse party's pleadings must evince the existence of a genuine issue of material fact. *See id.* at 247-48. To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party. *See id.*; *Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. Rather, the nonmoving party bears the affirmative duty to present, by affidavits or other means, specific facts showing that there is a genuine issue for trial. *See id.* at 1248-49. The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Inuds. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Additionally, the Court is especially cognizant of the fact that Plaintiff is proceeding *pro se*. In accordance with United States Court of Appeals for the District of Columbia Circuit precedent, the Court specifically instructed Plaintiff of the need to prepare and file affidavits attesting to the facts in dispute in responding to Defendant's motion. *Carmona v. O'Neill*, No. 01cv115 (D.D.C. May 4, 2001) (*Fox-Neal* order); *Carmona v. O'Neill*, No. 01cv115 (D.D.C. May 14, 2001) (order issuing another reminder). However, the District of Columbia Circuit has also instructed district courts that "[a]t least where a litigant is seeking a monetary award, we do not believe *pro se* status necessarily justifies special consideration. While such a *pro se* litigant must of course be given fair and equal treatment, he cannot generally be permitted to shift the burden of litigating his case to the courts, nor to avoid the risks of failure that attend his decision

8

to forego expert assistance." *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983) (Scalia, J.). Thus while the Court has taken great pains to provide Plaintiff with time and process, she cannot "avoid the risks of failure that attend [her] decision to forgo expert assistance." *Id.*

### III. DISCUSSION

As a Title VII Plaintiff, Ms. Carmona must exhaust administrative remedies before pursuing her claims in federal court. *Brown v. Gen. Serv. Admin.*, 425 U.S. 820 (1976); *Artis v. Greenspan*, 158 F.3d 1301 (D.C. Cir. 1998); *Nelson v. Greenspan*, 2001 WL 957729 (D.D.C. 2001). Failure to exhaust administrative remedies is "an affirmative defense [for which] the defendant bears the burden of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). When a defendant meets its burden, the plaintiff "then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Id.*

Even though Plaintiff's case was officially dismissed by the EEOC, Plaintiff's claim is still treated as one of failure to exhaust administrative remedies. Courts equate cases of a plaintiff failing to cooperate with the agency as cases where a plaintiff has failed to exhaust her administrative remedies. As the United States Court of Appeals for the District of Columbia Circuit has stated:

> If a complainant forces an agency to dismiss or cancel the complaint by failing to provide sufficient information to enable the agency to investigate the claim, he may not file a judicial suit. Even though the dismissal is "final action," which would normally trigger the right to sue . . . the suit will be barred for failure to exhaust administrative remedies. The purpose of the doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts. Thus, even if the plaintiff fails to make a good-faith attempt to comply with reasonable agency requests for information, the policy underlying the doctrine is not served unless the default prevents the agency

9

> from acting on the merits of the complaint. This conclusion is borne out by the facts of the cases that have invoked the doctrine, in which the complainants rest on vague allegations of discrimination and refuse to provide any details or dates, thus completely frustrating the agencies' ability to investigate complaints.

*Wilson v. Pena*, 79 F.3d 154, 164-65 (D.C. Cir. 1996) (citations omitted). Thus, the Court will view Plaintiff's case from the perspective of a failure to exhaust administrative remedies.

An agency may dismiss an EEO complaint only after it has given the complainant a written request, that includes a notice of the proposed cancellation. The written request must include either a request to supply pertinent information or otherwise proceed with the action. If the complainant fails to reply to this request within fifteen days of receipt of the written request the agency may dismiss the complaint. Federal Sector Equal Employment Opportunity, 29 C.F.R. § 1614.107(a)(7) (2001). The District of Columbia Circuit has stated that EEO complaints "must be brought to the EEO Counselor in a manner that lends itself to potential resolution." *Artis*, 158 F.3d at 1306. The purpose of such a requirement is to enable the agency charged with resolving these claims to comply with its statutory mandate. *Id.* (quoting 12 C.F.R. § 268.204(a) (1995)) (discussing the fact that the "purpose of EEO counseling is 'to try to informally resolve the matter'").

In the instant case, it is undisputed that Plaintiff failed to cooperate with the agency's request for information, and therefore, the Court readily concludes that Plaintiff failed to exhaust her administrative remedies. As noted *supra*, it is not disputed that the Treasury Department EEO counselor assigned to Plaintiff's case contacted Plaintiff through a letter dated January 22, 1998. Plaintiff and her attorney failed to respond to that letter and attend the scheduled meeting. It is undisputed that Plaintiff was again contacted by the agency in a letter dated March 3, 1998.

10

This letter included a section describing the numerous efforts the EEO counselor had made to contact Plaintiff. In accordance with 29 C.F.R. § 1614.107(a)(7), the EEO officer requested that Plaintiff respond within fifteen days to requests for information. It is not contested that Plaintiff failed to respond to the March 3, 1998, letter.[3] Given Plaintiff and her attorney's utter failure to cooperate, the agency properly dismissed her three complaints and, as such, this Court shall dismiss her suit for failure to exhaust her administrative remedies. *See Artis*, 158 F.3d at 1306. (collecting cases that support the proposition that if a complainant causes an agency to dismiss the claim by failing to supply information to assist the agency in conducting an investigation, the complainant may not file a civil lawsuit).

Plaintiff, as the nonmoving party, must, in her pleadings, "evince the existence of a genuine issue of material fact," *Anderson*, 477 U.S. at 247-48, in order to survive Defendant's motion for summary judgment. In this case, Plaintiff does not dispute or raise any issues of material fact to contest, that after filing her discrimination complaint, she failed to cooperate with the EEO investigation. While Plaintiff has submitted a voluminous response to Defendant's motion, Plaintiff's opposition never mentions or attempts to explain her failure to cooperate at the administrative stage. Notably, in both the complaint and the opposition filed in this case, Plaintiff provides insufficient explanation as to why she did not attend the initial interview or produce any affidavits or written statements regarding her complaint to Defendant. Rather, Plaintiff merely states that the Defendant "had sufficient information within the formal EEO complaints as filed and within its own records, such that the Defendant should have

---

[3] While Plaintiff states that she does not have as part of her record of the case, investigator's questions, Pl.'s Resp. to Stmt. ¶ 6, it is not disputed that upon receipt of the March 3, 1998, letter, Plaintiff and her attorney failed to take any steps to contact the agency or provide information about Plaintiff's complaint, despite the fact that the March 3, 1998, letter explicitly stated that Plaintiff's complaint might be dismissed if no response was received by the agency.

11

conducted its investigations before dismissing the Plaintiff's formal EEO complaints for failure to cooperate." Pl.'s Opp'n ¶ 29. Plaintiff also did not believe it proper to provide information in the form of an affidavit "that pertained only to issue(s) as stated by the Department of the Treasury, which the Plaintiff was maintaining was an incomplete and incorrect representation of the issues as stated by the Plaintiff in the formal EEO complaints." *Id.* ¶ 32. These purported explanations, however, fall far short of providing the Court of a reason for ignoring the agency's repeated requests for information. *See Artis*, 158 F.3d at 1306 (citation omitted) ("Agencies cannot make informed decisions based on vague allegations of discrimination without details or dates because this frustrates the agencies' ability to investigate complaints and impedes their efforts to issue final rulings on the merits."). Whether or not Plaintiff disagreed with the nature of the complaint as stated by the agency, or whether or not Plaintiff believed the agency had enough information to make a decision on the merits, ignores the gravamen of Defendant's argument: namely, that Plaintiff was required to make *an effort to* at least cooperate at the agency level. In this case, Plaintiff made no attempt to cooperate or partake in the agency process.

Such behavior runs counter to the sound rationale underlying the jurisprudential doctrine of exhaustion. As another member of this Court has observed:

> The purposes of the exhaustion requirement are both obvious and salutary. The employer is to be given the first opportunity to address the possibility or the perception of discrimination in his workplace. He may be able to achieve prompt, mutually agreeable resolutions of problems while they remain of manageable proportions. It is also to all parties' advantage to promote workplace efficiency and harmony without the necessity of judicial intervention. And, certainly not the least important, demanding serious efforts towards settlement at the outset gives some assurance that the courts will not have to waste their time on cases that are amenable to less costly, time-consuming solutions. Those

> purposes are all undermined by treating the right to file a lawsuit
> alleging discrimination as an elective alternative to a serious first
> effort to solve problems of workplace discrimination in-house and
> without litigation.

*Hill v. Runyon*, 12 F. Supp. 2d. 30, 33 (D.D.C. 1998). Given this sensible rule, the Court will not sanction Plaintiff's suit in this forum after her utter lack of cooperation at the agency level. To permit litigation in this Court would run counter to the well-settled rule of jurisprudence requiring exhaustion of administrative remedies at the agency stage.

Plaintiff is correct that Defendant's motion for dismissal "focus[es] on procedural issues rather than on the merits of the Plaintiff's claims." Pl.'s Opp'n. ¶ E. To date, no agency or court has specifically addressed the merits of Plaintiff's grievances. Plaintiff's EEO complaints were dismissed by the Department of the Treasury due to her failure to cooperate. Defendant was impeded from issuing a final ruling on the merits because it did not have sufficient information to assess the claims. Consequently, Plaintiff has not met her burden requiring her to prove that there are any genuine issues of material facts to counter Defendant's assertion that she has not exhausted administrative remedies. As such, this Court shall grant Defendant's motion for summary judgment.

## IV. CONCLUSION

For the reasons stated above, the Court has concluded that Plaintiff has failed to show that there are any genuine issues of material fact in regard to her not having exhausted the available administrative remedies. While the Court certainly recognizes the time and considerable effort Plaintiff has put into attempting to make her case, the Court also recognizes the importance of cooperation at the agency stage of the complaint. It is not enough for Plaintiff to utilize her disagreement with the EEO Counselor's statement of her case as a means of not

13

cooperating with the agency. It is also not proper for a complainant to ignore diligent requests for information simply because Plaintiff was satisfied that the agency had enough information to reach its decision. The EEOC process, while admittedly not perfect, is respectable in its goals of seeking to resolve conflicts before they plunge into acrimonious litigation. For the Court to ignore the efforts of the agency and, in essence, reward Plaintiff's non-cooperation, would engender particularly undesirable outcomes. Accordingly, Defendant's motion for summary judgment shall be granted. Plaintiff failed to exhaust her administrative remedies in regard to her complaints of discrimination on the basis of national origin and gender. Plaintiff has additionally failed to state a complaint for age discrimination. An Order accompanies this Memorandum Opinion.

COLLEEN KOLLAR-KOTELLY
United States District Judge

Copies to:

Maria V. Carmona
8306 Haven Hill Court
Laurel, MD 20723

Mary J. Reiser
Special Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20001

15