UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Maria V. Carmona
8306 Haven Hill Court
Laurel, Maryland 20723
301-490-4328

V.

CIVIL ACTION NO. 05cv2428 (JGP)

John W. Snow
Secretary of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC  20220

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Plaintiff respectfully submits this response in opposition *to Defendant's Statement of Material Facts Not in Dispute* in his *Motion to Dismiss or for Summary Judgment* [#6].

Plaintiff notes that Defendant's statement lists only 18 items as material facts. Plaintiff questions the veracity and materiality of these items, which by no means comprise all of the facts that are material and relevant to Plaintiff's complaint and that should therefore be considered in making a decision in this civil case.

Plaintiff notes that Defendant has not filed an *Answer* to Plaintiff's complaint, and there may be many genuine issues of material fact that are in dispute that Defendant has not raised in his instant *Motion*. In addition, Plaintiff submits that the items listed by Defendant <u>are</u> in dispute,

in part because they contain misrepresentations, false statements, or lack the context or evidence needed to evaluate them.

Plaintiff notes that Defendant's positions on 7 of the 18 facts that Defendant lists (#2-8) are based on an *Unsworn Declaration Under Penalty of Perjury*[1] [#6, D.Ex. 2][2] purportedly executed on April 9, 2003, in which Human Resources (HR) Specialist Kimberly T. Mingo committed perjury, knowingly making false statements material to Plaintiff's case.

In addition, Plaintiff notes that Defendant's positions on 4 of the 18 facts that Defendant lists (#9-12) are based on an *Unsworn Declaration Under Penalty of Perjury*[3] [#6, D.Ex. 4] purportedly executed on April 17, 2003, in which Assistant Inspector General for Audit Marla A. Freedman committed perjury, knowingly making false statements material to Plaintiff's case.

Plaintiff's filing on June 19, 2006, *Plaintiff Statement Regarding Defendant's False Statements and Perjury Before the Court* (P.Ex. 1) addresses these *Declarations* by Mingo and Freedman, and provides indisputable evidence of perjury by Defendant to the degree that the Court should find Defendant simply has no standing for defending his summary judgment motion or his long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment against Plaintiff. Plaintiff asserts that Defendant's presentation of false declarations before this Court also evidences pretext.

---

[1] The *Declaration* states that it is made in accordance with the provisions of 28 U.S.C. 1746, and ends with the following statement: *I declare under penalty of perjury that the foregoing is true and correct.*
[2] D.Ex. refers to Defendant Exhibit; P.Ex. to Plaintiff Exhibit.
[3] The *Declaration* states that it is made in accordance with the provisions of 28 U.S.C. 1746, and ends with the following statement: *I declare under penalty of perjury that the foregoing is true and correct.*

In addition, Plaintiff asserts that Defendant is intentionally misleading the Court when he couches material facts in the context of only a partial submittal of the subject formal administrative EEO complaint as if these facts represent the totality of Plaintiff's complaint, when Defendant knows that they do not.

Plaintiff's position, as discussed above, is presented in detail in Plaintiff's *Response to Defendant's Memorandum of Points and Authorities* (Response-DMPA). A reference to this document is included for each of the items listed in Defendant's *Statement*.

1. **Plaintiff disputes.**

    Ref. Response-DMPA, Section I.A.1., Advertising through Quick Hire, beginning on Pg. 5.

2. **Plaintiff disputes.**

    Ref. Response-DMPA, Section I.A.1., Advertising through Quick Hire, beginning on Pg. 5.

3. **Plaintiff disputes.**

    Ref. Response-DMPA, Section I.A.1., Advertising through Quick Hire, beginning on Pg. 5.

4. **Plaintiff disputes.**

    Ref. Response-DMPA, Section I.A.1., Advertising through Quick Hire, beginning on Pg. 6.

5. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.A.1., Advertising through Quick Hire, beginning on Pg. 6.

6. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.A.1., Advertising through Quick Hire, beginning on Pg. 7.

7. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.A.1., Advertising through Quick Hire, beginning on Pg. 7.

8. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.A.1., Advertising through Quick Hire, beginning on Pg. 7.

9. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.A.2., Cancellation of the Position, beginning on Pg. 9.

10. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.A.2., Cancellation of the Position, beginning on Pg. 9.

11. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.A.2., Cancellation of the Position, beginning on Pg. 10.

12. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.A.2., Cancellation of the Position, beginning on Pg. 11.

13. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.B., Plaintiff's Administrative Complaint, beginning on Pg. 12.

14. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.B., Plaintiff's Administrative Complaint, beginning on Pg. 16.

15-18. **Plaintiff disputes.**

Ref. Response-DMPA, Section I.B., Plaintiff's Administrative Complaint, beginning on Pg. 12.


In summary, Plaintiff disputes all of the items that Defendant claims are material facts not in dispute, and does not believe that these represent all of the material facts in her case. As shown in this *Opposition*, with its supporting documentation, there remain significant genuine issues of material fact to be resolved.

Respectfully Submitted,

Maria V. Carmona, *pro se*
8306 Haven Hill Court
Laurel, Maryland  20723
(301) 490-4328

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Maria V. Carmona
8306 Haven Hill Court
Laurel, Maryland 20723
301-490-4328

V.                                      CIVIL ACTION NO. 05cv2428 (JGP)

John W. Snow
Secretary of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC  20220

## PLAINTIFF'S MEMORANDUM
## OF POINTS AND AUTHORITIES

Plaintiff's filing on June 19, 2006, *Plaintiff Statement Regarding Defendant's False*

*Statements and Perjury Before the Court* (a copy is included with this filing as P.Ex. 1)[1] provides

indisputable direct evidence of pretext and perjury in the instant case[2] by Defendant to such a

degree and extent that the Court should find Defendant simply has no credibility for defending

his March 17, 2006, *Motion to Dismiss or for Summary Judgment* (*Motion*) [#6] or his clear

long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work

environment as claimed by Plaintiff.

Without dispute, based on indisputable evidence, Plaintiff is a highly-credentialed highly-

experienced Hispanic Female over the age of 40,  with over 20 years of experience with the

---

[1] P.Ex. refers to Plaintiff Exhibit; D.Ex. refers to Defendant Exhibit. The *Plaintiff Statement* at P.Ex. 1
contains 18 sub-exhibits, labeled A through R.

[2] Plaintiff notes that pretext and perjury by Defendant are also evidenced in related cases 04cv0589 (JGP)[#16,
particularly #16, P.Ex. D] and 05cv1194 (JGP) [#25].  Plaintiff also wishes to note that although Defendant filed
no declarations in 01cv0115 (CKK) numerous false statements were made by Defendant in that case also. [#19]

Department of the Treasury Office of Inspector General (OIG) who has been denied merited career advancement throughout her career, for illegal reasons, by officials at Treasury, by officials at the EEOC, and by other officials of the United States government. The evidence is simply indisputable in this regard.

As in the instant case, indisputable direct evidence shows Defendant has exhibited a long-term pattern and practice of violating Plaintiff's civil rights; failure to comply with the laws, rules, and regulations governing equal employment opportunity; and using pretext and perjury to deny Plaintiff merited career advancement since at least 1991. Plaintiff first joined the Treasury OIG in 1983.

**Brief Background:** The claims, issues, and matters that are the subjects of this civil action chronologically represent the seventeenth of the nineteen formal administrative EEO complaints Plaintiff has been forced to file to date against Defendant, and all since December 1995.

Due to a continuation of a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment, Plaintiff properly and timely requested assignment of an EEO counselor on October 18, 2002, (P.Ex. 2, Sub-Ex. A)[3] for the reasons stated, and on November 4, 2002, expressed her concerns to Defendant regarding violations of Plaintiff's confidentiality by Treasury officials. (P.Ex. 2, Sub-Ex. E)

---

[3] Sub-Ex. Refers to Sub-Exhibits within one of Plaintiff's exhibits.

2

Due to no informal resolution Plaintiff properly and timely filed her formal EEO complaint on December 27, 2002.  (P.Ex. 2)

P.Ex. 4 contains a copy of the acknowledgment letter from Treasury dated January 30, 2003, that clearly states the date on which Plaintiff filed her seventeenth formal administrative EEO complaint, i.e., December 27, 2002; clearly states the TD number assigned, i.e., 03-2185; and clearly states that ...*an investigation of the complaint must be completed within 180 days of the filing of the complaint unless the parties agree in writing to extend the time period.*  Plaintiff notes that she did not extend this period.

## EEOC MD 110, CHAPTER 5, AGENCY PROCESSING OF FORMAL COMPLAINTS

### I.  AGENCY SHALL ACKNOWLEDGE FORMAL COMPLAINT

Immediately upon receipt of a formal complaint of discrimination, the agency shall acknowledge receipt of the complaint in writing.

It is clear that Plaintiff filed her formal EEO administrative EEO complaint on December 27, 2002; and it is clear that the agency did not acknowledge Plaintiff's complaint until more than a month later, i.e., January 30, 2003, in clear violation of the above.

P.Ex. 5 is a copy of a letter dated February 18, 2003, hand-delivered to Defendant with a cc: to Jerry Armstrong, Director of the Dallas Treasury Complaint Center, in timely response to a letter received by Plaintiff from Armstrong.  The content of Plaintiff's correspondence to Defendant is clear and self-explanatory regarding Defendant's long-term pattern and practice of misstating, restating, and/or providing an incomplete statement of the claims, issues, and matters

3

that Plaintiff raises in her formal EEO complaint processes. And, in the instant case, of

continuing the same, in addition to simply fabricating a claim that Plaintiff clearly had not made

in her formal administrative EEO complaint. P.Ex. 6 is a copy of Plaintiff's certified mail

receipt and a copy of Armstrong's receipt of Plaintiff's February 18, 2003, letter.

Section 1614.108(b), of Title 29 C.F.R., requires that *the agency shall develop an*

*impartial and appropriate factual record upon which to make findings on the claims raised by*

*the written complaint. An appropriate factual record is one that allows a reasonable fact finder*

*to draw conclusions as to whether discrimination occurred.*

It is indisputably clear that Section 1614.108(b), of Title 29 C.F.R. does not state that the

agency can ignore claims raised in the complaint, nor does it state that the agency can fabricate

claims that are not raised in the complaint.

**Point:** It is clear from Armstrong's letter and Plaintiff's response that the agency violated the

above regulations by not addressing all of the claims raised by the written complaint, and in fact

that Defendant simply chose to fabricate a claim that was not raised in the written complaint.

P.Ex. 7 is a copy of letter dated March 3, 2003, from Marcia H. Coates, the Defendant's

Director, Office of Equal Opportunity Program, which states, in part, in the second paragraph,

*There is no indication that you or Ms. Carmona notified the Dallas TCC that Ms. Carmona*

*disagreed with the statement of her claim(s).* It also states, in part, in the next to last paragraph

*...we reviewed your letter and have determined that the Dallas TCC acted properly with regard*

*to the acceptance of your complaint.*

4

First, Coates has made a false statement about Plaintiff not notifying the Dallas Treasury Complaint Center, because the letter to Defendant included a cc: to Armstrong, which he clearly received. Second, it is clear that Coates admits that she has no problem with Treasury officials violating the regulations and Plaintiff's rights during the administrative process in the manner outlined in Plaintiff's February 18, 2003, correspondence.

P.Ex. 8 is a copy of a March 7, 2003, letter from Armstrong, in which he states in part *...the agency's decision remains unchanged regarding our accepted issues for investigation.* First, Plaintiff wishes to note that she is employed by the Treasury OIG; she is not, and never has been, employed by Homeland Security, as Armstrong's letter indicates. Second, it is clear that Armstrong agrees with Coates in admitting that he too has no problem with Treasury officials violating the regulations and Plaintiff's rights during the administrative process in the manner Plaintiff outlined in Plaintiff's February 18, 2003, correspondence. (P.Ex. 5)

Therefore, it is also clear in Defendant arriving at the issues to be investigated and in his fabricating an issue that Plaintiff clearly had not claimed, that before ever contacting Plaintiff, Defendant's Director of his Dallas Treasury Complaint Center engaged in discussions with other Treasury officials regarding what Plaintiff's claims should be.

**Point:** It is indisputably clear that Defendant's Directors of his Office of Equal Opportunity Program and of his Dallas Treasury Complaint Center, which, respectively, administers Defendant's EEO program and processes complaints, have no problem violating the regulations and fabricating evidence in Plaintiff's administrative EEO cases.

5

**Point:** It is also clear that Coates, Armstrong, and possibly other Treasury officials have

conspired and are conspiring to deny Plaintiff her civil right to equal employment opportunity.

**Point:** It is clear that Plaintiff never should have been, and never should be, expected to pursue

her civil right to equal employment opportunity under such conditions as evidence clearly shows

has been a long-term pattern and practice of Defendant. Indisputable direct evidence on the

records in Plaintiff's nineteen formal administrative EEO complaints and in the four civil actions

she has been forced to file to date shows that this type of unlawful discriminatory, retaliatory,

and hostile environment, with pretext and perjury following once Defendant forces Plaintiff

into the courts, has existed since Plaintiff first initiated her administrative EEO processes

in 1995. And indisputable direct evidence on the records in Plaintiff's administrative and civil

cases shows clearly that officials at the EEOC and the courts have condoned this type of

environment.

**Point:** Defendant clearly violated the regulations and Plaintiff's rights. Plaintiff asserts that

these acts are also evidentiary of a long-term pattern and practice of conspiracy and of the willful

manipulation of material evidence on the part of Defendant and other officials of the United

States government in Plaintiff's administrative and legal cases.

In addition, regarding Coates, who as stated is Defendant's Director of his Office of

Equal Opportunity Program, Plaintiff wishes to note that since at least 1983, when Plaintiff first

joined the Treasury OIG, no Hispanic Female in the series 511 has been permanently promoted

beyond the Grade 14 in the Treasury OIG. P.Ex. 3 is a copy of a letter from Coates in which she

6

states, in part, *OIG now has an EEO Officer...*, meaning there had not been an EEO Officer

at Treasury OIG. In addition, 05cv1194 (JGP) provides direct evidence of more violations

of the regulations by Coates, to include not even acknowledging one of Plaintiff's formal

administrative EEO complaints until after 180 days from its date of filing, the time frame set

by regulation under which an investigation is required to be completed by the agency; and

Coates not even acknowledging the four other formal EEO complaints that are the subjects in

05cv1194 (JGP), again in clear violation of the regulations. Finally, as mentioned above, Coates

had no problem with her and her Director of the Dallas Treasury Complaint Center violating the

regulations and fabricating evidence in Plaintiff's administrative EEO cases. As such, Plaintiff

reasonably questions the usefulness of Treasury's Office of Equal Opportunity Program and its

Complaint Center in just these few examples cited above.

**Point:** It remains unclear to Plaintiff how Defendant can show a complete and utter disregard

for Plaintiff's civil right to equal employment opportunity throughout Plaintiff's over 20 year

career with Treasury; consistently violate the laws, rules, and regulations governing equal

employment opportunity; force Plaintiff into the courts; then claim that Plaintiff has in any

manner failed the EEO administrative process and be granted summary judgment.

This unworthy pattern and practice by Defendant of violating the regulations and

exhibiting a long-term pattern and practice of misstating, restating, and/or providing an

incomplete statement of the claims, issues, and matters that Plaintiff raises in her formal EEO

processes, and then attempting to force Plaintiff into improper investigations, was also evidenced

7

in the three formal administrative EEO complaints, chronologically the eighth, ninth, and tenth

of the nineteen formal administrative EEO complaints Plaintiff has been forced to file to date

against Defendant, that are the subjects in Plaintiff's civil case 01cv0115 (CKK).[4]

In brief, Plaintiff notes that Judge Kollar-Kotelly, in her Memorandum Opinion,

in granting summary judgment to Defendant for procedural reasons, i.e., not on the merit of

Plaintiff's claims as Judge Kollar-Kotelly admits (see below), and without discovery or a trial,

in part, chose to ignore Defendant's and EEOC officials' violations of Plaintiff's rights during

the administrative process; chose to ignore direct evidence placed on the record by Plaintiff in

dispute of claims and false statements made by Defendant, to include the evidence Plaintiff

provided in her three subject formal EEO complaints; and chose not to request, or allow, by not

granting discovery, Plaintiff access to reasonable material information and documentation from

Defendant, prior to granting Defendant summary judgment, that had not been identified or

justified in any manner by Defendant.[5]

Plaintiff also wishes to note that Judge Kollar-Kotelly's Memorandum Opinion contains

misstatements of material facts in that case. In addition, as referred to above, Judge Kollar-

Kotelly states in her Memorandum Opinion, on Page 13, that *To date, no agency or court has*

*specifically addressed the merits of Plaintiff's grievances.*

---

[4] Defendant includes the decision in 01cv0115(CKK) as support for his instant pre-discovery *Motion for Summary Judgment.* [#6, D.Ex. 9]
[5] Circumstances similar to those in the instant case, i.e., Defendant violating the regulations and Plaintiff's rights, forcing Plaintiff into the courts, and then making claims that Plaintiff has not cooperated in the administrative process when direct evidence indisputably proves otherwise.

8

**Point:** Plaintiff does not believe that, given a clear long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment committed against Plaintiff; a clear long-term pattern of Defendant and other officials of the United States government violating Plaintiff's civil right to equal employment opportunity and the conditions under which Plaintiff is entitled by law to pursue those rights; and with Defendant making false and perjurious statements in court; Defendant should be rewarded by the courts by being granted summary judgment.

Plaintiff stands by her claims in 01cv0115(CKK), which were made in accordance with the regulations, and Plaintiff conducted herself within her rights under the laws, rules, and regulations governing equal employment opportunity as detailed in her opposition in that case.

It was then, and still is, Plaintiff's clear understanding that summary judgment cannot be granted when general issues of material fact remain in dispute, as was the case in 01cv0115 (CKK), and as is the case in the instant case; and that a jury, not a judge, should determine such issues.

Plaintiff cites, in relevant part, Supreme Court of the United States, No. 99-536, *Roger Reeves, Petitioner v. Sanderson Plumbing Products, Inc.,* [June 12, 2000], in which Justice O'Connor delivered the opinion of the Court - *"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."* Liberty Lobby, supra, at 255. *Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required*

9

*to believe. See Wright & Miller 299.* Plaintiff does not believe, and evidence fully supports this position, that a jury would find any credibility in any of Defendant's claims.

Plaintiff stands by her opposition to summary judgment in 01cv0115 (CKK), her appeal, and her *petition for certiorari* before the Supreme Court of the United States. It is Plaintiff's position that the summary judgment in 01cv0115 (CKK) should not be used by the court to support Defendant's motions for summary judgment in the instant case or in any other of Plaintiff's cases.

Plaintiff would welcome the reopening of 01cv0115 (CKK) and a full, fair, and complete review of the facts and Plaintiff's opposition to summary judgment in that case.

In further support of Plaintiff's opposition to Defendant's instant *Motion to Dismiss or for Summary Judgment* [#6], Plaintiff looks to regulations contained at 29 C.F.R. 1614; policies, procedures, and guidance contained in the U.S. Equal Employment Opportunity Commission Management Directive MD-110 (EEOC MD-110); previous EEOC decisions; and holdings by the Supreme Court of the United States.[6]

---

[6] Plaintiff refers the Court to Supreme Court of the United States holdings in *Roger Reeves, Petitioner v. Sanderson Plumbing Products, Inc.,* No. 99-536, and in *Akos Swierkiewicz, Petitioner v. Sorema N.A.*, No. 00-1853. Both of these cases provide support for the Court finding in favor of Plaintiff's overarching claim that a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment has been committed and that, therefore, Plaintiff is entitled to damages. References to Supreme Court decisions also include all of the cases that are cited therein.

10

**EEOC MD 110, CHAPTER 5, AGENCY PROCESSING OF FORMAL COMPLAINTS**

### I. <u>AGENCY SHALL ACKNOWLEDGE FORMAL COMPLAINT</u>

Immediately upon receipt of a formal complaint of discrimination, the agency shall acknowledge receipt of the complaint in writing.

### II. <u>THE AGENCY SHALL ALSO PROVIDE OTHER INFORMATION AND NOTICE OF RIGHTS</u>

#### A. <u>Agency Shall Inform the Complainant of the Agency's Obligations</u>

1. <u>To Investigate in a Timely Manner</u>

The agency is required to investigate the complaint in a timely manner. The investigation must be appropriate, impartial, and completed within **180 days** of filing the complaint....

**EEOC MD 110, CHAPTER 6, DEVELOPMENT OF IMPARTIAL AND APPROPRIATE FACTUAL RECORDS**

### I. <u>INTRODUCTION</u>

Section 1614.108(b), of Title 29 C.F.R., requires that "the agency shall develop an impartial and appropriate factual record upon which to make findings on the claims raised by the written complaint." An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred.

**Point:** It is indisputably clear that Defendant failed to comply with the above-referenced regulations. A long-term pattern and practice of misstating, restating, and/or providing an incomplete statement of the claims, issues, and matters that Plaintiff raises in her formal EEO processes and Defendant simply fabricating a claim in the instant case as discussed previously exhibits no attempt by Defendant to conduct a proper, timely, appropriate, impartial, or complete investigation and also clearly indicates conspiracy by officials at Treasury, and later upon review

11

by officials at the EEOC, to continue Defendant's long-term pattern and practice of

discrimination, retaliation, disparate treatment, and a hostile/harassing work environment in

order to deny Plaintiff her civil right to equal employment opportunity.

## EEOC MD 110, CHAPTER 7, HEARINGS

### I. __INTRODUCTION__ (4th paragraph)

> In an agency's written acknowledgment of receipt of a complaint or an amendment
> to a complaint, the agency shall advise the complainant of the EEOC office and address
> where a hearing request is to be sent as well as the agency office to which the copy of the
> request should be sent. In the absence of the required notice from the agency, the
> complainant may request a hearing at any time after 180 days have elapsed from the
> filing of the complaint by submitting his/her written hearing request directly to the
> appropriate EEOC district or field office indicated in the agency's acknowledgment
> letter. § 1614.108(g).

Evidence indisputably shows that Plaintiff properly and timely filed a request for hearing before

an EEOC administrative judge on TD 03-2185 on October 21, 2003, which was acknowledged

on March 22, 2004, by EEOC Supervisory Administrative Judge Shih[7] and which was assigned

EEOC No. 100-2004-00180X (P.Ex. 9).

Based on the assignment of Stephen Shih, a senior official at the EEOC, Plaintiff

reasonably questioned, and questions, the ethics of officials of the United States government

to process her claims to equal employment opportunity. At the time of his finding that Hispanic

---

[7] EEOC administrative judge Shih is the same judge who found that Hispanic is not a national origin in Plaintiff's
initial formal administrative EEO complaint, which was filed on December 14, 1995, and evidence shows in that
case that Judge Shih ignored plaintiff's rights, ignored Plaintiff's evidence, and granted a clearly improper summary
judgment to Defendant. Plaintiff wishes to note that the case referred to here is not a subject in the instant civil
action or in any of the other three civil actions Plaintiff has been forced to file to date against the Defendant, but that
it directly goes to and evidences Plaintiff's conspiracy claims by officials of the United States Government to deny
Plaintiff her civil right to equal employment opportunity.

12

is not a national origin, it is Plaintiff's understanding that Shih's title was EEOC administrative

judge. It is Plaintiff's understanding that at some point after this finding Shih was promoted

to EEOC Supervisory administrative judge. It is a travesty of justice for the courts to support

and condone such a clearly discriminatory, retaliatory, and hostile environment as Plaintiff has

been forced to endure for over ten years in regards to her pursuit of her civil right to equal

employment opportunity.

**Point:** It was and is overwhelmingly clear based on indisputable evidence that it was futile and

is futile for Plaintiff to engage the administrative EEO process. It is clear that the Defendant

had no intention, and has no intention, of providing Plaintiff her civil right to equal employment

opportunity; and had no intention, and has no intention, of providing Plaintiff her civil right to

pursue her claims to equal employment opportunity in accordance with the laws, rules, and

regulations governing equal employment opportunity.

In addition, the Chair of the EEOC, in part, condoning the promotion of and continuation

of Stephen Shih, a senior EEOC official who claims that Hispanic isn't a national origin, to be

assigned to Plaintiff's administrative EEO cases[8]  was and is simply an egregious and

unconscionable act and a miscarriage of justice. Further evidence of officials at the EEOC

committing miscarriages of justice are recorded in Plaintiff's other administrative EEO cases.

---

[8] In addition to other of Plaintiff's administrative EEO cases Stephen Shih was also assigned to Plaintiff's five
administrative EEO cases that are the subjects in related case 05cv1194(JGP).

13

Evidence clearly shows that the administrative EEO process has served no useful purpose for Plaintiff in that evidence clearly shows conspiracy by officials at Treasury, at the EEOC, and by other officials of the United States government to deny Plaintiff her civil right to equal employment opportunity.

It is overwhelmingly clear that Plaintiff, as former Treasury Inspector General Jeffrey Rush so clearly and directly stated, and as was stipulated to by Defendant in 01cv0115 (CKK), (See 01cv0115 (CKK), #7, Par. 39-42) has been expected and is expected to fight the entire United States government in pursuit of her civil right to equal employment opportunity.

To date, no official of the United States government has taken any steps administratively or legally to stop the Defendant's or the EEOC Chair's clear and indisputable long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment against Plaintiff, despite indisputable evidence that Defendant has exhibited a long-term pattern and practice of violating the laws, rules, and regulations governing equal employment opportunity, and has lied time and time again in Court about his motives for his adverse actions taken against Plaintiff, and has committed perjury.

In regards to the above, with special consideration given to Defendant's instant cases of pretext and perjury (P.Ex. 1),  Plaintiff cites Supreme Court of the United States, No. 99-536, *Roger Reeves, Petitioner v. Sanderson Plumbing Products, Inc.,* [June 12, 2000], in which Justice O'Connor delivered the opinion of the Court.

14

In reaching this conclusion, however, we reasoned that it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Specifically, we stated:

> "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." Id., at 511.
>
> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. See *id.,* at 517 ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright* v. *West,* 505 U. S. 277, 296 (1992); see also *Wilson* v. *United States,* 162 U. S. 613, 620-621 (1896); 2 J. Wigmore, Evidence §278(2), p. 133 (J. Chadbourn rev. ed. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Cf. *Furnco Constr. Corp.* v. *Waters,* 438 U. S. 567, 577 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with *some* reason, based his decision on an impermissible consideration"). Thus, a plaintiffs prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

In addition in *Reeves v. Sanderson* Justice O'Connor wrote,

> In the analogous context of summary judgment under Rule 56, we have stated that the court must review the record "taken as a whole." *Matsushita Elec. Industrial Co.* v.

*Zenith Radio Corp.,* 475 U. S. 574, 587 (1986). And the standard for granting summary judgment "mirrors" the standard for judgment as a matter of law, such that "the inquiry under each is the same." *Anderson* v. *Liberty Lobby, Inc.,* 477 U. S. 242, 250-251 (1986); see also *Celotex Corp.* v. *Catrett,* 477 U. S. 317, 323 (1986). It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle* v. *Household Mfg., Inc.,* 494 U. S. 545, 554-555 (1990); *Liberty Lobby, Inc., supra,* at 254; *Continental Ore Co.* v. *Union Carbide & Carbon Corp.,* 370 U. S. 690, 696, n. 6 (1962). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty Lobby, supra,* at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright & Miller 299.

Plaintiff respectfully submits, based on the nature and extent of Defendant's pattern and practice of pretext and perjury in this case (P.Ex. 1), and in Plaintiff's other cases, 01cv0115 (CKK), 04cv0589 (JGP), and 05cv1194 (JGP) that there is little from Defendant that this Court, Judge Kollar-Kotelly's Court, or a jury should have believed or should believe in any of Plaintiff's administrative or civil cases.

It is clear from his actions that Defendant has never been entitled to summary judgment and is not entitled to summary judgment,[9] and that Plaintiff is entitled to all damages requested.

Plaintiff asserts that Defendant knowingly came to Court believing that he could get one or more of Plaintiff's formal administrative EEO complaints dismissed while misrepresenting to the Court the complaint as filed by Plaintiff; misrepresenting all of the claims, issues, and

---

[9] Plaintiff reminds the Court that EEOC administrative judge Shih granted summary judgment to Defendant in Plaintiff's initial administrative EEO case while finding that Hispanic was not a national origin and while ignoring Plaintiff's rights and direct evidence.

16

matters that Plaintiff had raised in her complaint; and misrepresenting all of the evidence
Plaintiff had provided in her complaint.

**Point:**  Plaintiff asserts that none of her nineteen formal EEO complaints have ever been
investigated in a proper and timely manner and some, like those in 01cv0115 (CKK), were not
investigated at all.

The failure of an agency, in Plaintiff's circumstances this applies to Treasury and to the
EEOC, to comply with its own regulations or policy and procedure manuals may be evidentiary
of discrimination. *Wilgenhof v. U.S. Postal Service*, 01840413, 1258/C14 (1985).

**Point:**  Plaintiff asserts that evidence clearly shows that officials at Treasury and officials at the
EEOC have exhibited a long-term pattern and practice of not following their own regulations or
policy and procedure manuals, and have, in fact, conspired to deny Plaintiff her civil right to
equal employment opportunity.

The Commission generally has held that an agency will not be permitted to hide behind
an acceptance letter to reject allegations by failing to plainly reject the allegations and to give the
appellant proper appeal rights. *Jayme v. Attorney General*, 01941376, 4445/E8 (1995), citing
*Sumter v. Dep't of the Interior*, EEOC Request No. 05940500 (November 18, 1994); *Mosby v.
United States Postal Service*, EEOC Appeal No. 01913992 (December 20, 1991); *Jozlin v. Dep't
of Veterans Affairs*, EEOC Appeal No. 01920040 (February 12, 1992).

This means that an agency may not advise a complainant only of the issues accepted for
investigation and then later argue that all other issues were dismissed, as Defendant has clearly

17

attempted to do in the instant case. If an issue is dismissed, the agency must explicitly tell the complainant of its dismissal and advise the complainant of his or her appeal rights.

**Point:** Plaintiff asserts that Defendant did not properly address all of the claims, issues, and matters raised in Plaintiff's formal EEO complaint and attempted to hide behind an acceptance letter in order to not address all of the issues in all of the complaints directly and to simply fabricate an issue that Plaintiff clearly had not claimed.

In addition, the agency must explicitly notify the complainant of what issues are being accepted and what issues are being rejected prior to investigation of the complaint. The agency also must notify the complainant that any rejection of issues is a final agency decision subject to review by the EEOC and the applicable time limits for filing an appeal. *Schenker v. Postmaster General*, 05880108, 1998/C5 (1988).

**Point:** Plaintiff asserts Defendant did not notify Plaintiff of the status, i.e., acceptance or dismissal, of all of the issues in her formal administrative EEO complaint.

When an agency dismisses a complaint, the burden of proof, on appeal, is on the agency to "have evidence or proof to support its final decision." *Pruitt v. Secretary of Veterans Affairs*, 01934793, 3906/A2 (1993).

**Point:** Plaintiff asserts Defendant failed to meet its burden of proof in dismissing Plaintiff's formal administrative EEO complaint. Plaintiff asserts Defendant conducted no proper and timely investigations, i.e., within 180 days of the dates of filing of a formal administrative EEO

18

complaint, and thus had no evidence or proof to support its final decisions before dismissing Plaintiff's formal administrative EEO complaints.

The agency has an obligation to channel properly complaints of discrimination brought to its attention and may not rely on technical interpretations when dealing with laymen employees unassisted by legal counsel. *Czecha v. Department of Commerce*, 01831797, 1076/F3 (1984). "A layman is not required to make sophisticated legal allegations to validate a complaint." *Dunker v. Department of Navy*, 01831878, 1079/A1 (1983).

**Point:** Plaintiff, who has been and is proceeding *pro se*, asserts that the claims, issues, and matters raised in her formal administrative EEO complaints were sufficient to validate the formal EEO complaints.

The agency is "required to thoroughly investigate a complaint of unlawful discrimination before it issues a decision on the merits of the complaint." *Martin v. U.S. Postal Service*, 01821981, 1032/A12 (1983). "The EEO administrative process is not intended to be an adversarial one, pitting complainant against his or her employer." *Bell v. Postmaster General*, 01903356, 2757/G2 (1990). As such, there is no requirement that a complainant allege a formal *prima facie* case in order to have her complaint accepted for investigation. The complainant only is required to raise "an issue from which she is aggrieved." When the agency has the information sought in its own records, it may not dismiss the complaint due to a failure to cooperate on the part of the complainant. *Syphax v. Department of Labor*, 01872054, 1781/D4 (1987). The agency has an obligation to review its own records and the investigator has an obligation to elicit

19

information relevant to the complaint from the agency. See also *Luyando v. Secretary of Treasury*, 05890883, 2397/C3 (1989). In *Brinson v. United States Postal Service*, 05900193, 2582/C6 (1990), the Commission held that it was error for an agency to cancel a complaint for failure to provide information where the information being sought had already been provided by the complainant. An agency may rely on a sufficiently specific complaint, as in Brinson, since it is a complainant's signed statement.

**Point:** Plaintiff asserts she provided sufficient information and in sufficient detail in her formal administrative EEO complaint as filed for Defendant to proceed with a proper and timely investigation before Defendant dismissed her formal EEO complaint. It is noted Defendant conducted no proper and timely investigations, i.e., within 180 days of the dates of filing, into the claims, issue, and matters raised by Plaintiff in any of her formal EEO complaints.

In further response to Defendant's FRCP 12(b)(1) claim of a lack of jurisdiction over the subject matter, the Court has jurisdiction because there is a U.S. Government Defendant, Defendant issued a Final Agency Decision(FAD), and the EEOC notified Plaintiff she had no further right to administrative appeal and notified Plaintiff she had the right to file a civil action in an appropriate United States District Court in pursuit of legal remedies.

Regarding the issuance of a FAD by the agency, and Defendant's claim that Plaintiff failed to exhaust her administrative remedies, Plaintiff offers the following.

A federal employee alleging discrimination must file a district court complaint within ninety days of exhausting his or her administrative remedies. See 42 U.S.C. 2000e-16(c); see

20

also *Waiters v. Parsons*, 729 F.2d 233, 237 (3d. Cir. 1984). An employee exhausts his

administrative remedies upon receipt of a final agency decision. *Waiters*, 729 F.2d at 237.[10]

**Point:** It is clear the law considers that the issuance of a FAD by the agency was an exhaustion

of Plaintiff's administrative remedies. It is clear, therefore, that Defendant's motion to dismiss

for failure to exhaust administrative remedies lacks merit, as it did in 01cv0115 (CKK).

**Point:** Plaintiff asserts it is clear Defendant's motion to dismiss under FRCP 12(b)(1) and

FRCP 12(b)(6) lack merit and should be denied.

      In addition, Plaintiff offers the following discussion in an attempt to ensure Plaintiff has

complied in every possible manner to oppose Defendant's motion.

**Standard for Dismissal Under Rule 12(b)(1) Lack of Jurisdiction Over the Subject Matter**

      Pursuant to FRCP 12(b)(1), a district court can grant dismissal based on the legal

sufficiency of a claim. Dismissal is proper only when the claim clearly appears to be either

immaterial and solely for the purpose of obtaining jurisdiction, or is wholly insubstantial and

frivolous. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3rd. Cir.), cert. denied,

501 U.S. 1222 (1991). When the subject matter jurisdiction of the court is challenged, the party

that invokes the court's jurisdiction bears the burden of persuasion. *Kehr Packages*, 926 F.2d

---

[10] This material fact was true in the three formal administrative EEO complaints that are the subjects in 01cv0115 (CKK) even though Judge Kollar-Kotelly stated that Plaintiff failed to exhaust her administrative remedies. Prior to coming to Court in 01cv0115(CKK) Plaintiff had received a FAD from the agency. It is also true in the four EEO complaints that are the subjects in related case 04cv0589 (JGP), in the five that are the subjects in the related case 05cv1194 (JGP); and in the one formal administrative EEO complaint in the instant related case 05cv2428 (JGP). Defendant issued a FAD in all cases before Plaintiff came to court. With respect, therefore, Judge Kollar-Kotelly's decision to grant Defendant summary judgment in 01cv0115 (CKK) while finding Plaintiff failed to exhaust administrative remedies was improper.

at 1409 (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

Moreover, the district court is not restricted to the face of the pleadings, but may review any

evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United*

*States*, 850 F.2d 558, 560 (9th Cir. 1988) (citations omitted), cert. denied, 489 U.S. 1052 (1989).

It is Plaintiff's understanding that Defendant's FRCP 12(b)(1) motion to dismiss for failure to

exhaust administrative remedies challenges the court's power to determine the subject of the

controversy; thus, an order granting an FRCP 12(b)(1) motion to dismiss is not a decision on the

merits. It is Plaintiff's understanding that courts prefer to resolve disputes on the merits. It is

Plaintiff's understanding that if an FRCP 12(b)(1) motion to dismiss raises fact issues about the

merits of the claim, the court can grant the motion only if there is no genuine issue of material

fact that entitles the movant to prevail as a matter of law (a standard similar to that of summary

judgment). *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir.1983); *Hulsey v. Gunn*, 905 F.Supp.

1067m 1070 (N.D. Ga.1995).

**Point:** It is Plaintiff's understanding that Defendant, by raising lack of jurisdiction, is pleading

that the Court lacks the authority to grant Defendant's summary judgment motion. Plaintiff

agrees.

Plaintiff notes that Defendant raised issues of material fact in his motion that are in

dispute. Ref. *Plaintiff's Response in Opposition to Defendant's Statement of Material Facts Not*

*in Dispute*.

22

**Point:** Plaintiff asserts that genuine issues of material fact remain in dispute such that summary judgment cannot be granted. Plaintiff asserts that, as such, Defendant's motion under FRCP 12(b)(1) lacks merit.

### Standard for Dismissal Under Rule 12(b)(6) Failure to State a Claim Upon Which Relief Can Be Granted

FRCP 8(a)(2) requires that a Plaintiff's Complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief...." Accordingly, the Plaintiff does not have to "set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). In other words, the Plaintiff need only "give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Id.*

**Point:** Plaintiff asserts she sufficiently satisfied this condition at the time of filing of the civil complaint.

When considering a motion to dismiss a Complaint for failure to state a claim under FRCP 12(b)(6), the Court must "accept as true the facts alleged in the Complaint and all reasonable inferences that can be drawn from them. Dismissal under Rule 12(b)(6) ... is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir.1990) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir.1988)); see *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 2490250 (1989). The Court will only dismiss the complaint if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the

23

allegations.'" *H.J. Inc.*, 492 U.S. at 249-50 (quoting *Hishon v. King & Spalding* 467 U.S. 69, 73 (1984)).

**Point:** Plaintiff asserts that genuine issues of material fact remain in dispute and asserts that Plaintiff has provided sufficient evidence consistent with the allegations to get her claims before a jury. Plaintiff asserts that, as such, Defendant's motion under FRCP 12(b)(6) lacks merit.

**Defendant's Claim, in the Alternative, for Summary Judgment under FRCP 56**

It is the Plaintiff's understanding that the purpose of summary judgment under FRCP 56 is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). To accomplish this, summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 568,9360 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986). The Supreme Court identified the burden of proof for summary judgment in the following frequently cited trilogy of cases: *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 (1986). The burden of proof in a summary judgment proceeding is on the same party who would bear the burden of proof at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. After adequate

24

time for discovery has passed,[11] the district court may grant summary judgment against a party

who cannot establish the existence of an element essential to that party's case and that the party

will bear the burden of proving at trial. *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552; see

Fed.R.Civ.P. 56(c). The district court must resolve all reasonable doubts about the facts in favor

of the non-movant. *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir.1996); *Pocchia v. NYNEX Corp.*,

81 F.3d 275, 277 (2d Cir.1996); *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.1995). Therefore, the

movant must prove there is no genuine issue about any material fact and that it is entitled to

judgment as a matter of law. Fed.R.Civ.P. 56(c); Irby, 44 F.3d at 953; *Campbell v. Hewitt,*

*Coleman & Assocs.*, 21 F.3d 52, 55 (4th Cir.1994).

**Point:** Plaintiff asserts that summary judgment is inappropriate because genuine issues of

material fact are clearly in dispute and Defendant has exhibited indisputable examples of pretext

and has committed perjury before this court in his motion to dismiss.[12]

Defendant cannot simply deny Plaintiff's claims without supporting evidence,

particularly in light of Plaintiff's claims of pretext and perjury by Defendant based on

indisputable direct evidence placed on the record by Plaintiff, and then claim there is no genuine

issue of material fact in dispute. It is Plaintiff's understanding that a "genuine" issue is one that

---

[11] Plaintiff notes that Defendant was nonresponsive to discovery in related case 04cv0589 (JGP) and that the court denied Plaintiff's motion to compel, Defendant was nonresponsive to discovery in related case 05cv1194 (JGP) denying Plaintiff material evidence under the control of Defendant that are also material to the instant case. Plaintiff notes that Defendant filed a pre-discovery motion to dismiss in the instant case. Absent discovery in the instant case, Plaintiff is denied any opportunity to have access to relevant material evidence under control of Defendant. It is clear that discovery must take place before summary judgment can be granted in the instant case.
[12] Plaintiff notes that Defendant did not file an answer to Plaintiff's complaint, instead filing a pre-discovery motion to dismiss.

can be resolved only by a trier of fact because it may be resolved in favor of either party.

*Anderson*, 477 U.S. at 248-49, 106 S.Ct. at 2510. A genuine issue exists when a reasonable jury

could resolve the disputed fact in favor of, or in the manner described by, the non-movant.

*Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir.1996); *Meadowbriar Home for Children, Inc. v.*

*Gunn*, 81 F.3d 521, 533 (5th Cir.1996).

**Point:** Plaintiff asserts that she has presented sufficient evidence to get her claims before a jury.

---

In conclusion, as stated earlier, the Supreme Court of the United States has held that:

> An employment discrimination complaint need not contain specific facts establishing a
>
> prima facie case under the *McDonnell Douglas* framework, but instead must contain only
>
> a short and plain statement of the claim showing that the pleader is entitled to relief,
>
> Fed. Rule Civ. Proc. 8(a)(2). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506

In addition, the Supreme Court has held that:

> Rule 50 requires a court to render judgment as a matter of law when a party has been fully
>
> heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to
>
> find for that party on that issue. The standard for judgment as a matter of law under Rule 50
>
> mirrors the standard for summary judgment under Rule 56. Thus, the court must review all
>
> of the evidence in the record, cf., *e.g., Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,*
>
> 475 U.S. 574, 587, drawing all reasonable inferences in favor of the nonmoving party, but
>
> making no credibility determinations or weighing any evidence, *e.g., Lytle v. Household*

26

*Mfg., Inc.,* 494 U.S. 545, 554-555. The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133.

**Point:** It is clear that in deciding *Reeves* the Supreme Court clarified several issues that are relevant to Plaintiff's case, and that this decision made it easier for employees to prove that they were victims of on-the-job discrimination, or at least to get their claims before a jury. Employees can win such lawsuits without direct evidence of an employer's illegal intent, the court ruled unanimously.

In addition, as referred to earlier, in *Reeves* it is stated, *Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.*

**Point:** Plaintiff asserts that Defendant's pattern and practice of making false statements, using pretext, and committing perjury in court in all four of the civil cases Plaintiff has been forced to file to date is sufficient reason for a trier of fact to conclude that the employer unlawfully discriminated.

27

Plaintiff asserts that she has placed sufficient evidence on the record to deny Defendant summary judgment and to get her claims, i.e., a long-term pattern of discrimination, retaliation, disparate treatment, and a hostile/harassing work environment and conspiracy before a jury.

Plaintiff asserts that, once a reasonable jury has seen and considered all of the evidence, to include that material evidence which is under the control of Defendant and has not been provided, and once a reasonable jury has been able to view and assess the credibility, motives, and intent of officials of the United States government, the jury will find overwhelmingly for Plaintiff on all claims, to include her claims of conspiracy.

Respectfully Submitted,

Maria V. Carmona, *pro se*
8306 Haven Hill Court
Laurel, Maryland 20723
(301) 490-4328

28

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Maria V. Carmona
8306 Haven Hill Court
Laurel, Maryland 20723
301-490-4328

V.                                              CIVIL ACTION NO. 05cv2428 (JGP)

John W. Snow
Secretary of the Treasury
1500 Pennsylvania Avenue, N.W.
Washington, DC  20220

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES
OF MATERIAL FACT THAT ARE IN DISPUTE**

Plaintiff respectfully submits this *Plaintiff's Statement of Genuine Issues of Material Fact
That Are In Dispute*, noting that these are only some of the many facts that are material and
relevant to Plaintiff's case.

It is Plaintiff's understanding that movant, i.e., Defendant, must prove there is <u>no</u> genuine
issue about <u>any</u> material fact and that he is entitled to judgment as a matter of law.  It is
Plaintiff's understanding that the district court must resolve all reasonable doubts about the facts
in favor of the non-movant, i.e., Plaintiff.  It is also Plaintiff's understanding that she must set
forth specific facts showing there is a genuine issue of material fact for trial in order to overcome
Defendant's motion for summary judgment.

Plaintiff submits that she has proven that there are, in fact, many genuine issues of material fact in dispute such that Defendant's *Motion to Dismiss or for Summary Judgment* [#6] should be denied.

In addition, Plaintiff notes that Defendant has not filed an answer to this complaint. There will be additional genuine issues of material fact that are in dispute if Defendant denies any statements in Plaintiff's complaint.

In presenting material facts that are in dispute, Plaintiff begins by listing some of the false statements by Defendant that have been identified by Plaintiff as of the date of filing, based on available information.

Given that Defendant presents these false statements as facts in this case, it is clear that there are genuine issues of material fact for trial. Plaintiff claims that Defendant has knowingly misled the Court repeatedly regarding material and relevant facts in his explanations for actions taken against Plaintiff. Plaintiff also claims pretext by Defendant, as demonstrated in part by his presentation before the Court of the false declarations discussed below.

In two *Unsworn Declarations Under Penalty of Perjury*[1] submitted to the Court in Defendant's March 17, 2006, *Motion to Dismiss or for Summary Judgment* [#6] officials of the Department of the Treasury Office of Inspector General committed perjury, knowingly making false statements material to Plaintiff's case, as follows.

---

[1] Each *Declaration* states that it is made in accordance with the provisions of 28 U.S.C. 1746, and ends with the following statement: *I declare under penalty of perjury that the foregoing is true and correct.*

Plaintiff disputes each statement that is shown below, and cites the lines that refute them

in the *Plaintiff Statement Regarding Defendant's False Statements and Perjury Before the Court*,

filed separately on June 19, 2006, and included here as P.Ex. 1.[2]

## Section 1. Declaration of AIGA Marla A. Freedman[3]

1. *I have been her[4] third line supervisor since March 2001 when I came to this position.*

   *Prior to that I was her second line supervisor from April 1999 until March 2001.*

   [#6, D.Ex. 4, Pg. 1]

**Plaintiff disputes.** P.Ex. 1, Lines 51-148, with corresponding sub-exhibits P.Ex. A-H.

2. *I was not aware of her age until I responded to an EEO complaint in July 2002. ...*

   *I am not sure when I first became aware of the Complainant's national origin.*

   [#6, D.Ex. 4, Pg. 1]

**Plaintiff disputes.** P.Ex. 1, Lines 152-200.

3. *...the audit operation position is a little different from auditing.  Some of the other*

   *candidates had more focused operational experience.*  [#6, D.Ex. 4, Pg. 2]

**Plaintiff disputes.** P.Ex. 1, Lines 205-224, with corresponding sub-exhibits P.Ex. I-J.

4. *We decided to cancel the announcement at that time.* [#6, D.Ex. 4, Pg. 2]

**Plaintiff disputes.** P.Ex. 1, Lines 226-236, with corresponding sub-exhibits P.Ex. Q.

---

[2] P.Ex. refers to Plaintiff Exhibit.  The *Plaintiff Statement* at P.Ex. 1 contains 18 sub-exhibits, labeled A through R, which provide indisputable supporting evidence.
[3] In this section are statements from Assistant Inspector General for Audit (AIGA) Marla A. Freedman's *Unsworn Declaration Under Penalty of Perjury* purportedly executed on April 17, 2003. [#6, D.Ex. 4]
[4] Her, she, and complainant are references to Plaintiff.

5. *One of my questions was "If you were selected for the position and given a blank check what would be the first three things you would do with it?" ...Then* [Plaintiff] *said she would provide me with a staffing plan to let me know how much additional staff she need (sic) to get the job done. At that time, we were working on a tight budget and when she started talking about additional staffing, it stuck with me and bothered me. The goal was to get the work done within the constraints of the staff that we had, not to get more staffing.* [#6, D.Ex. 4, Pg. 3]

**Plaintiff disputes.** P.Ex. 1, Lines 241-281, with corresponding sub-exhibits P.Ex. K,O,R.

6. *I am not aware of the Complainant's application being mishandled.* [#6, D.Ex. 4, Pg. 3]

**Plaintiff disputes.** P.Ex. 1, Lines 286-306, with corresponding sub-exhibit P.Ex. I.

7. *We are currently staffing the position by rotating grade 14's into it on a monthly basis. ... I asked ...(Plaintiff) to rotate into it and she did not want to do that.* [#6, D.Ex. 4, Pg. 3]

**Plaintiff disputes.** P.Ex. 1, Lines 310-314, with corresponding sub-exhibit P.Ex. L.

8. *We interviewed for the position of Director of Evaluations in June, July and August 2002. At the time of selection, we knew nothing about a possible divestiture.* [#6, D.Ex. 4, Pg. 4]

**Plaintiff disputes.** P.Ex. 1, Lines 319-352, with corresponding sub-exhibits P.Ex. K, M-O.

4

**Section 2.  Declaration of Human Resources Specialist Kimberly T. Mingo[5]**

9.  *Prior to our use of Quick Hire, we posted vacancy announcements.... But with Quick Hire we were no longer able to forward a copy to the public folders or print copies to the carousel.* [#6, D.Ex. 2, Pg. 2]

**Plaintiff disputes.**  P.Ex. 1, Lines 381-395, with corresponding sub-exhibit P.Ex. I.

10. *The most common place for employees to find vacancy announcements is through the OPM USAJOBS website.  That did not change with the new system.* [#6, D.Ex. 2, Pg. 3]

**Plaintiff disputes.**  P.Ex. 1, Lines 400-415, with corresponding sub-exhibit P.Ex. I.

11. *She apparently had problems in printing.... ...we printed out a copy for her. I believe she then complained about some unusual characters that had printed in her resume.* [#6, D.Ex. 2, Pg. 4]

**Plaintiff disputes.**  P.Ex. 1, Lines 424-436, with corresponding sub-exhibit P.Ex. I.

12. *With Quick Hire, we really don't have KSA's.* [#6, D.Ex. 2, Pg. 4]

**Plaintiff disputes.**  P.Ex. 1, Lines 445-459, with corresponding sub-exhibit P.Ex. I.

---

[5] In this section are statements from Human Resources Specialist Kimberly T. Mingo's *Unsworn Declaration Under Penalty of Perjury* purportedly executed on April 9, 2003. [#6, D.Ex. 2]

13. *Under Quick Hire, instead of narrative questions, the information is obtained by a group of questions answered by "yes", "no", a multiple choice or a limited summarization of the information. It eliminates the applicant's ability to give a long statement.* [#6, D.Ex. 2, Pg. 4]

**Plaintiff disputes.** P.Ex. 1, Lines 461-474, with corresponding sub-exhibit P.Ex. I.

14. *The next time the job is posted, we will use the same questions.* [#6, D.Ex. 2, Pgs. 4-5]

**Plaintiff disputes.** P.Ex. 1, Lines 476-517, with corresponding sub-exhibits P.Ex. I, P.

15. *Her application was never mishandled. ...The difference in the whole process and the fact that there were odd characters printed out in her application are the only things I can recall. However, all applicants went through the new process and many had odd characters printed out on their application.* [#6, D.Ex. 2, Pg. 5]

**Plaintiff disputes.** P.Ex. 1, Lines 521-531, with corresponding sub-exhibit P.Ex. I.

16. *I don't recall exactly when it was cancelled. ... The promotion certificate was good through the end of November 2002. I believe it was actually cancelled sometime in December 2002 but I'm not sure.* [#6, D.Ex. 2, Pg. 5]

**Plaintiff disputes.** P.Ex. 1, Lines 534-539, with corresponding sub-exhibit P.Ex. Q.

17. *It (the vacancy announcement) was cancelled by the Inspector General, Jeffery (sic) Rush.* [#6, D.Ex. 2, Pg. 5]

**Plaintiff disputes.** P.Ex. 1, Lines 541-544.

6

18. *Word had come in that we were going through a divestiture to Homeland Security.*

   *By the time word came down, we actually lost 191 employees out of approximately 284.*

   [#6, D.Ex. 2, Pg. 5]

**Plaintiff disputes.** P.Ex. 1, Lines 546-553, with corresponding sub-exhibit P.Ex. N.

---

**Section 3. Defendant's Points and Authorities**

   Defendant's *Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or for Summary Judgment* [#6], including its exhibits, also raises genuine issues of material fact that remain in dispute such that they can only be resolved by a jury. Plaintiff disputes each statement that is shown below, and cites the page on which each is refuted in *Plaintiff's Response to Defendant's Memorandum of Points and Authorities* (Resp-DMPA).

19. Defendant states that *The position of Director of Audit Operations was advertised on October 13, 2002.*

**Plaintiff disputes.** Resp-DMPA Pg. 5.

20. Defendant states that *The position was one of the first announced through the Department of (sic) Treasury's new system called Quick Hire (sic).*[6]

**Plaintiff disputes.** Resp-DMPA Pg. 5.

---

[6] Plaintiff will use the name QuickHire, as shown in documents printed from this system. [#6, D.Ex. 3]

21. Defendant states that *Prior to Treasury's use of Quick Hire, the agency posted vacancy announcements through OPM...* and *That did not change with the Quick Hire system.*

**Plaintiff disputes.** Resp-DMPA Pg. 5.

22. Defendant states that *With Quick Hire, applicants are scored based on their responses to questions...*, and that *Given that applications are rated mechanically, Quick Hire eliminates rating panels and is faster from a Human Resources perspective.*

**Plaintiff disputes.** Resp-DMPA Pg. 6.

23. *The personnel office was aware that the Quick Hire process printed unusual characters.... Plaintiff and other applicants who had a similar experience with the printing of their applications and who had called the personnel office with their concerns were assured that this electronic glitch would have no impact on their application.*

**Plaintiff disputes.** Resp-DMPA Pg. 7.

24. Defendant states that Marla A. Freedman, Assistant Inspector General for Audits, was the selecting official for the Supervisory Auditor position.

**Plaintiff disputes.** Resp-DMPA Pg. 9.

25. Defendant states with reference to Marla A. Freedman that *She and Bob Taylor, a deputy in her office, conducted interviews together using a standard list of questions.*

**Plaintiff disputes.** Resp-DMPA Pg. 9, 10.

26. Defendant states that *Plaintiff was not a top choice based on her interview.*

**Plaintiff disputes.** Resp-DMPA Pgs. 9, 10.

8

27. Defendant states that *Ms. Freedman recommended another individual for the position.*

**Plaintiff disputes.** Resp-DMPA Pg. 10.

28. Defendant states that *...Inspector General senior officials, including Jeffrey Rush, the Inspector General, Ms. Freedman, and Dennis Schindel, Ms. Freedman's immediate supervisor, had a sense that their office would likely be impacted by a newly created Office of Inspector General at the Department of Homeland Security. ... Accordingly, Mr. Rush, Ms. Freedman and Mr. Schindel discussed whether a GS-15 to carry out operations would be needed if the new department were established. They eventually decided to cancel the vacancy. They decided that, once they had a better sense of what would happen, they could re-announce the position if appropriate.*

**Plaintiff disputes.** Resp-DMPA Pgs. 10, 11.

29. Defendant states that *Ms. Freedman notes that now that officials know the ramifications of the creation of the new cabinet-level department and the divestiture of certain office functions due to the creation of DHS, the decision to cancel the vacancy was, in retrospect, appropriate and reasonable.*

**Plaintiff disputes.** Resp-DMPA Pg. 11.

30. Defendant states that *Her office has gone from 165 positions to 52 positions.*

**Plaintiff disputes.** Resp-DMPA Pg. 11.

9

31. Defendant states that *As of April 13, 2003, the date on which Ms. Freedman provided her declaration ....*

**Plaintiff disputes.** Resp-DMPA Pg. 11.

32. Defendant states that *Plaintiff filed an administrative complaint of discrimination on December 12, 2002.*

**Plaintiff disputes.** Resp-DMPA Pg. 12.

Defendant claims that Plaintiff failed to cooperate in the administrative process. Plaintiff denies and presents the following.

33. Treasury officials attempted to initiate and coerce Plaintiff into engaging in an investigation in violation of Plaintiff's rights and the regulations.

34. The declaration by the EEO investigator and all references to it made by Defendant are immaterial to Plaintiff's case, with the exception that it further directly evidences the overtly retaliatory and hostile work environment that Defendant has forced Plaintiff to work under since first initiating the administrative EEO process in 1995.

———————————

In addition, Plaintiff notes that there are some significant differences between *Defendant's Memorandum of Points and Authorities* and *Defendant's Statement of Material Facts Not in Dispute.* Similarly, and as discussed in part above, some items in *Defendant's Statement of Material Facts Not in Dispute* are not supported by the cited sources. Plaintiff will not take the

10

time to explore these inconsistencies here, as these can be clearly identified by comparing

Defendant's documents. Plaintiff questions Defendant's purpose and intent in these

misrepresentations within his own submittals to the Court, and claims that all of these represent

genuine issues of material fact.

Also, other genuine issues of material fact are raised by the lack of information provided by

Defendant, including the following.

35. Exactly what happened with Plaintiff's application for the position of Director of Audit

Operations, and why, are material facts in the case and are in dispute. Clearly, the level

of omission or misrepresentation of significant portions of Plaintiff's application was an

issue unique to Plaintiff that has not been explained by Defendant.

36. Whether the position was ever officially cancelled, and if so, when, are material facts that

are in dispute.

---

As mentioned above, this list of material facts that are in dispute is not all-inclusive.

In addition, Plaintiff asserts that full and complete responses to all of Plaintiff's discovery

requests may uncover additional genuine issues of material fact.

In conclusion, there are genuine issues of material fact such that the Court should not grant

Defendant's *Motion.* More of the documentary evidence necessary to resolve these and other

genuine issues of material fact is in the sole control of Defendant and would be uncovered during

11

discovery.  In the absence of documentary evidence, these and other genuine issues of material fact would be further developed during a jury trial, in large part through testimony from Defendant's current or former employees and other officials of the United States government.

Respectfully Submitted,

Maria V. Carmona, *pro se*
8306 Haven Hill Court
Laurel, Maryland  20723
(301) 490-4328

12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


MARIA V. CARMONA,

      Plaintiff,

      v.                        CIVIL ACTION NO. 05cv2428 (JGP)

JOHN W. SNOW, Secretary of the Treasury,

      Defendant.

### ORDER

Upon consideration of Defendant's Motion to Dismiss and for Summary Judgment, the grounds stated therefore, any opposition thereto, and the entire record herein, and for good cause shown, it is hereby

ORDERED that Defendant's [#6] Motion to Dismiss or for Summary Judgment shall be DENIED in its entirety.

It is further ORDERED that Defendant provide full and complete responses to all of Plaintiff's requests during discovery, which shall commence on _____ and end on _____; and that Defendant produce any and all witnesses that Plaintiff wishes to call at trial.

It is further ORDERED that a trial date is set for _____.


Date: _____                **JOHN GARRETT PENN**
                                          United States District Judge