396    **Question.** The Complainant alleges that there was no advance notification of any kind that the

397    OIG was revising the manner in which it announced positions, accepted applications, and

398    evaluated applications to determine the best qualified. Please comment. [*id.*, Pg. 3]

399    Mingo's Response (partial):

400    ***The most common place for employees to find vacancy announcements is through the***

401    ***OPM USAJOBS website. That did not change with the new system.*** [#6, D.Ex. 2, Pg. 3]

402    Plaintiff believes this was a false statement at the time it was made. Plaintiff questions the

403    veracity of this statement as it would apply to Treasury OIG employees at the time that Vacancy

404    Announcement OA-2002-0010 was posted, and requests that Defendant be required to provide

405    supporting documentary evidence in support of this material fact that is in dispute. Mingo

406    makes it very clear in her *Declaration* that up until that time, the Treasury OIG used a variety

407    of methods to ensure that its employees were aware of vacancy announcements, including

408    posting to an internal listing and putting copies on a carousel where they would be readily

409    available. [*id.*] and (P.Ex. I, Pg. 5) In addition, a *Vacancy Announcements* Listing was included

410    as an attachment to an e-mail message sent to all OIG staff on a weekly basis by Human

411    Resources staff when there were new announcements. (*id.*) It was also customary to mention in

412    staff meetings that vacancies had been announced, and management often advised eligible

413    employees verbally or through e-mail. (*id.*) There is no evidence whatsoever for Mingo's

414    statement that the OPM USAJOBS web site was the most common place for employees to find

415    vacancy announcements at that time.

416     **Question.**  The Complainant alleges that the major differences in the announcement process

417     were as follows.  Please comment on each item.

418          (5) Applicants were not allowed to print a complete copy of their application prior to

419          submittal thus affording her[32] the opportunity to check the document.  [#6, D.Ex. 2, Pgs. 3-4]

420          Mingo's Response (partial):

421          ***She apparently had problems in printing…. …we printed out a copy for her.***

422          ***I believe she then complained about some unusual characters that had printed in***

423          ***her resume.*** [*id.,* Pg. 4]

424          This response in Mingo's *Declaration* is purposefully deceptive by what it fails to point out,

425     i.e., that she knew, based on a September 17, 2002, e-mail message from Plaintiff to Mingo

426     (P.Ex. I, Pg. A-2) that Plaintiff felt there was a serious problem in that the documents that Mingo

427     provided did not accurately reflect what Plaintiff submitted online.  In this message, Plaintiff

428     expressed concern that some of the information that she included in the responses to the

429     questions was not reflected in the printed version, and that there were unusual characters in the

430     responses to the questions.  As explained in the message, the problems were extensive.  For

431     example, one question (#5.2) contained only one paragraph of a detailed response that Plaintiff

432     had entered.

433          Also, Plaintiff raised the issue of unusual characters printing, but the example she cited was

434     from Question 13.2 in the *Applicant Assessment* section of the QuickHire application, not the

---

[32] Plaintiff believes that *her* and *she* in this section refer to Plaintiff because of the initial reference to *the Complainant* in the question.

435    résumé. (P.Ex. I, Pg. A-2)   The problems were with Plaintiff's entire application, not just with

436    the résumé as Mingo claimed.

437    **Question.** The Complainant alleges that the major differences in the announcement process

438    were as follows.  Please comment on each item.

439    (6) The Knowledge, Skills, and Abilities (KSAs) in the announcement and in the online

440    application did not directly correspond and some aspects of the KSA's were not addressed at

441    all in the online questionnaire.  The complainant alleges the requirements for the position were

442    presented so as to limit competition and may have been structured for a specific individual.

443    [#6, D.Ex. 2, Pg. 4]

444    Mingo's Response (partial):

445    ***With Quick Hire, we really don't have KSA's.*** [*id.*]

446    This is a false statement.  Vacancy Announcement OA-2002-0010 at USAJOBS Control

447    No. TS3169 FM clearly states that the five KSAs listed below are *necessary for this job*.

448    (P.Ex. I, Pgs. 7 and F-4)

449    KSA 1.  Applied knowledge of professional auditing standards applicable to
450            Federal financial and program audits.

451    KSA 2.  Skill in establishing and maintaining effective working relationships with
452            high-level officials, other Federal agencies, Congressional staff, and professional
453            organizations.

454    KSA 3.  Ability to direct and supervise a diverse staff of professionals on multiple
455            tasks.

456    KSA 4.  Ability to prepare and deliver oral briefings to the Inspector General (IG)
457            and top Department officials.

458    KSA 5.  Ability to prepare written communications to develop clear, concise
459            reports; oral and visual presentations; and completed staff work.

460    Mingo's Response (partial, continued):

461    ***Under Quick Hire, instead of narrative questions, the information is obtained by a group***

462    ***of questions answered by "yes", "no", a multiple choice or a limited summarization of***

463    ***the information. It eliminates the applicant's ability to give a long statement.***

464    [#6, D.Ex. 2, Pg. 4]

465    While there were limitations as to the number of characters that could be included in the

466    résumé and in each of the narrative responses describing experience that applicants were

467    required to provide, a stricture that did not exist for prior vacancy announcements within the

468    OIG, a response as long as 3-1/2 pages was permitted, which indicates that the second sentence

469    in Mingo's response above is not true. (P.Ex. I, Pgs. 6 and I-10 to I-14).

470    Also, it is clear that under QuickHire information is <u>not</u> obtained by limited summarization.

471    Given the manner in which Plaintiff's application was misrepresented, it is inconceivable that

472    Plaintiff would have received a perfect score [#6, D.Ex. 2, Pg. 5] if QuickHire performed an

473    analysis of the text in the narrative sections and assigned points for the information contained

474    therein given the omitted language.

475    Mingo's Response (partial, continued):

476    ***The next time the job is posted, we will use the same questions.*** [#6, D.Ex. 2, Pgs. 4-5]

477    This is a false statement. To Plaintiff's knowledge, the next time the job was posted was

478    when the position of Director of Audit Operations, Supervisory Auditor, was re-announced under

479 Vacancy Announcement OA-2005-007, GS-0511B-15, on November 30, 2004.[33] The questions
480 used were not the same.

481     Below are key differences noted for the questions[34] for which a narrative response describing
482 experience was required. These are just a few examples of the differences between the two
483 vacancy announcements that illustrate the falsity of Mingo's statement. At the request of the
484 Court, Plaintiff can submit a more-detailed analysis.

485     As represented by Defendant,[35] Vacancy Announcement OA-2002-0010 required a
486 narrative response describing experience for the following four statements in the *Applicant*
487 *Assessment* (AA) section. (P.Ex. I)

488       AA 4.  Develop and implement policies for audit quality assurance and conduct
          internal reviews and external peer reviews of audit organization compliance
          with professional standards. (*id.,* Pg. I-4)

489       AA 5.  Incorporate input from a variety of sources (Departmental Management,
          Congressional staffers, current events) into the development of strategic and
          annual plans for the allocation and expenditure of Audit resources. (*id.,* Pg. I-7)

490       AA 10. Conduct or oversee audits in accordance with the Government Auditing
          Standards published by the U.S. General Accounting Office. (*id.,* Pg. I-8)

491       AA 13. Act as liaison between audit organization and Congress. (*id.,* Pg. I-10)

---

[33] In the interest of full disclosure, Plaintiff notes that this vacancy was first posted as OA-2005-005 on 11/26/2004; then as OA-2005-007 on 11/30/2004. Plaintiff refers only to OA-2005-007 when she discusses the re-announced position. Also, to Plaintiff's knowledge this was the first time that the Treasury OIG posted a vacancy announcement for the position of Director of Audit Operations after the posting of OA-2002-0010. If Defendant alleges that there was an interim posting, Plaintiff requests that Defendant provide documentary evidence of when this was done and what questions were asked of applicants.

[34] The term *question* is used to refer to numbered items for which responses were required, whether or not stated in an interrogatory manner.

[35] These are taken from a print-out from the QuickHire program provided to Plaintiff by Mingo.

492    As represented by Defendant,[36] Vacancy Announcement OA-2005-007 required a narrative

493    response describing experience for the following three statements. (P.Ex. P)

494    4. Please briefly describe at least two examples of audit projects you have led, and your
495       specific leadership responsibilities with respect to these projects. (*id.,* Pg. P-2)

496    9. Please briefly describe your involvement in one or more of the above activities.
497       (*id.,* Pg. P-7)
498       The activities listed in #8 were: (*id.,* Pg. P-6,-7)
499       • Served as a spokesperson for my organization on program or project issues
500       • Served on panels, committees, or task forces on technical, programmatic,
501         and/or professional issues with impact on the entire organization
502       • Provided guidance to other agency representatives or private industry on
503         technical, programmatic, or professional issues
504       • Facilitated interagency workshops or partnering sessions
505       • Built and fostered relationships with external customers or stakeholders that
506         affect the scope of organizational programs or projects
507       • Presented briefings and formal presentations to senor management of an
508         audited entity or other external organizations on policy, program, or project
509         issues

510    17. Please briefly describe your experience related to organization-wide planning and
511        operations. (*id.,* Pg. P-10)

512    It is clear from a comparison of these two lists that, contrary to Mingo's *Declaration,* the

513    same questions were ***not*** used.

514    This provides direct evidence in support of Plaintiff's position that Defendant manipulated

515    the process to limit competition and to achieve a desired discriminatory and retaliatory result,

516    in clear violation of, in Plaintiff's case, the laws, rules, and regulations governing equal

517    employment opportunity and the Merit System Principles.

---

[36] These are taken from an e-mail message from careerconnectorhelp@do.treas.gov received by Plaintiff following her application under Vacancy Announcement OA-2005-007.  (P.Ex. P)

518    **Question.** The Complainant alleges her application was mishandled. [37] Please comment. ...

519    [#6, D.Ex. 2, Pg. 5]

520    Mingo's Response (partial):

521    ***Her application was never mishandled. ...The difference in the whole process and the fact***

522    ***that there were odd characters printed out in her application are the only things I can***

523    ***recall.  However, all applicants went through the new process and many had odd***

524    ***characters printed out on their application.*** [*id.*]

525    As explained more fully above, Mingo's *Declaration* is purposefully deceptive in the manner

526    in which it mischaracterizes the misrepresentations that occurred in the printed version of

527    Plaintiff's application.  Mingo knew of these problems (P.Ex. I, Pg. A-2), which were not just

528    about the *odd characters* that Mingo claims many had on their applications.  It is clear that the

529    problems with Plaintiff's application were more extensive, as explained in Plaintiff's e-mail

530    message to Mingo.  (*id.*)  It is also clear that Plaintiff's was the only application that had these

531    serious problems of deletions of major portions of text indicating purposeful intent.

532    **Question.** Who cancelled vacancy announcement OA-2002-0010, when was it cancelled and

533    Why?  [#6, D.Ex. 2, Pg. 5]

534    Mingo's Response (partial, continued): ***I don't recall exactly when it was cancelled. ...***

535    ***The promotion certificate was good through the end of November 2002.  I believe it was***

536    ***actually cancelled sometime in December 2002 but I'm not sure.*** [*id.*]

---

[37] See Footnote 25.

537     Plaintiff asserts that this is a false statement.  As the HR Specialist who handled the

538     announcement, Mingo would have direct knowledge of the official date of its cancellation.  It is

539     noted that Plaintiff attempted to obtain the official date, to no avail.  (P.Ex. Q)

540     Mingo's Response (partial, continued):

541     ***It was cancelled by the Inspector General, Jeffery (sic) Rush.***  [#6, D.Ex. 2, Pg. 5]

542     This statement contradicts a statement in AIGA Freedman's *Declaration* that she, Schindel,

543     and Rush jointly decided to cancel the announcement. [#6, D.Ex. 4, Pg. 2]  Thus, either Mingo's

544     statement is false, or Freedman's statement is false, or both.

545     Mingo's Response (partial, continued):

546     ***Word had come in that we were going through a divestiture to Homeland Security.***

547     ***By the time word came down, we actually lost 191 employees out of approximately 284.***

548     [#6, D.Ex. 2, Pg. 5]

549     Either Mingo's statement is false, or Deputy Inspector General Dennis S. Schindel made

550     false statements before Congress[38] when he gave the following testimony, or both.

551     *Our office was directed to divest 155 positions to the DHS OIG and 40 positions to the*
552     *Justice OIG.  This total divestiture of 195 out of 282 FTE represents nearly 70 percent of our*
553     *staffing.*  (P.Ex. N)

---

[38] The testimony was before the House Committee on Appropriations, Subcommittee on the Departments of Transportation and Treasury, and Independent Agencies on March 12, 2003.

554     Plaintiff wishes to question Freedman, Mingo, and other officials of the United States

555     Government under oath before a jury for additional evidence regarding their compliance with the

556     laws, rules, and regulations governing, and their commitment to, equal employment opportunity.

557     This *Plaintiff Statement* provides clear evidence of false statements material to Plaintiff's

558     case in AIGA Marla A. Freedman's *Unsworn Declaration Under Penalty of Perjury* purportedly

559     executed on April 17, 2003, [#6, D.Ex. 4] and in HR Specialist Kimberly T. Mingo's *Unsworn*

560     *Declaration Under Penalty of Perjury* purportedly executed on April 9, 2003 [#6, D.Ex. 2].

561     Plaintiff asserts that these material false statements by Freedman and Mingo were made

562     willfully, knowingly, and with the intent to misrepresent to and deceive the Court.  The fact that

563     Freedman and Mingo have made these false statements indisputably proves that the reasons

564     given for the adverse actions taken against Plaintiff, including non-selection for promotion, were

565     pretextual; and provides indisputable material evidence in support of Plaintiff's overarching

566     claim of a long-term pattern of discrimination, retaliation, disparate treatment, and

567     a hostile/harassing work environment.  It also provides evidence of conspiracy by officials of the

568     United States government to deny Plaintiff her civil right to equal employment opportunity.

569     Briefly and further in these regards, Plaintiff also wishes to note that Freedman's first line

570     supervisor was and is Dennis Schindel,[39] current Deputy Inspector General, the senior Treasury

571     management official that Plaintiff has identified as the person most responsible for Plaintiff

---

[39] Schindel, like Freedman and many others throughout Plaintiff's over 20-year career with the Treasury OIG, was also very complimentary of Plaintiff's work when he was Plaintiff's first line supervisor for a period in 1991 [04cv0589 (JGP), #16, P.Ex. C-2 (3 pages)].  Schindel, as a senior Treasury management official, has had direct knowledge of Plaintiff's work ethic and high-level of performance since at least 1991, and has been in a position to influence Plaintiff's career since that time.

572    being forced, to date, to file nineteen formal administrative EEO complaints and four civil

573    actions against Defendant in pursuit of her civil right to equal employment opportunity.

574    In addition, Freedman, in speaking for Schindel, for Inspector General Jeffrey Rush, and for

575    Deputy AIG Robert (Bob) Taylor [#6, D.Ex. 4, Pg. 2], absent their own personal statements,

576    provides direct evidence of conspiracy by those mentioned.

---

577    In conclusion, Plaintiff respectfully requests that the clear and indisputable pattern and

578    practice of senior management officials of the Department of the Treasury knowingly making

579    material false statements in this case and in related cases 04cv0589 (JGP) and 05cv1194 (JGP)

580    be referred by the Court for criminal prosecution.

581    This *Plaintiff Statement Regarding Defendant's False Statements and Perjury*

582    *Before the Court* comprises this 32-page statement, a 2-page listing of Plaintiff's exhibits,

583    P.Ex. A-R comprising 101 pages, and a certificate of service.  All are attached hereto.

Respectfully Submitted,

Maria V. Carmona, *pro se*
8306 Haven Hill Court
Laurel, Maryland  20723
(301) 490-4328

## PLAINTIFF'S EXHIBITS

A    Notification of Personnel Action for Plaintiff's promotion to a GM-0511-15 Supervisory Auditor position effective 08/29/99 (1 page)

B    Performance Evaluation of Plaintiff by Freedman, 06/20/00 (6 pages)

C    Notification of Personnel Action for Plaintiff's performance award (cash award) effective 07/17/00 (1 page)

D    Documents for Special Act Award for August 1999 to March 2000 time frame (5 pages)

E    E-mail message of April 12, 2000, regarding processing of Special Act Award (1 page)

F    E-mail message of January 28, 2000, from Freedman indicating that Plaintiff would continue to serve as Acting Director *Finance and Debt* (1 page)

G    E-mail messages from Freedman to Plaintiff praising work (5 pages)

H    E-mail messages to/from Freedman, Kassel, Plaintiff regarding compensation for temporary promotion and other matters. Illustrate that Freedman routinely included Plaintiff among the Directors to whom she sent e-mail messages (13 pages)

I    Excerpt from Plaintiff's seventeenth formal administrative EEO complaint filed on December 27, 2002. Pages 1, 5, 6, 7, A-2, A-3, F-1, F-4, I-4 to I-14. (19 pages)

J    Plaintiff's responses to the five KSAs required in Vacancy Announcement OA-2002-0010 (13 pages)

K    E-mail messages from Freedman to OIG-All  (2 pages)
     - Announcing the selection of a Director of Audit Operations, dated February 18, 2005
     - Announcing the selection of a Manager of Audit Operations, dated March 11, 2005

L    E-mail messages regarding Acting Director of Audit Operations (a) Request for Expressions of Interest and (b) Acting Assignment (5 pages)

M    Freedman's calendar for June-August 2002 (3 pages)

N    Excerpt from Congressional testimony by Deputy Inspector General Dennis S. Schindel on March 12, 2003. Pages 1, 2, and 13 (dealing with divestiture). (3 pages)

O    Excerpt from Department of the Treasury, Office of Inspector General, Semiannual Report to the Congress, Oct. 1, 2004 – Mar. 31, 2005 (2 pages)

P      E-mail message from careerconnectorhelp@do.treas.gov dated December 22, 2004, received by Plaintiff on following her application under Vacancy Announcement OA-2005-007 (14 pages)

Q      E-mail messages of Plaintiff's attempts to obtain an official date of cancellation for the position of Director of Audit Operations (3 pages)

R      Excerpts from Treasury OIG Annual Plans for FY 2002 and for FY 2003 (4 pages)

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| CARMONA, MARIA V | | 10/08/52 | 08/29/99 |

| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|
| 703 | PROMOTION NTE  12/25/99 | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| N8M | REG 335.102 EXC-COMP | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |
| | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| SUPVY AUDR<br>08541019    008541 | SUPVY AUDR<br>08775006    008775 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 14 | | 84,570.00 | PA | GM | 0511 | 15 | 00 | 91,410.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 78,400.00 | 6,170.00 | 84,570.00 | .00 | 84,741.00 | 6,669.00 | 91,410.00 | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| TREASURY OFFICE OF THE INSPECTOR GENER<br>OFFICE OF INSPECTOR GENERAL<br>AUDIT DIRECTORATE<br>DAIG FOR PROG AUDITS | TREASURY OFFICE OF THE INSPECTOR GENER<br>OFFICE OF INSPECTOR GENERAL<br>AUDIT DIRECTORATE<br>DAIG FOR PROG AUDITS |

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 | 1 – None     3 – 10-Point/Disability     5 – 10-Point/Other<br>2 – 5-Point     4 – 10-Point/Compensable     6 – 10-Point/Compensable/30% | 1 | 0 – None     2 – Conditional<br>1 – Permanent     3 – Indefinite | | ☐ YES  ☒ NO |

| 27. FEGLI | | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|---|
| G0 | BASIC-1X ADDITIONAL | 9    NOT APPLICABLE | 0 |

| 30. Retirement Plan | | 31. Service Comp. Date (Leave) | 32. Work Schedule | | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|---|
| 1 | CS | 08/30/76 | F | FULL TIME | |

| 34. Position Occupied | | 35. FLSA Category | | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|---|
| 1 | 1 – Competitive Service     3 – SES General<br>2 – Excepted Service     4 – SES Career Reserved | E | E – Exempt<br>N – Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON    DIST OF COLUMBIA    DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

Plaintiff
Exhibit

A

05 CV 2428 (JGP)

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF THE TREASURY | Catherine M. McCoy |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| TR 95 | 4041 | 08/29/99 | PERSONNEL OFFICER |

**TURN OVER FOR IMPORTANT INFORMATION**

# OFFICE OF INSPECTOR GENERAL
## DEPARTMENT OF THE TREASURY
### Performance Management Program

## Performance Evaluation Plan

**Reference:** *OIG Manual 2121*

| | |
|---|---|
| **Name of Employee**<br>Maria Carmona | **Social Security Number** |
| **Position Title**<br>Audit Manager | **Series and Grade**<br>GS-511-14 |
| **Section/Division and Directorate**<br>Office of Audit | **Rating period**<br>June 1, 1999 to ~~May 31,~~ 2000    March 11 |
| **A copy of this performance plan was given to me:**<br><br>_Maria V Carmona_    06-23-99<br>Signature of Employee     Date | <br><br>_signature_     6/23/99<br>Signature of Rating Official     Date |

| Element | Rating Level (✓) | |
|---|---|---|
| | **Acceptable** | **Unacceptable** |
| **#1. Technical/Professional Expertise.** Work products demonstrate a competent understanding and effective application of the professional or technical subject matter, including knowledge of relevant laws, regulations, professional standards, policies, programs, and procedures. Work products are technically correct, contain reliable information, do not require substantial revision for quality improvement and, overall, are acceptable to the recipient. Employee demonstrates knowledge of when and how to use more sophisticated auditing techniques, such as statistical sampling and automated data retrieval/analysis. Employee formulates recommendations that are appropriate to address the problem and are feasible to implement. Interacts with auditees and others in a way that demonstrates competence and professionalism. | ✓ | |
| **#2. Planning and Performing Audit Work.** The employee demonstrates the ability to effectively plan an audit or segments of an audit and is able to design audit steps and tests that achieve the objectives established for that audit. The employee demonstrates the ability to solve problems and overcome obstacles so that audit objectives can be met. Completes audits, segments of audits or specific audit steps in a timely and effective manner. Audit tests are thorough, complete, accurate and well documented. Audit work shows not only the ability to perform tests and gather data but to analyze the results and reach sound conclusions. Coordinates effectively with external or internal parties to avoid duplication of audit efforts or inconsistent reporting of audit results. Keeps supervisor informed of progress and advised of any significant developments which may affect plan. Meets milestones and deadlines in accordance with project needs. | ✓ | |
| **#3. Planning and Performing Staff Work.** Consistently delivers completed staff work on time. Assignments are thorough, complete, accurate. For assignments involving correspondence for higher level signature, the work meets applicable correspondence requirements for format and style, and documents are presented ready for signature. Routine, regularly recurring assignments are anticipated and delivered without the need for specific direction. Special projects, such as briefing documents, data calls, strategic and annual planning documents, are prepared in an acceptable format that demonstrates a good working knowledge of basic computer software. Keeps supervisor informed of progress and advised of any significant developments which may affect plan. Meets milestones and deadlines in accordance with project needs. | ✓ | |
| **#4. Communications.** Written and oral communications are grammatically correct, clear and coherent. They effectively impart necessary information to the intended audience in an appropriate manner. For critical documents such as audit reports, or report segments, they meet all auditing and report writing standards, follow prescribed formats, and present findings in a logical, organized, convincing manner. No more than minor revisions are needed so that the time needed for review and issuance is minimal. Employee effectively conducts interviews and elicits information, especially on sensitive issues. Exit and entrance conferences and other important briefings are conducted in a organized, professional manner and demonstrate an appropriate level of knowledge of the subject matter. | ✓ | |

Plaintiff
Exhibit
B
05 CV 2428 (JGP)

# ADDITIONAL GENERIC PERFORMANCE ELEMENTS
## SUPERVISORY POSITIONS

## 5. Effective Supervision and Management.

Technical guidance to subordinate staff is accurate and is given in a timely manner; performance management is implemented in accordance with applicable guidelines/procedures; performance and conduct issues/problems are handled promptly and effectively. Develops leadership in subordinate employees through coaching, mentoring, rewarding, and guiding employees. Supports and implements management decisions. Encourages employee development. Effectively manages resources (i.e. budget, human, equipment) in order to maximum efficiency of the organization. Effectively communicates organizational goals and objectives to subordinates and facilitates their accomplishment.

## 6. Equal Opportunity and Diversity.

Applies Equal Employment Opportunity/civil rights principles. Promotes diversity, mutual respect, and open communication. Manages and resolves conflicts and disagreements in a positive and constructive manner to minimize negative impact.

## SECTION C - MID-YEAR PROGRESS REVIEW

A mid-year progress review was conducted and discussed with the employee. The employee's performance as of this date:

☐ Acceptable ☐ Unacceptable

| Signature of Rating Official | Date | Signature of Employee | Date |
|---|---|---|---|

## SECTION D - RATING

TYPE OF RATING  See attached Statement of Accomplishm

| ☒ Annual Rating of Record | ☐ Special Rating of Record (Within-Grade Increase) | ☒ Summary Rating (Position Changes - Employee or Rater) |
|---|---|---|

| ☒ ACCEPTABLE | Achievement level for all elements are designated as Acceptable. |
|---|---|
| ☐ UNACCEPTABLE | Achievement level for any element is designated as Unacceptable |

| Signature and Title of Rating Official   DA16A | Date 6/28/00 |
|---|---|

## SECTION E - HIGHER LEVEL APPROVAL
### (NOTE: Required only for rating of Unacceptable)

1) ___ ___ Concur with recommended rating.

2) _____ Do not concur with rating. Approve rating of Acceptable.
Basis for Performance Rating Change:

| Signature and Title of Approving Official (Approving official will ensure that the employee receives a copy of this evaluation.) | Date |
|---|---|

## SECTION F - EMPLOYEE SIGNATURE

| A copy of this performance evaluation was given to me. ➡ | Signature of Employee: Maria V Carmona | Date 06-20-00 |
|---|---|---|

OIG Form 2121.1
November 1, 1998

# STATEMENT OF SIGNIFICANT ACCOMPLISHMENTS
## Maria V. Carmona
### Acting Director, *Finance and Debt*
### August 29, 1999, through March 11, 2000

This Statement of Significant Accomplishments covers the period during which I served as the Acting Director, *Finance and Debt*, i.e., from August 29, 1999, through March 11, 2000. This period included a temporary promotion to the Grade 15, in effect from August 29 through December 25, 1999. While I was serving as Acting Director, the office was staffed with two Grade 14 Audit Managers, four to eight Auditors, primarily at the Grade 13, and one Grade 8 Office Manager.

## Office Productivity

I feel that *Finance and Debt* was very productive under my leadership. The office issued seven reports in final, with an eighth final report pending review by the DAIG/AIG. The office also completed an audit to the point of forwarding a draft report for review, addressed a bureau request regarding potential fraud by a contractor, and initiated two new audits. In addition, the office responded to numerous OIG Data Calls and other inquiries, always within the requested time frames. I believe that this level of productivity is commendable, especially considering the fact that a number of staff members were on detail to other directorates for extended periods of time.

During my tenure as Acting Director, the office was responsible for several high-visibility and sensitive audits that had broad impact and resulted in significant findings, including a monetary finding of $42 million, one of the largest dollar findings in an OIG program audit in recent years.

This finding that $42 million should be put to better use was the primary recommendation in an audit report titled *Financial Management Service's Deposit Fund Accounts Used for the Implementation of the Competitive Equality Banking Act*. This audit of the Deposit Fund Accounts, which was requested by the Treasury General Counsel in the context of pending litigation and extensive media coverage relating to the Individual Indian Monies trust fund, also provided an excellent opportunity for the OIG to demonstrate its focus on improving customer service.

Other high-visibility and sensitive assignments for which I was responsible as office director included the PCIE/ECIE Review of Non-Tax Delinquent Debt, which had government-wide impact, and a Congressional request regarding a very sensitive matter at a Treasury bureau for which *Finance and Debt* does not have direct audit responsibility. *Finance and Debt* was assigned this additional responsibility based specifically on the quality of work performed on another audit during my tenure.

## External Communication

I coordinated the office's audit operations with our bureau liaisons and with other OIG components, such as the Investigations Directorate, and ensured that our staff prepared top-quality briefings for multiple purposes, including scheduled entrance and exit conferences. I assumed the lead in staff presentations during briefings before the Commissioner of the Financial Management Service (FMS), the Commissioner of the Bureau of the Public Debt (BPD), and the Inspector General. Both the FMS and the BPD liaisons have thanked me for the manner in which I performed this function. It is my understanding that the Inspector General also complimented our staff for the briefing that we gave him.

# STATEMENT OF SIGNIFICANT ACCOMPLISHMENTS
### Maria V. Carmona
### Acting Director, *Finance and Debt*
### August 29, 1999, through March 11, 2000

## Internal Communication and Morale

I believe that the manner in which I handled my management responsibilities while I was the Acting Director resulted in improved communication and morale within *Finance and Debt*. Members of the staff have expressed their appreciation for the manner in which I treated them and for the way in which I shared information with them.

Communication within *Finance and Debt* was enhanced by my taking steps such as holding periodic staff meetings to share information provided by the DAIG and to discuss other matters of interest. Agenda items were solicited from the staff and included in the written agenda handed out at each meeting. During the staff meetings, I led discussions and provided attachments on a number of current issues and on suggestions that I had prepared for improving written products. I also provided the staff with periodic updates through our Local Area Network (LAN), in order to supplement information shared during the staff meetings. The staff responded in a very positive manner to my openness and willingness to share information.

I routinely held meetings with the Audit Managers to discuss the status of audits, the audit plan, and staffing issues. I included the audit team, as appropriate, in discussions of the ongoing audits, and feel that the report-writing conferences that I held were particularly effective in enhancing the reporting process, and resulted in reports that required virtually no revision by senior management.

I also improved morale by taking care to acknowledge staff contributions, both formally and informally. The nomination for a Special Act Award (Group) that I submitted for a *Finance and Debt* audit team was approved without revision.

## Organization and Administration

I instituted changes in the administration of *Finance and Debt* that have had a positive effect on the office. For example, I revised the format of the monthly Audit Status Reports, to bring the *Finance and Debt* reports into line with those submitted by the other Audit Directorates. I also enhanced the Office Manager's role, in part by requesting that she maintain a chronological file, so that staff would have copies of important documents and office correspondence readily available for reference. In keeping with this assignment, the Office Manager volunteered to maintain an automated audit report file that, in the absence of a public folder for such records, would ensure that staff could access a current listing of audit reports that had been issued and automated copies of all audit reports that had been transmitted.

I was actively involved in the annual planning process, reviewing and providing input to the *Office of Audit Annual Plan for Fiscal Year 2000*, and preparing for the FY 2001 plan. I handled other administrative duties, such as monitoring and reporting on the budget, and taking and reporting on an informal poll regarding office location. I also prepared all of the monthly reports for *Finance and Debt* in a timely manner, and ensured that documents required from the staff, such as the annual confidential financial disclosure forms, were completed and submitted prior to the corresponding due dates.

# STATEMENT OF SIGNIFICANT ACCOMPLISHMENTS
## Maria V. Carmona
### Acting Director, *Finance and Debt*
### August 29, 1999, through March 11, 2000

## LISTING OF AUDIT REPORTS

### Reports Issued in Final

Review of the Effectiveness of the Financial Management Service's Oversight of Private Collection Agencies
[OIG-99-117, 09-02-99]

PCIE/ECIE Review of Non-Tax Delinquent Debt – United States Customs Service
[OIG-00-001, 10-05-99]

PCIE/ECIE Review of Non-Tax Delinquent Debt – United States Secret Service
[OIG-00-002, 10-05-99]

PCIE/ECIE Review of Non-Tax Delinquent Debt – Treasury Departmental Offices
[OIG-00-003, 10-05-99]

PCIE/ECIE Review of Non-Tax Delinquent Debt (Summary Report)
[OIG-00-013, 12-17-99]

Bureau of the Public Debt's Auction Process
[OIG-00-019, 12-21-99]

Financial Management Service's Reclamation of Direct Deposit Post-Death Benefit Payments
[OIG-00-031, 01-20-00]

### Final Reports Pending DAIG/AIG Review

Audit of the Bureau of the Public Debt's Compliance with the Government Performance and Results Act
[A-IR-99-015, 02-04-00]

### Draft Reports Pending DAIG/AIG Review

Financial Management Service's Deposit Fund Accounts Used for the Implementation of the Competitive Equality Banking Act[1]
[A-IR-99-079, 03-07-00]

---

[1] This audit report identifies approximately $42 million in funds that should be put to better use.

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|---|
| CARMONA, MARIA V | | | | 10/08/52 | 07/17/00 |

| **FIRST ACTION** | | **SECOND ACTION** | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 885 | PERFORMANCE AWARD | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| V4R | 5 USC 4505A | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | SUPVY AUDR |
| | 08541A05    08541A |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1,628.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | | .00 | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | TREASURY OFFICE OF THE INSPECTOR GENER |
| | OFFICE OF INSPECTOR GENERAL |
| | OFFICE OF AUDIT |
| | DAIG FOR PROG AUDITS |
| | |
| | TR 95261500010500000    PP 15 2000 |

| 23. Veterans Preference | | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|
| 1 | 1 - None    3 - 10-Point/Disability    5 - 10-Point/Other<br>2 - 5-Point    4 - 10-Point/Compensable    6 - 10-Point/Compensable/30% | 1 | 0 - None    2 - Conditional<br>1 - Permanent    3 - Indefinite | | | YES  X NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| GO | BASIC-1X ADDITIONAL | 9 | NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| 1 | CS | 08/30/76 | F | FULL TIME | |

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 | 1 - Competitive Service    3 - SES General<br>2 - Excepted Service    4 - SES Career Reserved | E | E - Exempt<br>N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON    DIST OF COLUMBIA    DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

PERFORMANCE AWARD

SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

Plaintiff
Exhibit
C
05 CV 2428 (JGP)

| 47. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF THE TREASURY | |

| Agency Code | 48. Personnel Office ID | 49. Approval Date | CATHERINE M MCCOY |
|---|---|---|---|
| TR 95 | 4041 | 07/17/00 | PERSONNEL OFFICER |

TURN OVER FOR IMPORTANT INFORMATION

| Part    50-316 | 1 - Employee Copy - Keep for Future Reference | Editions Prior to 7/91 Are Not Usable After 6/30/93<br>NSN 7540-01-333-6238 |

95261500010500000    PP 15 1*2000*BATCH 40415519 000-00 200-49 06/50 95 4041

# Office of Inspector General
## Department of the Treasury

### Recognition of High Level Performance

*Reference OIG Manual 2130*

## SECTION A - TYPE OF RECOMMENDATION

| | | |
|---|---|---|
| ☐ MVV Award | ☐ Sustained Contribution Award | ☒ Special Act/Service Award |
| ☐ Plaque or Nominal Gift | ☐ Quality Step Increase | ☐ Time-Off   ☒ Cash |
| ☐ Commendation Certificate | ☐ Time-Off   ☐ Cash | ☐ Other |

## SECTION B - NOMINEES

| NAME OF EMPLOYEE(S) | SOC. SEC. NBR. | POSITION TITLE | GRADE/STEP | AWARD |
|---|---|---|---|---|
| Maria V. Carmona | ▮▮▮▮▮ | Acting Director | 14 | $ |
| ▮▮▮▮▮ | ▮▮▮▮▮ | Audit Manager | 14 | $ |
| ▮▮▮▮▮ | ▮▮▮▮▮ | Auditor in Charge | 13 | $ |
| ▮▮▮▮▮ | ▮▮▮▮▮ | Auditor | 13 | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

**ORGANIZATION and LOCATION**
Department of the Treasury
Office of Inspector General
Office of Audit, Office of Program Audits
Finance and Debt Directorate, Washington, DC

**PERIOD COVERED BY RECOMMENDATION**

Aug. 1999 to Mar. 2000

## SECTION C - JUSTIFICATION

1. Describe how the performance exceeded requirements, significant accomplishments, etc.

This nomination for a Special Act Award (Group) is based on an Office of Inspector General (OIG) audit of Financial Management Service (FMS) deposit fund accounts performed by a team from the Finance and Debt directorate. The results of the audit are presented in a report titled Financial Management Service's Deposit Fund Accounts Used for the Implementation of the Competitive Equality Banking Act (CEBA).

This was a high-visibility audit, requested by the Treasury General Counsel in the context of pending litigation relating to the Individual Indian Monies trust fund, which received considerable media coverage during 1999. The work was performed in an expeditious manner, with the on-site audit fieldwork completed in a 3-month period, with limited staffing. The findings were well-supported. During the exit conference, the FMS Commissioner and managers expressed concurrence with the audit findings and recommendations.

The audit team functioned as a cohesive unit in performing its many tasks. Worthy of particular mention were the report-writing conferences, which were very successful in producing a high-quality product, and the excellent briefings that the audit team provided to the DAIG, to the AIG, to the Inspector General and OIG Counsel, and to FMS management at all levels.

OIG Form 2130.1
Revised January 1999

1

Plaintiff
Exhibit
D
05cv 2428 (JGP)

The audit was planned well, and coordinated with other OIG components as necessary. Team members displayed sensitivity and tact while interviewing FMS managers and staff who were concerned about the effect that this audit could have on their careers. At the conclusion of the audit, FMS managers commented on the professional manner in which the audit was performed, and stated that they appreciated the lines of communication that were established and maintained during the audit.

2. Describe the outcomes/impact of the performance/accomplishments.

This audit represents a noteworthy achievement for the OIG both in terms of dollar findings and in terms of service provided to the Department and to a Bureau on a sensitive issue with Congressional and media interest.

The audit identified approximately $42 million in funds that should be put to better use. This is a highly-significant finding, in that it exceeds the OIG's own budget, and far exceeds the majority of OIG monetary findings.

The funds to be put to better use come from three limited payability cancellation accounts that the audit team determined FMS should close out, including one account with a balance in excess of $30 million that had been dormant since FMS converted to a new accounting system during 1991.

In addition to the principal monetary findings, the audit provided insights into the mass cancellations totaling $4.8 billion that FMS performed during the early 1990s, and provided a clear understanding of the responsibilities of the Department of the Treasury and of the Department of the Interior with reference to the Individual Indian Monies trust fund. These insights could prove very useful in addressing issues related to the ongoing litigation. It is expected that the audit report will be widely requested, not just within the Department, but also by the Congress, the media, and the public.

The audit also determined that, while the current limited payability cancellation process adheres to CEBA, FMS should take action to ensure that it systematically identifies and corrects problems in a timely manner. The auditors have provided justification for a future audit to determine if corrective actions have been taken to address the problems that were identified, thus ensuring that funds are not allowed to accumulate in limited payability accounts in the future.

| Signature and Title of Initiating Official | | | Date | |
|---|---|---|---|---|

**SECTION D - REVIEW AND APPROVAL**

| Signature and Title of Reviewing Official(s) | Recommendation Date | | Award Recommended |
|---|---|---|---|
| | Approve | Disapprove | |
| | | | $ |
| | | | $ |
| | | | $ |
| Signature and Title of Approving Official | Date | Action<br><br>ρ Approve   ρ Disapprove | Amount of Award<br><br>$ |

## SECTION E - AUTHORIZATION FOR PAYMENT

| Signature and Title of Fiscal Official | Date | Appropriation |
|---|---|---|
|  |  |  |

FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| CARMONA, MARIA V | | 10/08/52 | 03/26/00 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature of Action | 6-A. Code | 6-B. Nature of Action |
| 877 | SPECIAL ACT OR SERVICE AWARD | | |
| 5-C. Code | 5-D. Legal Authority | 6-C. Code | 6-D. Legal Authority |
| V3G | 5 USC 4503 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| | SUPVY AUDR |
| | 08541A05    08541A |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 14. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | 1,200.00 | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| | .00 | | .00 | | .00 | | .00 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| | TREASURY OFFICE OF THE INSPECTOR GENER |
| | OFFICE OF INSPECTOR GENERAL |
| | OFFICE OF AUDIT |
| | DAIG FOR PROG AUDITS |
| | TR 952615000105000000    PP 07 2000 |

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for F |
|---|---|---|---|
| 1  1 - None  2 - 5-Point  3 - 10-Point/Disability  4 - 10-Point/Compensable  5 - 10-Point/Other  6 - 10-Point/Compensable/30% | 1  0 - None  1 - Permanent  2 - Conditional  3 - Indefinite | | YES  ☒ NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| GO  BASIC-1X ADDITIONAL | 9  NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| 1  CS | 08/30/76 | F  FULL TIME | |

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service  2 - Excepted Service  3 - SES General  4 - SES Career Reserved | E  E - Exempt  N - Nonexempt | | 8888 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 11-0010-001 | WASHINGTON    DIST OF COLUMBIA    DC |

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | | | |

45. Remarks

SPECIAL ACT OR SERVICE AWARD (GENERAL SCHEDULE/AND WAGE GRADE)
SALARY BLOCK CONTAINS CASH AWARD AMOUNT.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF THE TREASURY | |
| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | CATHERINE M MCCOY |
| TR 95 | 4041 | 03/17/00 | PERSONNEL OFFICER |

Part 50-316

1 - Employee Copy - Keep for Future Reference

Editions Prior to 7/91 Are Not Usable After 6/30
NSN 7540-01-333-6

952615000105000000    PP 07 1*2000*BATCH 40415531 000-00 200-42 AG/EO 95-4041



**Department of the Treasury**
# Office of Inspector General

*Certificate of Appreciation*
*for*
*Special Act*

## Maria V. Carmona

*In appreciation of your contributions to the effective operation of the Office of Inspector General*

*from*   August 1, 1999   *to*   March 8, 2000

Inspector General

| From: | Carmona, Maria V. |
|---|---|
| Sent: | Thursday, April 13, 2000 8:24 AM |
| To: | Freedman, Marla A. |
| Subject: | RE: Awards |

Marla,

Thank you for nominating us for the Special Act award.  I think that the staff will be very happy to receive this recognition.

I will discuss notification with Don.

Maria

-----Original Message-----

| From: | Freedman, Marla A. |
|---|---|
| Sent: | Thursday, April 13, 2000 8:11 AM |
| To: | Kassel, Donald R.; Carmona, Maria V. |
| Subject: | FW: Awards |
| Importance: | High |

Please share with staff, as appropriate...CONGRATULATIONS!!

-----Original Message-----

| From: | Robertson, Valerie |
|---|---|
| Sent: | Wednesday, April 12, 2000 10:39 AM |
| To: | Freedman, Marla A. |
| Subject: | Awards |

The Special Act awards you requested for Carmona, McGeorge, Dabney and Taylor have been processed effective 3/26/00.  The employee's will see this award reflected in the salary payment the week of April 17.  I am forwarding you the certificates for distribution today.  The SF-50 for the personnel folders will forwarded to you next week.

| Tracking: | Recipient |
|---|---|
| | Freedman, Marla A. |

Plaintiff
Exhibit

E

05CV2428 (JGP)

| | |
|---|---|
| **From:** | Freedman, Marla A. |
| **Sent:** | Friday, January 28, 2000 9:36 AM |
| **To:** | Kassel, Donald R.; Carmona, Maria V.; Best, Jr., Alexander; Dabney, Delores V.; McGeorge, C. Samuel; Nguyen, Dieu H.; Paige, Wanda K.; Poole, Julie A.; Serepca, Beth H.; Sielicki, Michael A.; Sinko, Michael C.; Stepanske, Michael K.; Taylor, Ethel R. |
| **Cc:** | Schindel, Dennis S. |
| **Subject:** | Acting Director FMS/Debt |

I am sending this message to clarify some uncertainty that may exist after last week's all hands meeting.  Seeing as Don Kassel will shortly be assuming the Directorship of the Banking/FMS/Debt Group, we have decided to have Maria Carmona continue to serve as Acting Director *Finance and Debt* until Don Kassel completes his current assignments and is able to transition into the position.

Thanks,

Marla

Plaintiff
Exhibit

F

05 cv 2428 (JGP)

| | |
|---|---|
| From: | Freedman, Marla A. |
| Sent: | Friday, December 10, 1999 7:55 AM |
| To: | Carmona, Maria V.; McGeorge, C. Samuel; Dabney, Delores V.; Taylor, Ethel R. |
| Subject: | Deposit Funds Briefing |
| Importance: | High |

I'm sorry I didn't get a chance to send this yesterday, but I ended up staying over at Main Treasury for most of the afternoon.  I did want to let you all know that I was very pleased with briefing you all gave to Mr. Rush.  You did a great job!!



Plaintiff
Exhibit

G

05 cv 2428 (J6R)

From:               Freedman, Marla A.
Sent:               Thursday, January 06, 2000 8:05 AM
To:                 Carmona, Maria V.
Subject:            RE: Semiannual Report Themes

Thanks...we will need more, but I'll let you know what and when at a later date.

Once again, great job yesterday!!

-----Original Message-----
From:               Carmona, Maria V.
Sent:               Thursday, January 06, 2000 6:48 AM
To:                 Freedman, Marla A.
Cc:                 Best, Jr., Alexander; McGeorge, C. Samuel
Subject:            Semiannual Report Themes

Marla,

In response to your message of December 28, the following would be the major Semiannual Report themes for *Finance and Debt.*

- Debt Collection initiatives, for which we have already submitted a write-up.

- Deposit Fund Accounts (Individual Indian Monies), provided the report is issued within the period.

Please let me know if you would like additional information.

Maria